# Exhibit 2

to the declaration of Carolyn B. Lamm
dated August 13, 2021

UK/INDIA DOUBLE TAXATION CONVENTION

SIGNED 25 JANUARY 1993

Entered into force 25 October 1993

Effective in United Kingdom from 1 January 1994 in respect of petroleum revenue tax, from 1 April 1994 for corporation tax and from 6 April 1994 for income tax and capital gains tax

Effective in India from 1 January 1994

Double Taxation Agreements are reproduced under the terms of Crown Copyright Policy Guidance issued by HMSO.

CONTENTS

Article 1 (Scope of the Convention)

Article 2 (Taxes covered)

Article 3 (General definitions)

Article 4 (Fiscal domicile)

Article 5 (Permanent establishment)

Article 6 (Income form immovable property)

Article 7 (Business profits)

Article 8 (Air transport)

Article 9 (Shipping)

Article 10 (Associated enterprises)

Article 11 (Dividends)

Article 12 (Interest)

Article 13 (Royalties and fees for technical services)

Article 14 (Capital gains)

Article 15 (Independent personal services)

Article 16 (Dependent personal services)

Article 17 (Directors' fees)

Article 18 (Artistes and athletes)

Article 19 (Governmental remuneration and pensions)

Article 20 (Pensions and annuities)

Article 21 (Students and trainees)

Article 22 (Teachers)

Article 23 (Other income)

Article 24 (Elimination of double taxation)

Article 25 (Partnerships)

Article 26 (Non-discrimination)

Article 27 (Mutual agreement procedure)

Article 28 (Exchange of information)

Article 29 (Diplomatic and consular officials)

Article 30 (Entry into force)

Article 31 (Termination)

Exchange of notes

# CONVENTION BETWEEN THE GOVERNMENT OF THE UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND AND THE GOVERNMENT OF THE REPUBLIC OF INDIA FOR THE AVOIDANCE OF DOUBLE TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO TAXES ON INCOME AND CAPITAL GAINS

The Government of the United Kingdom of Great Britain and Northern Ireland and the Government of the Republic of India;

Desiring to conclude a new Convention for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income and capital gains; Have agreed as follows:

Article 1

**Scope of the Convention**

(1) This Convention shall apply to persons who are residents of one or both of the Contracting States.

(2) This Convention extends to the territory of each Contracting State, including its territorial sea, and to those areas of the exclusive economic zone or the continental shelf adjacent to the outer limit of the territorial sea of each State over which it has, in accordance with international law, sovereign rights for the purpose of exploration and exploitation of the natural resources of such areas, and references in this Convention to the Contracting State or to either of them shall be construed accordingly.

Back to contents

Article 2

**Taxes covered**

(1) The taxes which are the subject of this Convention are:

(a) in the United Kingdom:

(i) the income tax;

(ii) the corporation tax;

(iii) the capital gains tax; and

(iv) the petroleum revenue tax;

(hereinafter referred to as "United Kingdom tax");

(b) in India:

the income-tax including any surcharge thereon;

(hereinafter referred to as "Indian tax").

(2) This Convention shall also apply to any identical or substantially similar taxes which are imposed by either Contracting State after the date of signature of this Convention in addition to, or in place of, the taxes of that Contracting State referred to in paragraph (1) of this Article. The competent authorities of the Contracting States shall notify each other of any substantial changes which are made in their respective taxation laws.

Back to contents

Article 3

**General definitions**

(1) In this Convention, unless the context otherwise requires:

(a) the term "United Kingdom" means Great Britain and Northern Ireland;

(b) the term "India" means the Republic of India;

(c) the term "tax" means United Kingdom tax or Indian tax, as the context requires but shall not include any amount which is payable in respect of any default or omission in relation to the taxes to which this Convention applies or which represents a penalty imposed relating to those taxes;

(d) the term "fiscal year" in relation to Indian tax means "previous year" as defined in the Income-tax Act, 1961 (43 of 1961) and in relation to United Kingdom tax means a year beginning with 6th April in one year and ending with 5th April in the following year;

(e) the terms "a Contracting State" and "the other Contracting State" mean India or the United Kingdom, as the context requires;

(f) the term "person" includes an individual, a company and any other entity which is treated as a taxable unit under the taxation laws in force in the respective Contracting States, but, subject to paragraph (2) of this Article, does not include a partnership;

(g) the term "company" means any body corporate or any entity which is treated as a company or body corporate for tax purposes;

(h) the terms "enterprise of a Contracting State" and "enterprise of the other Contracting State" mean respectively an enterprise carried on by a resident of a

Contracting State and an enterprise carried on by a resident of the other Contracting State;

(i) the term "competent authority" means, in the case of the United Kingdom, the Commissioners of Inland Revenue or their authorised representative, and, in the case of India, the Central Government in the Ministry of Finance (Department of Revenue) or their authorised representative;

(j) the term "international traffic" means only transport by a ship or aircraft operated by an enterprise of a Contracting State except when the ship or aircraft is operated solely between places in the other Contracting State;

(k) the term "Government" means the Government of a Contracting State or a political subdivision or local authority thereof. In relation to the United Kingdom, the term "political subdivision" shall include Northern Ireland.

(2) A partnership which is treated as a taxable unit under the Income-tax Act, 1961 (43 of 1961) of India shall be treated as a person for the purposes of this Convention.

(3) As regards the application of this Convention by a Contracting State any term not otherwise defined shall, unless the context otherwise requires, have the meaning which it has under the laws of that Contracting State relating to the taxes which are the subject of this Convention.

Back to contents

## Article 4

### Fiscal domicile

(1) For the purposes of this Convention, the term "resident of a Contracting State" means any person who, under the law of that State, is liable to taxation therein by reason of his domicile, residence, place of management or any other criterion of a similar nature.

(2) Where by reason of the provisions of paragraph (1) of this Article an individual is a resident of both Contracting States, then his status shall be determined in accordance with the following rules:

(a) he shall be deemed to be a resident of the Contracting State in which he has a permanent home available to him. If he has a permanent home available to him in both Contracting States, he shall be deemed to be a resident of the Contracting State with which his personal and economic relations are closer (centre of vital interests);

(b) if the Contracting State in which he has his centre of vital interests cannot be determined, or if he has not a permanent home available to him in either Contracting State, he shall be deemed to be a resident of the Contracting State in which he has an habitual abode;

(c) if he has an habitual abode in both Contracting States or in neither of them, he shall be deemed to be a resident of the Contracting State of which he is a national;

(d) if he is a national of both Contracting States or of neither of them, the competent authorities of the Contracting States shall settle the question by mutual agreement.

(3) Where by reason of the provisions of paragraph (1) of this Article a person other than an individual is a resident of both Contracting States, then it shall be deemed to be a resident of the Contracting State in which its place of effective management is situated.

[Back to contents](#)

## Article 5

### Permanent establishment

(1) For the purposes of this Convention, the term "permanent establishment" means a fixed place of business through which the business of an enterprise is wholly or partly carried on.

(2) The term "permanent establishment" shall include especially:

(a) a place of management;

(b) a branch;

(c) an office;

(d) a factory;

(e) a workshop;

(f) premises used as a sales outlet or for receiving or soliciting orders;

(g) a warehouse in relation to a person providing storage facilities for others;

(h) a mine, an oil or gas well, quarry or other place of extraction of natural resources;

(i) an installation or structure used for the exploration or exploitation of natural resources;

(j) a building site or construction, installation or assembly project or supervisory activities in connection therewith, where such site, project or supervisory activity continues for a period of more than six months, or where such project or supervisory activity, being incidental to the sale of machinery or equipment, continues for a period not exceeding six months and the charges payable for the project or supervisory activity exceed 10 per cent of the sale price of the machinery and equipment;

(k) the furnishing of services including managerial services, other than those taxable under Article 13 (Royalties and fees for technical services), within a Contracting State by an enterprise through employees or other personnel, but only if:

(i) activities of that nature continue within that State for a period or periods aggregating more than 90 days within any twelve-month period; or
(ii) services are performed within that State for an enterprise within the meaning of paragraph (1) of Article 10 (Associated enterprises) and continue for a period or periods aggregating more than 30 days within any twelve-month period.

Provided that for the purposes of this paragraph an enterprise shall be deemed to have a permanent establishment in a Contracting State and to carry on business through that permanent establishment if it provides services or facilities in connection with, or supplies plant and machinery on hire used or to be used in, the prospecting for, or extraction or production of, mineral oils in that State.

(3) The term "permanent establishment" shall not be deemed to include:

(a) the use of facilities solely for the purpose of storage or display of goods or merchandise belonging to the enterprise;

(b) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of storage or display;

(c) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of processing by another enterprise;

(d) the maintenance of a fixed place of business solely for the purpose of purchasing goods or merchandise, or for collecting information, for the enterprise;

(e) the maintenance of a fixed place of business solely for the purpose of advertising, for the supply of information or for scientific research, being activities solely of a preparatory or auxiliary character in the trade or business of the enterprise. However, this provision shall not be applicable where the enterprise maintains any other fixed place of business in the other Contracting State for any purpose or purposes other than the purposes specified in this paragraph;

(f) the maintenance of a fixed place of business solely for any combination of activities mentioned in sub-paragraphs (a) to (e) of this paragraph, provided that the overall activity of the fixed place of business resulting from this combination is of a preparatory or auxiliary character.

(4) A person acting in a Contracting State for or on behalf of an enterprise of the other Contracting State—other than an agent of an independent status to whom paragraph (5) of this Article applies—shall be deemed to be a permanent establishment of that enterprise in the first-mentioned State if:

(a) he has, and habitually exercises in that State, an authority to negotiate and enter into contracts for or on behalf of the enterprise, unless his activities are limited to the purchase of goods or merchandise for the enterprise; or

(b) he habitually maintains in the first-mentioned Contracting State a stock of goods or merchandise from which he regularly delivers goods or merchandise for or on behalf of the enterprise; or

(c) he habitually secures orders in the first-mentioned State, wholly or almost wholly for the enterprise itself or for the enterprise and other enterprises controlling, controlled by, or subject to the same common control, as that enterprise.

(5) An enterprise of a Contracting State shall not be deemed to have a permanent establishment in the other Contracting State merely because it carries on business in that other State through a broker, general commission agent or any other agent of an independent status, where such persons are acting in the ordinary course of their business. However, if the activities of such an agent are carried out wholly or almost wholly for the enterprise (or for the enterprise and other enterprises which are controlled by it or have a controlling interest in it or are subject to the same common control) he shall not be considered to be an agent of an independent status for the purposes of this paragraph.

(6) The fact that a company which is a resident of a Contracting State controls or is controlled by a company which is a resident of the other Contracting State, or which carries on business in that other State (whether through a permanent establishment or otherwise), shall not of itself constitute either company a permanent establishment of the other.

(7) For the purposes of this Article the term "control", in relation to a company means the ability to exercise control over the company's affairs by means of the direct or indirect holding of the greater part of the issued share capital or voting power in the company.

Back to contents

Article 6

**Income from immovable property**

(1) Income from immovable property may be taxed in the Contracting State in which such property is situated.

(2)

(a) The term "immovable property" shall, subject to the provisions of sub-paragraph (b) of this paragraph, be defined in accordance with the law of the Contracting State in which the property in question is situated.

(b) The term "immovable property" shall in any case include property accessory to immovable property, livestock and equipment used in agriculture and forestry, rights to which the provisions of general law respecting landed property apply, usufruct of

immovable property and rights to variable or fixed payments as consideration for the working of, or the right to work, mineral deposits, sources and other natural resources. Ships and aircraft shall not be regarded as immovable property.

(3) The provisions of paragraph (1) of this Article shall apply to income derived from the direct use, letting, or use in any other form of immovable property.

(4) The provisions of paragraphs (1) and (3) of this Article shall also apply to the income from immovable property of an enterprise and to income from immovable property used for the performance of independent personal services.

Back to contents

Article 7

**Business profits**

(1) The profits of an enterprise of a Contracting State shall be taxable only in that State unless the enterprise carries on business in the other Contracting State through a permanent establishment situated therein. If the enterprise carries on business as aforesaid, the profits of the enterprise may be taxed in the other State but only so much of them as is directly or indirectly attributable to that permanent establishment.

(2) Where an enterprise of a Contracting State carries on business in the other Contracting State through a permanent establishment situated therein, the profits which that permanent establishment might be expected to make if it were a distinct and separate enterprise engaged in the same or similar activities under the same or similar conditions and dealing wholly independently with the enterprise of which it is a permanent establishment shall be treated for the purposes of paragraph (1) of this Article as being the profits directly attributable to that permanent establishment.

(3) Where a permanent establishment takes an active part in negotiating, concluding or fulfilling contracts entered into by the enterprise, then, notwithstanding that other parts of the enterprise have also participated in those transactions, that proportion of profits of the enterprise arising out of those contracts which the contribution of the permanent establishment to those transactions bears to that of the enterprise as a whole shall be treated for the purposes of paragraph (1) of this Article as being the profits indirectly attributable to that permanent establishment.

(4) Insofar as it has been customary in a Contracting State according to its law to determine the profits to be attributed to a permanent establishment on the basis of an apportionment of the total profits of the enterprise to its various parts, nothing in paragraphs (1) and (2) of this Article shall preclude that Contracting State from determining the profits to be taxed by such an apportionment as may be necessary; the method of apportionment adopted shall, however, be such that the result shall be in accordance with the principles laid down in this Article.

(5) Subject to paragraphs (6) and (7) of this Article, in the determination of the profits of a permanent establishment, there shall be allowed as deductions expenses which are incurred for the purposes of the business of the permanent establishment, including executive and general administrative expenses so incurred, whether in the State in which the permanent establishment is situated or elsewhere, which are allowed under the provisions of and subject to the limitations of the domestic law of the Contracting State in which the permanent establishment is situated.

(6) Where the law of the Contracting State in which the permanent establishment is situated imposes a restriction on the amount of the executive and general administrative expenses which may be allowed, and the restriction is relaxed or overriden by any Convention between that Contracting State and a third State which is a member of the Organisation for Economic Co-operation and Development or a State in a comparable stage of development, and that Convention enters into force after the date of entry into force of this Convention, the competent authority of that Contracting State shall notify the competent authority of the other Contracting State of the terms of the relevant paragraph in the Convention with that third State immediately after the entry into force of that Convention and, if the competent authority of the other Contracting State so requests, the provisions of this Convention shall be amended by protocol to reflect such terms.

(7) Paragraph (5) of this Article shall not apply to amounts, if any, paid (otherwise than towards reimbursement of actual expenses) by the permanent establishment to the head office of the enterprise or any of its other offices, by way of royalties, fees or other similar payments in return for the use of patents or other rights, or by way of commission, for specific services performed or for management, or, except in the case of a banking enterprise, by way of interest on monies lent to the permanent establishment; nor shall account be taken in the determination of the profits of a permanent establishment of amounts charged (otherwise than towards reimbursement of actual expenses) by the permanent establishment to the head office of the enterprise or any of its other offices, by way of royalties, fees or other similar payments in return for the use of patents or other rights, or by way of commission, for specific services performed or for management, or, except in the case of a banking enterprise, by way of interest on monies lent to the head office of the enterprise or any of its other offices.

(8) No profits shall be attributed to a permanent establishment by reason of the mere purchase by that permanent establishment of goods or merchandise for the enterprise.

(9) Where profits include items of income which are dealt with separately in other Articles of this Convention, then the provisions of those Articles shall not be affected by the provisions of this Article.

Back to contents

Article 8

**Air transport**

(1) Profits derived from the operation of aircraft in international traffic by an enterprise of one of the Contracting States shall not be taxed in the other Contracting State.

(2) The provisions of paragraph (1) of this Article shall likewise apply in respect of participation in pools of any kind by enterprises engaged in air transport.

(3) For the purposes of this Article the term "operation of aircraft" shall include transportation by air of persons, livestock, goods or mail, carried on by the owners or lessees or charterers of aircraft, including the sale of tickets for such transportation on behalf of other enterprises, the incidental lease of aircraft on a charter basis and any other activity directly connected with such transportation.

(4) Gains derived by an enterprise of a Contracting State from the alienation of aircraft owned and operated by the enterprise, the income from which is taxable only in that State, shall be taxed only in that State.

Back to contents

Article 9

**Shipping**

(1) Income of an enterprise of a Contracting State from the operation of ships in international traffic shall be taxable only in that State.

(2) The provisions of paragraph (1) of this Article shall not apply to income from journeys between places which are situated in a Contracting State.

(3) For the purposes of this Article, income from the operation of ships includes income derived from the rental on a bareboat basis of ships if such rental income is incidental to the income described in paragraph (1) of this Article.

(4) Notwithstanding the provisions of Article 7 (Business profits) of this Convention, the provisions of paragraphs (1) and (2) of this Article shall likewise apply to income of an enterprise of a Contracting State from the use, maintenance or rental of containers (including trailers and related equipment for the transport of containers) used for the transport of goods or merchandise.

(5) The provisions of this Article shall apply also to income derived from participation in a pool, a joint business or an international operating agency.

(6) Gains derived by an enterprise of a Contracting State from the alienation of ships or containers owned and operated by the enterprise shall be taxed only in that State if either

the income from the operation of the alienated ships or containers was taxed only in that State, or the ships or containers are situated outside the other Contracting State at the time of the alienation.

Back to contents

## Article 10

### Associated enterprises

(1) Where:

(a) an enterprise of a Contracting State participates directly or indirectly in the management, control or capital of an enterprise of the other Contracting State, or

(b) the same persons participate directly or indirectly in the management, control or capital of an enterprise of a Contracting State and an enterprise of the other Contracting State,

and in either case conditions are made or imposed between the two enterprises in their commercial or financial relations which differ from those which would be made between independent enterprises, then any profits which would, but for those conditions, have accrued to one of the enterprises, but, by reason of those conditions, have not so accrued, may be included in the profits of that enterprise and taxed accordingly.

(2) Where a Contracting State includes in the profits of an enterprise of that State—and taxes accordingly—profits on which an enterprise of the other Contracting State has been charged to tax in that other State and the profits so included are profits which would have accrued to the enterprise of the first-mentioned State if the conditions made between the two enterprises had been those which would have been made between independent enterprises, then that other State shall make an appropriate adjustment to the amount of the tax charged therein on those profits. In determining such adjustment, due regard shall be had to the other provisions of this Convention and the competent authorities of the Contracting States shall if necessary consult each other.

Back to contents

## Article 11

### Dividends

(1)

(a) A dividend paid by a company which is a resident of the United Kingdom to a resident of India may be taxed in India.

(b) Where under paragraph (2) of this Article, a resident of India is entitled to a tax credit in respect of that dividend, tax may also be charged in the United Kingdom and

according to the laws of the United Kingdom on the aggregate of the amount or value of the dividend and the amount of the tax credit, at a rate not exceeding 15 per cent.

(c) Except as provided in sub-paragraph (b) of this paragraph, a dividend derived from a company which is a resident of the United Kingdom by a resident of India, who is the beneficial owner of that dividend, shall be exempt from any tax in the United Kingdom which is chargeable on dividends.

(2) An individual who is a resident of India and who receives a dividend from a company which is a resident of the United Kingdom shall, provided he is the beneficial owner of the dividend, be entitled to the tax credit in respect of that dividend which an individual resident in the United Kingdom would have been entitled to had he received that dividend, and to the payment of any excess of that tax credit over his liability to United Kingdom tax.

(3) A dividend paid by a company which is a resident of India to a resident of the United Kingdom may be taxed in the United Kingdom. The dividend may also be taxed in India but the Indian tax so charged shall not exceed 15 per cent of the gross amount of the dividend.

(4) The preceding paragraphs of this Article shall not affect the taxation of the company in respect of the profits out of which the dividend is paid.

(5) The provisions of paragraphs (1) and (2) or, as the case may be, paragraph (3) of this Article shall not apply if the beneficial owner of the dividend, being a resident of a Contracting State, has, in the other Contracting State of which the company paying the dividend is a resident, a permanent establishment or fixed base with which the holding by virtue of which the dividend is paid is effectively connected. In such a case the provisions of Article 7 (Business profits) or Article 15 (Independent personal services) of this Convention, as the case may be, shall apply.

(6) Where a company which is a resident of a Contracting State derives profits or income from the other Contracting State, that other State may not impose any tax on the dividends paid by the company, except insofar as such dividends are paid to a resident of that other State or insofar as the holding in respect of which the dividends are paid is effectively connected with a permanent establishment or a fixed base situated in that other State, nor subject the company's undistributed profits to a tax on the company's undistributed profits, even if the dividends paid or the undistributed profits consist wholly or partly of profits or income arising in that other State.

(7) As used in this Article the term "dividend" means income from shares or other rights, not being debt-claims, participating in profits, as well as income from other corporate rights treated in the same manner as income from shares by the taxation law of the State of which the company making the distribution is a resident and any other item treated as a dividend or distribution under that law.

Back to contents

Article 12

**Interest**

(1) Interest arising in a Contracting State and paid to a resident of the other Contracting State may be taxed in that other State.

(2) However, such interest may also be taxed in the Contracting State in which it arises and according to the law of that State, provided that where the resident of the other Contracting State is the beneficial owner of the interest the tax so charged shall not exceed 15 per cent of the gross amount of the interest.

(3) Notwithstanding the provisions of paragraph (2) of this Article:

(a) where the interest is paid to a bank carrying on a bona fide banking business which is a resident of the other Contracting State and is the beneficial owner of the interest, the tax charged in the Contracting State in which the interest arises shall not exceed 10 per cent of the gross amount of the interest;
(b) where the interest is paid to the Government of one of the Contracting States or a political subdivision or local authority of that State or the Reserve Bank of India, it shall not be subject to tax by the State in which it arises.

(4) Notwithstanding the provisions of Article 7 of this Convention and of paragraphs (2) and (3) of this Article:

(a) interest arising in India which is paid to and beneficially owned by a resident of the United Kingdom shall be exempt from tax in India if it is paid in respect of a loan made, guaranteed or insured, or any other debt-claim or credit guaranteed or insured by the United Kingdom Export Credits Guarantee Department; and

(b) interest arising in the United Kingdom which is paid to and beneficially owned by a resident of India shall be exempt from tax in the United Kingdom if it is paid in respect of a loan made, guaranteed or insured, or any other debt-claim or credit guaranteed or insured by the Export Credits and Guarantee Corporation of India and/or Export-Import Bank of India.

(5) The term "interest" as used in this Article means income from debt-claims of every kind, whether or not secured by mortgage and whether or not carrying a right to participate in the debtor's profits, and in particular, income from Government securities and income from bonds or debentures, including premiums and prizes attaching to such securities, bonds or debentures but, subject to the provisions of paragraph (9) of this Article, shall not include any item which is treated as a distribution under the provisions of Article 11 (Dividends) of this Convention.

(6) The provisions of paragraphs (1), (2) and (3)(a) of this Article shall not apply if the beneficial owner of the interest, being a resident of a Contracting State, carries on

business in the other Contracting State in which the interest arises through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the debt-claim in respect of which the interest is paid is effectively connected with such permanent establishment or fixed base. In such case the provisions of Article 7 (Business profits) or Article 15 (Independent personal services) of this Convention, as the case may be, shall apply.

(7) Interest shall be deemed to arise in a Contracting State when the payer is that State itself, a political subdivision, a local authority or a resident of that State. Where, however, the person paying the interest, whether he is a resident of a Contracting State or not, has in a Contracting State a permanent establishment or a fixed base in connection with which the indebtedness on which the interest is paid was incurred, and such interest is borne by that permanent establishment or fixed base, then such interest shall be deemed to arise in the Contracting State in which the permanent establishment or fixed base is situated.

(8) Where, owing to a special relationship between the payer and the beneficial owner or between both of them and some other person, the amount of the interest paid exceeds for whatever reason the amount which would have been paid in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In that case, the excess part of the payments shall remain taxable according to the law of each Contracting State, due regard being had to the other provisions of this Convention.

(9) Any provision in the laws of either Contracting State relating only to interest paid to a non-resident company shall not operate so as to require such interest paid to a company which is a resident of the other Contracting State to be treated as a distribution or dividend by the company paying such interest or to be left out of account as a deduction in computing the taxable profits of the company paying the interest. The preceding sentence shall not apply to interest paid to a company which is a resident of one of the Contracting States in which more than 50 per cent of the voting power is controlled, directly or indirectly, by a person or persons who are residents of the other Contracting State.

(10) The relief from tax provided for in paragraph (2) of this Article shall not apply if the beneficial owner of the interest:

(a) is exempt from tax on such income in the Contracting State of which he is a resident; and

(b) sells or makes a contract to sell the holding from which such interest is derived within three months of the date such beneficial owner acquired such holding.

(11) The provisions of this Article shall not apply if it was the main purpose or one of the main purposes of any person concerned with the creation or assignment of the debt-claim in respect of which the interest is paid to take advantage of this Article by means of that creation or assignment.

Back to contents

Article 13

**Royalties and fees for technical services**

(1) Royalties and fees for technical services arising in a Contracting State and paid to a resident of the other Contracting State may be taxed in that other State.

(2) However, such royalties and fees for technical services may also be taxed in the Contracting State in which they arise and according to the law of that State; but if the beneficial owner of the royalties or fees for technical services is a resident of the other Contracting State, the tax so charged shall not exceed:

    (a) in the case of royalties within paragraph (3)(a) of this Article, and fees for technical services within paragraph (4)(a) and (c) of this Article;

        (i) during the first five years for which this Convention has effect;

            (aa) 15 per cent of the gross amount of such royalties or fees for technical services when the payer of the royalties or fees for technical services is the Government of the first-mentioned Contracting State or a political subdivision of that State, and

            (bb) 20 per cent of the gross amount of such royalties or fees for technical services in all other cases; and

        (ii) during subsequent years, 15 per cent of the gross amount of such royalties or fees for technical services; and

    (b) in the case of royalties within paragraph (3)(b) of this Article and fees for technical services defined in paragraph (4)(b) of this Article, 10 per cent of the gross amount of such royalties and fees for technical services.

(3) For the purposes of this Article, the term "royalties" means:

    (a) payments of any kind received as a consideration for the use of, or the right to use, any copyright of a literary, artistic or scientific work, including cinematograph films or work on films, tape or other means of reproduction for use in connection with radio or television broadcasting, any patent, trademark, design or model, plan, secret formula or process, or for information concerning industrial, commercial or scientific experience; and

    (b) payments of any kind received as consideration for the use of, or the right to use, any industrial, commercial or scientific equipment, other than income derived by an enterprise of a Contracting State from the operation of ships or aircraft in international traffic.

(4) For the purposes of paragraph (2) of this Article, and subject to paragraph (5), of this

Article, the term "fees for technical services" means payments of any kind to any person in consideration for the rendering of any technical or consultancy services (including the provisions of services of technical or other personnel) which:

(a) are ancillary and subsidiary to the application or enjoyment of the right, property or information for which a payment described in paragraph (3)(a) of this Article is received; or

(b) are ancillary and subsidiary to the enjoyment of the property for which a payment described in paragraph (3)(b) of this Article is received; or

(c) make available technical knowledge, experience, skill, know-how or processes, or consist of the development and transfer of a technical plan or technical design.

(5) The definitions of fees for technical services in paragraph (4) of this Article shall not include amounts paid:

(a) for services that are ancillary and subsidiary, as well as inextricably and essentially linked, to the sale of property, other than property described in paragraph (3)(a) of this Article;

(b) for services that are ancillary and subsidiary to the rental of ships, aircraft, containers or other equipment used in connection with the operation of ships, or aircraft in international traffic;

(c) for teaching in or by educational institutions;

(d) for services for the private use of the individual or individuals making the payment; or

(e) to an employee of the person making the payments or to any individual or partnership for professional services as defined Article 15 (Independent personal services) of this Convention.

(6) The provisions of paragraphs (1) and (2) of this Article shall not apply if the beneficial owner of the royalties or fees for technical services, being a resident of a Contracting State, carries on business in the other Contracting State in which the royalties or fees for technical services arise through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the right, property or contract in respect of which the royalties or fees for technical services are paid is effectively connected with such permanent establishment or fixed base. In such case, the provisions of Article 7 (Business profits) or Article 15 (Independent personal services) of this Convention, as the case may be, shall apply.

(7) Royalties and fees for technical services shall be deemed to arise in a Contracting State where the payer is that State itself, a political subdivision, a local authority or a resident of that State. Where, however, the person paying the royalties or fees for

technical services, whether he is a resident of a Contracting State or not, has in a Contracting State a permanent establishment or a fixed base in connection with which the obligation to make payments was incurred and the payments are borne by that permanent establishment or fixed base, then the royalties or fees for technical services shall be deemed to arise in the Contracting State in which the permanent establishment or fixed base is situated.

(8) Where, owing to a special relationship between the payer and the beneficial owner or between both of them and some other person, the amount of the royalties or fees for technical services paid exceeds for whatever reason the amount which would have been paid in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In that case, the excess part of the payments shall remain taxable according to the law of each Contracting State, due regard being had to the other provisions of this Convention.

(9) The provisions of this Article shall not apply if it was the main purpose or one of the main purposes of any person concerned with the creation or assignment of the rights in respect of which the royalties or fees for technical services are paid to take advantage of this Article by means of that creation or assignment.

Back to contents

Article 14

**Capital gains**

Except as provided in Article 8 (Air transport) and 9 (Shipping) of this Convention, each Contracting State may tax capital gains in accordance with the provisions of its domestic law.

Back to contents

Article 15

**Independent personal services**

(1) Income derived by an individual, whether in his own capacity or as a member of a partnership, who is a resident of a Contracting State in respect of professional services or other independent activities of a similar character may be taxed in that State. Such income may also be taxed in the other Contracting State if such services are performed in that other State and if:

(a) he is present in that other State for a period or periods aggregating 90 days in the relevant fiscal year; or

(b) he, or the partnership, has a fixed base regularly available to him, or it, in that other State for the purpose of performing his activities;

but in each case only so much of the income as is attributable to those services.

(2) For the purposes of paragraph (1) of this Article an individual who is a member of a partnership shall be regarded as being present in the other State during days on which, although he is not present, another individual member of the partnership is so present and performs professional services or other independent activities of a similar character in that State.

(3) The term "professional services" includes independent scientific, literary, artistic, educational or teaching activities as well as the independent activities of physicians, surgeons, lawyers, engineers, architects, dentists and accountants.

Back to contents

Article 16

**Dependent personal services**

(1) Subject to the provisions of Articles 17 (Directors' fees), 18 (Artistes and athletes), 19 (Governmental remuneration and pensions), 20 (Pensions and annuities), 21 (Students and trainees) and 22 (Teachers) of this Convention, salaries, wages and other similar remuneration derived by a resident of a Contracting State in respect of an employment shall be taxable only in that State unless the employment is exercised in the other Contracting State. If the employment is so exercised, such remuneration as is derived therefrom may be taxed in that other State.

(2) Notwithstanding the provisions of paragraph (1) of this Article, remuneration derived by a resident of a Contracting State in respect of an employment exercised in the other Contracting State shall not be taxed in that other State if:

(a) he is present in that other State for a period or periods not exceeding in the aggregate 183 days during the relevant fiscal year;

(b) the remuneration is paid by, or on behalf of, an employer who is not a resident of that other State; and

(c) the remuneration is not deductible in computing the profits of an enterprise chargeable to tax in that other State.

(3) Notwithstanding the preceding provisions of this Article, remuneration in respect of an employment exercised aboard a ship or aircraft in international traffic may be taxed in the Contracting State of which the person deriving the profits from the operation of the ship or aircraft is a resident.

Back to contents

**Directors' fees**

Directors' fees and similar payments derived by a resident of a Contracting State in his capacity as a member of the board of directors of a company which is a resident of the other Contracting State may be taxed in that other State.

Back to contents

## Article 18

**Artistes and athletes**

(1) Notwithstanding the provisions of Articles 15 (Independent personal services) and 16 (Dependent personal services) of this Convention, income derived by entertainers (such as stage, motion picture, radio or television artistes and musicians) or athletes, from their personal activities as such may be taxed in the Contracting State in which these activities are exercised.

(2) Where income arising from personal activities as such exercised in a Contracting State by an entertainer or athlete accrues not to that entertainer or athlete himself but to another person, that income may, notwithstanding the provisions of Articles 7 (Business profits), 15 (Independent personal services) and 16 (Dependent personal services) of this Convention, be taxed in that Contracting State.

(3) The provisions of paragraphs (1) and (2) of this Article shall not apply if the visit to a Contracting State of the entertainer or the athlete is directly or indirectly supported, wholly or substantially, from the public funds of the other Contracting State, including a political subdivision or local authority of that other State.

Back to contents

## Article 19

**Governmental remuneration and pensions**

(1) Remuneration, other than a pension, paid by the Government of a Contracting State to any individual who is a national of that State in respect of services rendered in the discharge of governmental functions in the other Contracting State shall be exempt from tax in that other Contracting State.

(2) Any pension paid by the Government of a Contracting State to any individual in respect of services rendered to that Government shall be taxable only in that Contracting State.

(3) The provisions of this Article shall not apply to remuneration or pensions in respect of services rendered in connection with any trade or business.

Back to contents

Article 20

**Pensions and annuities**

(1) Any pension, other than a pension referred to in Article 19(2) of this Convention, or annuity paid to a resident of a Contracting State shall be taxable only in that State.

(2) The term "pension" means a periodic payment made in consideration of past employment or by way of compensation for injuries received in the course of performance of employment or any payments made under the social security legislation of either Contracting State.

(3) The term "annuity" means a stated sum payable periodically at stated times during life or during a specified or ascertainable period of time under an obligation to make the payments in return for adequate and full consideration in money or money's worth.

Back to contents

Article 21

**Students and trainees**

(1) An individual who is a resident of a Contracting State or was a resident of that State immediately before visiting the other Contracting State and who is temporarily present in that other State for the primary purpose of:

   (a) studying at a university or other accredited or recognised educational institution in that other Contracting State; or

   (b) securing training required to qualify him to practise a profession or a professional speciality; or

   (c) studying or doing research as a recipient of a grant, allowance, or award from a governmental, religious, charitable, scientific, literary or educational organisation;

shall not be subject to tax by that other Contracting State in respect of:

   (i) gifts from abroad for the purposes of his maintenance, education, study, research or training;

   (ii) the grant, allowance or award; and

(iii) income from personal services rendered in that other Contracting State (other than any rendered by an article clerk or other person undergoing professional training to the person or partnership to whom he is articled or who is providing the training) not exceeding the sum of 750 pounds sterling or its equivalent in Indian currency during any fiscal year.

(2) The exemptions under paragraph (1) of this Article shall only extend for such period of time as may be reasonably or customarily required for the purpose of the visit, but in no event shall any individual have the benefit of paragraph (1) of this Article for more than 5 years.

(3) An individual who is a resident of a Contracting State or was a resident of that State immediately before visiting the other Contracting State and who is temporarily present in that other State for a period not exceeding 12 months, as an employee of, or under contract with, a resident of the first-mentioned Contracting State, for the primary purpose of:

(a) acquiring technical, professional or business experience from a person other than that resident of the first-mentioned Contracting State; or

(b) studying at a university or other accredited or recognised institution in that other Contracting State;

shall not be subject to tax by that other Contracting State on his income from personal services performed in the other Contracting State for that period in an amount not exceeding 1,500 pounds sterling or its equivalent in Indian currency.

(4) An individual who is a resident of a Contracting State or was a resident of that State immediately before visiting the other Contracting State and who is temporarily present in that other State for a period not exceeding 12 months as a participant in a programme sponsored by the Government of the other Contracting State, for the primary purpose of training, research or study, shall not be subject to tax by that other Contracting State in respect of payments made by the Government of the first-mentioned Contracting State for the purposes of his maintenance, training, research, or study.

Back to contents

Article 22

**Teachers**

(1) An individual who visits a Contracting State for a period not exceeding two years for the purpose of teaching or engaging in research at a university, college or other recognised educational institution in that State, and who was immediately before that visit a resident of the other Contracting State, shall be exempted from tax by the first-mentioned Contracting State on any remuneration for such teaching or research for a period not exceeding two years from the date he first visits that State for such purpose.

(2) This Article shall only apply to income from research if such research is undertaken by the individual in the public interest and not primarily for the benefit of some other private person or persons.

Back to contents

## Article 23

### Other income

(1) Subject to the provisions of paragraph (2) of this Article, items of income beneficially owned by a resident of a Contracting State, wherever arising, other than income paid out of trusts or the estates of deceased persons in the course of administration, which are not dealt with in the foregoing Articles of this Convention, shall be taxable only in that State.

(2) The provisions of paragraph (1) shall not apply to income, other than income from immovable property as defined in paragraph (2) of Article 6, if the recipient of such income, being a resident of a Contracting State, carries on business in the other Contracting State through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the right or property in respect of which the income is paid is effectively connected with such permanent establishment or fixed base. In such case, the provisions of Article 7 or Article 15 of this Convention, as the case may be, shall apply.

(3) Notwithstanding the provisions of paragraphs (1) and (2) of this Article, items of income of a resident of a Contracting State not dealt with in the foregoing articles of this Convention, and arising in the other Contracting State may be taxed in that other State.

Back to contents

## Article 24

### Elimination of double taxation

(1) Subject to the provisions of the law of the United Kingdom regarding the allowance as a credit against United Kingdom tax of tax payable in a territory outside the United Kingdom (which shall not affect the general principle hereof):
  (a) Indian tax payable under the laws of India and in accordance with the provisions of this Convention, whether directly or by deduction, on profits, income or chargeable gains from sources within India (excluding, in the case of a dividend, tax payable in respect of the profits out of which the dividend is paid) shall be allowed as a credit against any United Kingdom tax computed by reference to the same profits, income or chargeable gains by reference to which the Indian tax is computed.
  (b) In the case of a dividend paid by a company which is a resident of India to a company which is a resident of the United Kingdom and which controls directly or indirectly at least 10 per cent of the voting power in the company paying the dividend,

the credit shall take into account (in addition to any Indian tax for which credit may be allowed under the provisions of sub-paragraph (a) of this paragraph) the Indian tax payable by the company in respect of the profits out of which such dividend is paid.

(2) Subject to the provisions of the law of India regarding the allowance as a credit against Indian tax of tax paid in a territory outside India (which shall not affect the general principle hereof), the amount of the United Kingdom tax paid, under the laws of the United Kingdom and in accordance with the provisions of this Convention, whether directly or by deduction, by a resident of India, in respect of income from sources within the United Kingdom which has been subjected to tax both in India and the United Kingdom shall be allowed as a credit against the Indian tax payable in respect of such income but in an amount not exceeding that proportion of Indian tax which such income bears to the entire income chargeable to Indian tax.

For the purposes of the credit referred to in this paragraph, where the resident of India is a company by which surtax is payable, the credit to be allowed against Indian tax shall be allowed in the first instance against the income tax payable by the company in India and, as to the balance, if any, against the surtax payable by it in India.

(3) Subject to paragraph (5) of this Article, for the purposes of paragraph (1) of this Article the term "Indian tax payable" shall be deemed to include:

(a) any amount which would have been payable as Indian tax but for a deduction allowed in computing the taxable income or an exemption or reduction of tax granted for that year in question under the provisions of the Income-tax Act 1961 (43 of 1961) referred to in paragraph (4)(a) or (b) of this Article;

(b) that proportion of any amount which would have been payable as Indian tax by a resident of India but for a deduction allowed in computing the taxable income or an exemption or reduction granted for the year in question under the provisions of the Income-tax Act 1961 (43 of 1961) referred to in paragraph (4)(c) of this Article which corresponds to the proportion of that resident's total production in that year which was actually sold in the Indian Domestic Tariff Area under Orders issued by the Chief Controller of Imports and Exports bearing Nos. 21/90-93, 22/90-93, 23/90-93, 25/90-93, 26/90-93, 27/90-93 dated 30th March 1990 and similar Orders from time to time published in the Official Gazette by the Central Government under power conferred to it by Section 3 of the Import and Export (Control) Act, 1947 (18 of 1947).

(4) The provisions referred to in this paragraph are:

(a) sections 10(4), 10(4B), 10(6)(viia), 10(15)(iv), 33AB, 80HHD, 80I and 80IA;
(b) any other provision which may subsequently be enacted granting an exemption or reduction from tax which is agreed by the competent authorities of the Contracting States to be of a substantially similar character to a provision referred to in sub-paragraph (a) of this paragraph, if it has not been modified thereafter or has been modified only in minor respects so as not to affect its general character;
(c) sections 10A and 10B.

(5) Relief from United Kingdom tax shall not be given by virtue of this paragraph (3) of this Article in respect of income from any source if the income relates to a period starting more than 10 fiscal years after the deduction in computing taxable income or exemption from, or reduction of, Indian tax is first granted to the resident of the United Kingdom or to the resident of India, as the case may be, in respect of that source.

(6) Income which in accordance with the provisions of this Convention is not to be subjected to tax in a Contracting State may be taken into account for calculating the rate of tax to be imposed in that Contracting State on other income.

(7) For the purposes of paragraphs (1) and (2) of this Article profits, income and chargeable gains owned by a resident of a Contracting State which may be taxed in the other Contracting State in accordance with the provisions of this Convention shall be deemed to arise from sources in that other Contracting State.

Back to contents

Article 25

**Partnerships**

(1) Where, under any provision of this Convention, a partnership is entitled, as a resident of India, to exemption from tax in the United Kingdom on any income or capital gains, that provision shall not be construed as restricting the right of the United Kingdom to tax any member of the partnership who is a resident of the United Kingdom on his share of the income and capital gains of the partnership; but any such income or gains shall be treated for the purposes of Article 24 of this Convention as income or gains from sources in India.

(2) Nothing in Article 11 of this Convention shall entitle a partnership which is a resident of India to a tax credit in respect of dividends paid to the partnership by a company which is a resident of the United Kingdom; but any member of the partnership who is a resident of India shall be regarded as entitled to the tax credit to which he would have been entitled under that Article, if his share of those dividends has been paid to him by the company which is a resident of the United Kingdom.

Back to contents

Article 26

**Non-discrimination**

(1) The nationals of a Contracting State shall not be subjected in the other Contracting State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation and connected requirements to which nationals of that other State in the same circumstances are or may be subjected.

(2) The taxation on a permanent establishment which an enterprise of a Contracting State has in the other Contracting State shall not be less favourably levied in that other State than the taxation levied on enterprises of that other State carrying on the same activities in the same circumstances or under the same conditions. This provision shall not be construed as preventing a Contracting State from charging the profits of a permanent establishment which an enterprise of the other Contracting State has in the first-mentioned State at a rate of tax which is higher than that imposed on the profits of a similar enterprise of the first-mentioned Contracting State, nor as being in conflict with the provisions of paragraph (4) of Article 7 of this Convention.

(3) Nothing contained in this Article shall be construed as obliging a Contracting State to grant to individuals not resident in that State any personal allowances, reliefs and reductions for taxation purposes which are by law available only to individuals who are so resident.

(4) Enterprises of a Contracting State, the capital of which is wholly or partly owned or controlled, directly or indirectly, by one or more residents of the other Contracting State, shall not be subjected in the first-mentioned Contracting State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation and connected requirements to which other similar enterprises of that first-mentioned State are or may be subjected.

(5) In this Article, the term "taxation" means taxes which are the subject of this Convention.

Back to contents

Article 27

**Mutual agreement procedure**

(1) Where a resident of a Contracting State considers that the actions of one or both of the Contracting States result or will result for him in taxation not in accordance with this Convention, he may, notwithstanding the remedies provided by the national laws of those States, present his case to the competent authority of the Contracting State of which he is a resident.

(2) The competent authority shall endeavour, if the objection appears to it to be justified and if it is not itself able to arrive at an appropriate solution, to resolve the case by mutual agreement with the competent authority of the other Contracting State, with a view to the avoidance of taxation not in accordance with the Convention.

(3) The competent authorities of the Contracting States shall endeavour to resolve by mutual agreement any difficulties or doubts arising as to the interpretation or application of the Convention.

(4) The competent authorities of the Contracting States may communicate with each other directly for the purpose of reaching an agreement in the sense of the preceding paragraphs.

Back to contents

Article 28

**Exchange of information**

(1) The competent authorities of the Contracting States shall exchange such information as is necessary for carrying out the provisions of this Convention or of the domestic laws of the Contracting States concerning taxes covered by this Convention, insofar as the taxation thereunder is not contrary to this Convention, in particular for the prevention of fraud or evasion of such taxes. The exchange of information is not restricted by Article 1 of this Convention. Any information received by a Contracting State shall be treated as secret in the same manner as information obtained under the domestic laws of that State. However, if the information is originally regarded as secret in the transmitting state it shall be disclosed only to persons or authorities (including courts and administrative bodies) involved in the assessment or collection of, the enforcement or prosecution in respect of, or the determination of appeals in relation to, the taxes which are the subject of this Convention. Such persons or authorities shall use the information only for such purposes but may disclose the information in public court proceedings or in judicial decisions. The competent authorities shall, through consultation, develop appropriate conditions, methods and techniques concerning the matters in respect of which such exchanges of information shall be made, including, where appropriate, exchanges of information regarding tax avoidance.

(2) In no case shall the provisions of paragraph (1) of this Article be construed so as to impose on a Contracting State the obligation:

   (a) to carry out administrative measures at variance with the laws and administrative practice of that or of the other Contracting State;

   (b) to supply information which is not obtainable under the laws or in the normal course of the administration of that or of the other Contracting State;

(c) to supply information which would disclose any trade, business, industrial, commercial or professional secret or trade process, or information, the disclosure of which would be contrary to public policy.

Back to contents

Article 29

**Diplomatic and consular officials**

(1) Nothing in this Convention shall affect the fiscal privileges of diplomatic or consular officials under the general rules of international law or under the provisions of special agreements.

(2) Notwithstanding the provisions of paragraph (1) of Article 4 (Fiscal domicile) of this Convention, an individual who is a member of the diplomatic, consular or permanent mission of a Contracting State which is situated in the other Contracting State and who is subject to tax in that other State only if he derives income from sources therein, shall not be deemed to be a resident of that other State for the purposes of this Convention.

Back to contents

Article 30

**Entry into force**

(1) Each of the Contracting States shall notify to the other the completion of the procedures required by its law for the bringing into force of this Convention. This Convention shall enter into force on the date of the later of these notifications and shall thereupon have effect:

(a) in the United Kingdom:

(i) in respect of income tax and capital gains tax, for any year of assessment beginning on or after 6th April in the calendar year next following that in which the later of the notifications is given;

(ii) in respect of corporation tax, for any financial year beginning on or after 1st April in the calendar year next following that in which the later of the notifications is given;

(iii) in respect of petroleum revenue tax, for any chargeable period beginning on or after 1st January in the calendar year next following that in which the later of the notifications is given;

(b) in India, in respect of income arising in any fiscal year beginning on or after the first day of April next following the calendar year in which the later of the notifications is given.

(2) Subject to the provisions of paragraph (3) of this Article, the Convention between the Government of the United Kingdom of Great Britain and Northern Ireland and the Government of India for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital Gains signed in New Delhi on 16th April 1981 (hereinafter referred to as "the 1981 Convention") shall terminate and cease to be effective from the date upon which this Convention has effect in respect of the taxes to which this Convention applies in accordance with the provisions of paragraph (1) of this Article.

(3) Where any provisions of the 1981 Convention would have afforded any greater relief from tax than is due under this Convention, any such provision as aforesaid shall continue to have effect:

    (a) in the United Kingdom, for any year of assessment or financial year; and
    (b) in India, for any fiscal year;

beginning, in either case, before the entry into force of this Convention.

Back to contents

Article 31

**Termination**

This Convention shall remain in force until terminated by one of the Contracting States. Either Contracting State may terminate the Convention, through the diplomatic channel, by giving notice of termination at least six months before the end of any calendar year beginning after the expiration of ten years from the date of entry into force of the Convention. In such event, the Convention shall cease to have effect:

    (a) in the United Kingdom:

        (i) in respect of income tax and capital gains tax, for any year of assessment beginning on or after 6th April in the calendar year next following that in which the notice is given;

        (ii) in respect of corporation tax, for any financial year beginning on or after 1st April in the calendar year next following that in which the notice is given;

        (iii) in respect of petroleum revenue tax, for any chargeable period beginning on or after 1st January in the calendar year next following that in which the notice is given;

(b) in India, in respect of income arising in any fiscal year beginning on or after the first day of April next following the calendar year in which the notice is given.

In witness whereof the undersigned, duly authorised thereto by their respective Governments, have signed this Convention.

Done on this 25th day of January 1993, in New Delhi on two original copies each in the English and Hindi languages, both texts being equally authentic. In case of divergence between the two texts, the English text shall be the operative one.

For the Government of
United Kingdom of
Great Britain and
Northern Ireland:

For the Government of
the Republic of India:

*Nicholas Fenn*

*S. Ramamurti*

[Back to contents](#)

## EXCHANGE OF NOTES

Your Excellency

New Delhi
25th January 1993

I have the honour to refer to the Convention between the Government of the United Kingdom of Great Britain and Northern Ireland and the Government of the Republic of India for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income and Capital Gains which has been signed today and to propose on behalf of the Government of the United Kingdom of Great Britain and Northern Ireland:

(a) that, in applying sub-paragraph (j) of paragraph (2) of Article 5, for the purpose of determining whether a building site or construction, installation or assembly project or supervisory activity in connection therewith has continued for a period of more than six months, the Contracting States shall:

(i) take no account of time previously spent by employees of the enterprise on other sites or projects which have no connection with the site or project in question;

(ii) apply the more than six months test to each site or project which has no connection with any other site or project and to each group of connected sites or projects; and

(iii) regard a building site as a single site, even if several contracts have been entered into for the work being done, provided that it forms a coherent whole commercially and geographically;

(b) that, in applying paragraph (3) of Article 7, for the purpose of determining whether a permanent establishment has taken an active part in negotiating, concluding or fulfilling contracts entered into by the enterprise, the Contracting States shall take into consideration all relevant circumstances and, in particular, the fact that a contract or order relating to the purchase or provision of goods or services was negotiated or placed with the head office of the enterprise, rather than with the permanent establishment, shall not preclude them from determining that the permanent establishment did take an active part in negotiating, concluding or fulfilling that contract;

(c) that, in applying paragraph (1) of Article 8, for the purpose of determining the profits of an enterprise which are derived from the operation of aircraft in international traffic, the Contracting States shall treat interest derived from the investment or deposit of receipts arising directly from the operation of aircraft in international traffic as being included in those profits, but shall not treat interest derived from the reinvestment of such interest as being so included.

If the foregoing proposal is acceptable to the Government of the Republic of India I have the honour to suggest that the present Note and Your Excellency's reply to that effect should be regarded as constituting an agreement between the two Governments in this matter.

*Nicholas Fenn*
His Excellency the High
Commissioner of the
United Kingdom of
Great Britain and
Northern Ireland

Your Excellency

New Delhi
25th January 1993

I have the honour to acknowledge receipt of Your Excellency's Note of today which reads as follows:

I have the honour to refer to the Convention between the Government of the United Kingdom of Great Britain and Northern Ireland and the Government of the Republic of India for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income and Capital Gains which has been signed today and to propose on behalf of the Government of the United Kingdom of Great Britain and Northern Ireland:

"(a) that, in applying sub-paragraph (j) of paragraph (2) of Article 5, for the purpose of determining whether a building site or construction, installation or assembly project or supervisory activity in connection therewith has continued for a period of more than six months, the Contracting States shall:

> (i) take no account of time previously spent by employees of the enterprises on other sites or projects which have no connection with the site or project in question;
>
> (ii) apply the more than six months test to each site or project which has no connection with any other site or project and to each group of connected sites or projects; and
>
> (iii) regard a building site as a single site, even if several contracts have been entered into for the work being done, provided that it forms a coherent whole commercially and geographically;

(b) that, in applying paragraph (3) of Article 7, for the purpose of determining whether a permanent establishment has taken an active part in negotiating, concluding or fulfilling contracts entered into by the enterprise, the Contracting States shall take into consideration all relevant circumstances and, in particular, the fact that a contract or order relating to the purpose of provision of goods or services was negotiated or placed with the head office of the enterprise, rather than with the permanent establishment, shall not preclude them from determining that the permanent establishment did take an active part in negotiating, concluding or fulfilling that contract;

(c) that, in applying paragraph (1) of Article 8, for the purpose of determining the profits of an enterprise which are derived from the operation of aircraft in international traffic, the Contracting States shall treat interest derived from the investment or deposit or receipts arising directly from the operation of aircraft in international traffic as being included in those profits, but shall not treat interest derived from the reinvestment of such interest as being so included.

If the foregoing proposal is acceptable to the Government of the Republic of India I have the honour to suggest that the present Note and Your Excellency's reply to that effect should be regarded as constituting an agreement between the two Governments in this matter."

In reply, I have the honour to state that the Government of the Republic of India accepts the proposal made therein and agrees that Your Excellency's Note and the present reply shall constitute an agreement between the Government of the Republic of India and the Government of the United Kingdom of Great Britain and Northern Ireland in this matter.

I avail myself of this opportunity to renew to Your Excellency the assurances of my highest consideration.

*S Ramamurti*
His Excellency the
Chairman of the Central Board
of Direct Taxes India

Back to contents