# Exhibit 3

to the Expert Opinion of
Justice (Retired) Pradeep Nandrajog

dated August 13, 2021



SCC Online Web Edition, Copyright © 2021
Page 1      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source:  Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------------------

would dismiss these appeals.  But, in the circumstances of this case, the parties must bear their own costs.

-------

**(1974) 2 Supreme Court Cases 831**

*(Before A. N. Ray, C.J. and D. G. Palekar, K. K. Mathew,*
*Y. V. Chandrachud, A. Alagiriswami, P. N. Bhagwati and*
*V. R. Krishna Iyer, JJ.)*

Civil Appeal No. 2289 of 1970

SAMSHER  SINGH          ..          ..          ..     Appellant ;

*Versus*

STATE OF PUNJAB AND ANOTHER   ..          ..     Respondents.

*and*

Civil Appeal No. 632 of 1971

ISHWAR  CHAND  AGARWAL          ..          ..     Appellant ;

*Versus*

STATE  OF  PUNJAB          ..          ..          ..     Respondent.

Civil Appeals Nos. 2289 of 1970 and 632 of 1971,
decided on August 23, 1974

**Constitution of India — Articles 53, 77, 154, 166, 324 — Function of President or Governor based on his satisfaction whether to be discharged by him personally applying his mind to facts of the situation — Whether exercise of function by a Minister or an officer of the Government amounts to surrender of power or delegation of function — Dismissal order under Article 234 made by Chief Minister of a State in the name of the Governor but without seeking or obtaining the personal satisfaction of the Governor if valid — Whether the constitutional functions and powers of the Governor eo nomine as well those in his discretion are executive powers of the State under Article 152, read with Article 162 — Whether in such cases Article 163 relating to the taking of aid and advice of the Council of Ministers applicable — Comparison of Article 163 with Article 166(3) — Whether the power of the Governor to remove Subordinate Judges under Article 234 could be allocated to a Minister in this case in view of Rule 18 of the Rules of Business read with Rule 7(2) in Part D of the Punjab Civil Services (Judicial Branch) Rules, 1951 — Comparison of Article 163 with Article 74 : Absence of exception in Article 74 as regards functions based on individual discretion — Significance and removal under Article 324 to be exercised by him like executive powers of of — Scope of Article 166(2) and (3) — Held, Governor's powers of appointment the State Government only on the aid or advice of his Council of Ministers and not personally**

The two appellants were members of the Punjab Civil Services (Judicial Branch) and were appointed on probation and the services of appellant Samsher Singh were terminated under Rule 9 of the Punjab Civil Services (Punishment and Appeal) Rules, 1952, while the services of Ishwar Chand Agarwal were terminated under Rule 7(3), Part D of the Punjab Civil Services (Judicial Branch) Rule, 1951. The appellants filed writ petitions in the Punjab and Haryana High Court against the termination of their services.  The writ petitions were dismissed, and thereafter, the appellants filed appeals to the Supreme Court.

HELD :

**Per Ray, C.J. and Palekar, Mathew, Chandrachud and Alagiriswami, JJ.**

Under the Cabinet system of Government as embodied in our Constitution


SCC Online Web Edition, Copyright © 2021
Page 2      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases
-----------------------------------------------------------------------------------------------------------------------------

the Governor is the constitutional or formal Head of the State and he exercises all his powers and functions conferred on him by or under the Constitution on the aid and advice of his Council of Ministers save in spheres where the Governor is required by or under the Constitution to exercise his functions in his discretion.                                                                 (Para 28)

Wherever the Constitution requires the satisfaction of the President or the Governor for the exercise of any power or function by the President or the Governor, as the case may be, as for example in Articles 123, 213, 311(2) proviso (c), 317, 352(1), 356 and 360 the satisfaction required by the Constitution is not the personal satisfaction of the President or of the Governor but is the satisfaction of the President or of the Governor in the constitutional sense under the Cabinet system of Government.                                (Para 30)

It may be noted that clause (2) or clause (3) of Article 166 is not limited in its operation to the executive action of the Government of the State under clause (1) of Article 166. The expression "Business of the Government of the State" in clause (3) of Article 166 includes all executive business.        (Para 29)

The Executive is to act subject to the control of the Legislature. The executive power of the Union is vested in the President. The President is the formal or constitutional head of the Executive. The real executive powers are vested in the Ministers of the Cabinet. There is a Council of Ministers with the Prime Minister as the head to aid and advise the President in the exercise of his functions and in this respect Article 74(1) is mandatory.                       (Paras 33 and 36)

The fundamental principle of English Constitutional Law that Ministers must accept responsibility for every executive act is incorporated in our Constitution.
                                                                                (Para 32)

Therefore, wherever the Constitution requires the satisfaction of the President or the Governor for the exercise by the President or the Governor of any power or function, the satisfaction required by the Constitution is not the personal satisfaction of the President or Governor but the satisfaction of the President or Governor in the constitutional sense in the Cabinet system of Government, that is, satisfaction of his Council of Ministers on whose aid and advice the President or the Governor generally exercises all his powers and functions. The decision of any Minister or officer under Rules of Business made under any of the two Articles 77(3) and 166(3) is the decision of the President or the Governor respectively. These articles did not provide for any delegation. Therefore, the decision of a Minister or officer under the Rules of Business is the decision of the President or the Governor.                                             (Paras 40, 44, 48 and 57)

The conclusion therefore is: Where the Governor has any discretion the Governor acts on his own judgment. The Governor exercises his discretion in harmony with his Council of Ministers. The appointment as well as removal of the members of the Subordinate Judicial Services is an executive action of the Governor to be exercised on the aid and advice of the Council of Ministers in accordance with the provisions of the Constitution. Appointments and removals of persons are made by the President and the Governor as the constitutional head of the Executive on the aid and advice of the Council of Ministers. That is why any action by any servant of the Union or the State in regard to appointment or dismissal is brought against the Union or the State and not against the President or the Governor. The contention of the appellant that the order was passed by the Chief Minister without the formal approval of the Governor is, therefore, untenable. The order is the order of the Governor.    (Paras 57, 88 and 82)

Sardari Lal v. Union of India, (1971) 3 SCR 461 : (1971) 1 SCC 411, overruled.

Carltona Ltd. v. Works Commissioners, (1943) 2 All ER 560, relied on.

Ram Jawaya Kapur v. State of Punjab, (1955) 2 SCR 225, relied on.

A. Sanjeevi Naidu v. State of Madras, (1970) 3 SCR 505, 511 : (1970) 1 SCC 443, relied on.

U. N. Rao v. Indira Gandhi, 1971 Supp SCR 46 : (1971) 2 SCC 63, relied on.



SCC Online Web Edition, Copyright © 2021
Page 3      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------

King Emperor v. Sibanath Banerji, 72 IA 241 : AIR 1945 PC 156, relied on.

Bejoy Lakshmi Cotton Mills Ltd. v. State of W. B., (1967) 2 SCR 406, relied on.

Jayantilal Amritlal Shodhan v. F. N. Rana, (1964) 5 SCR 294 : AIR 1964 SC 648, explained and limited.

Moti Ram Deka v. G. M., N. E. F. Rly. Maligaon, Pandu, (1964) 5 SCR 683 : AIR 1964 SC 600 : (1964) 2 Lab LJ 467, explained and distinguished.

State of U. P. v. Babu Ram Upadhya, (1961) 2 SCR 679 : AIR 1961 SC 751 : 1961 (1) Cri LJ 773, held already overruled by Moti Ram Deka case.

### Per Bhagwati and Krishna Iyer, JJ. (concurring)

We have, in the President and Governor, a replica of a constitutional monarch and a cabinet answerable to Parliament, substantially embodying the conventions of the British Constitution. The Government is carried on by the Ministers according to the Rules of Allocation of Business and, the Governor, no more than the Queen, need know or approve orders issued in her name.    (Para 99)

The President, like the King, has not merely been constitutionally romanticised but actually vested with a pervasive and persuasive role. While he plays such a role, he is not rival centre of power in any sense and must abide by and act on the advice tendered by his Ministers except in a narrow territory which is sometimes slippery.    (Para 138)

The President means, for all practical purposes, the Minister or the Council of Ministers as the case may be, and his opinion, satisfaction or decision is constitutionally secured when his Ministers arrive at such opinion, satisfaction or decision.    (Para 149)

So the President and Governor, custodians of all executive and other powers under various articles shall, by virtue of these provisions, exercise their formal constitutional powers only upon and in accordance with the advice of their Ministers save in a few well-known exceptional situations. Without being dogmatic or exhaustive, these situations relate to (a) the choice of Prime Minister (Chief Minister), restricted though this choice is by the paramount consideration that he should command a majority in the House ; (b) the dismissal of a Government which has lost its majority in the House but refuses to quit office ; (c) the dissolution of the House where an appeal to the country is necessitous, although in this area the head of State should avoid getting involved in politics and must be advised by his Prime Minister (Chief Minister) who will eventually take the responsibility for the step. Even here the action must be compelled by the peril to democracy and the appeal to the House or to the country must become blatantly obligatory.    (Para 154)

Hence there is no infirmity in the impugned orders on the score that the Governor has not himself perused the papers or passed the orders.    (Para 155)

Sardari Lal v. Union of India, (1971) 3 SCR 461 : (1971) 1 SCC 411, overruled.

Tribhuvandas case, (1968) 1 SCR 455, referred to.

Ram Jawaya Kapur v. State of Punjab, (1955) 2 SCR 225, relied on.

A. Sanjeevi Naidu v. State of Madras, (1970) 3 SCR 505, 511 : (1970) 1 SCC 443, relied on.

Bejoy Lakshmi Cotton Mills Ltd. v. State of W. B., (1967) 2 SCR 406 : AIR 1967 SC 1145 : (1968) 2 SCJ 369, relied on.

R. C. Cooper v. Union of India, (1970) 3 SCR 570 : (1970) 1 SCC 248, relied on.

U. N. Rao v. Indira Gandhi, 1971 Supp SCR 46 : (1971) 2 SCC 63, relied on.

K. N. Rajagopal v. M. Karunanidhi, AIR 1971 SC 1551, relied on.

Jayantilal Amritlal Shodhan v. F. N. Rana, (1964) 5 SCR 29, distinguished.

Brundaban Nayak v. Election Commission, (1965) 3 SCR 53 : AIR 1965 SC 1892 : (1966) 2 SCJ 16, distinguished.

J. P. Mitter v. Chief Justice, Calcutta, (1965) 2 SCR 53, 68, AIR 1965 SC 961, criticised.


SCC Online Web Edition, Copyright © 2021
Page 4      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------------

834                    SUPREME COURT CASES                    (1974) 2 SCC

Union of India v. Jyoti Prakash Mitter, (1971) 3 SCR 483 : (1971) 1 SCC 396,
   criticised.

   **Constitution of India — Article 311(2) — When termination of the services
of a probationer violates the order — When termination order is punitive — To
what extent holding of enquiry material consideration — Government servants**

**Per Ray, C.J. and Palekar, Mathew, Chandrachud and Alagiriswami, JJ.**

   A probationer has no right to continue to hold the post and, therefore,
the termination of his service does not operate as forfeiture of any right and
is to be distinguished from dismissal, removal or reduction in rank. It is punish-
ment only when the termination is founded on misconduct, negligence or inefficiency,
the motive being irrelevant.                    (Paras 61 and 62)

Purshottam Lal Dhingra v. Union of India, 1958 SCR 828, relied on.

   The services of a probationer can be terminated when-the authority is satisfied
regarding his inadequacy for the job or unsuitability for temperamental or other
reasons not involving moral turpitude or when his conduct may result in dismissal
or removal but without a formal enquiry. The fact of holding an enquiry is
not always conclusive. What is decisive is whether the order is really by way
of punishment. The substance of the order and not the form would be decisive.
                                           (Paras 64 to 66)

Gopi Kishore Prasad v. Union of India, AIR 1960 SC 689, relied on.

State of Orissa v. Ram Narayan Das, (1961) 1 SCR 606, relied upon.

Madan Gopal v. State of Punjab, (1963) 3 SCR 716, relied on.

R. C. Lacy v. State of Bihar, C. A. No. 590 of 1962, dt. October 23, 1963, relied on.

R. C. Banerjee v. Union of India, (1964) 2 SCR 135, relied on.

Champaklal G. Shah v. Union of India, (1964) 5 SCR 190, relied on.

Jagdish Mitter v. Union of India, AIR 1964 SC 449, relied on.

K. H. Phadnis v. State of Maharashtra, (1971) 1 SCC 790, relied on.

   If the services of a probationer are terminated on the basis of a report
based on misconduct then it violates Article 311.              (Para 67)

State of Bihar v. Shiva Bhikshuk, (1970) 2 SCC 871, relied on.

   When the High Court entrusted the enquiry against a subordinate judicial
officer to the Vigilance Department and on the basis of the report regarding
allegations of misconduct, the services of a probationer are terminated then the
form is not decisive and order is by way of punishment.        (Paras 79 and 80)

**Per Krishna Iyer and Bhagwati, JJ.**

   The need, in this branch of jurisprudence, is not so much to reach perfect
justice but to lay down a plain test which the administrator and civil servant
can understand ,without subtlety and apply without difficulty. After all, between
'unsuitability' and 'misconduct', 'thin partitions do their bounds divide'. And, over
the years, in the rulings of this Court, the accent has shifted, the cannons
have varied and predictability has proved difficult because the play of legal light
and shade has been baffling.                    (Para 161)

P. K. Tripathi, Spotlights on Constitutional Interpretation (1972), relied on.

   The learned Chief Justice has, in his judgment, tackled this problem and
explained the rule which must govern the determination of the question as to
when termination of service of a probationer can be said to amount to discharge
simpliciter and when it can be said to amount to punishment so as to attract
the inhibitions of Article 311. We are in agreement with what the learned Chief
Justice has said in this connection.              (Para 161)



SCC Online Web Edition, Copyright © 2021
Page 5        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source:  Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------

SAMSHER SINGH *v.* STATE OF PUNJAB (*Ray, C.J.*)                 835

**Government Servants — Punjab Civil Services Punishment and Appeal) Rules, 1952 — Rule 9 — Discharge of probationer for specific fault or unsatisfactory record — Scope of — To be distinguished from discharge for misconduct**

**Per Ray, C.J. and Palekar, Mathew, Chandrachud and Alagiriswami, JJ.**

Rule 9 of the Punjab Civil Services (Punishment and Appeal) Rules, 1952 provides for termination of services of a probationer on a specific fault or on account of unsatisfactory record imply unsuitability. Instead of finding out the unsuitability, the authorities concerned themselves with trifling matters, and therefore, the order of termination is not in accordance with Rule 9.        (Paras 83 to 86)

Since the concerned appellant is already employed in the Ministry of Law, he is only entitled to salary till he obtained employment in the Ministry.    (Para 89)

**Government Servants — Probationer — Employee continued beyond the probation period — Confirmation by implication when negatived**

**Per Ray, C.J. and Palekar, Mathew, Chandrachud and Alagiriswami, JJ.**

Whether a probationer is deemed to be confirmed on completion of the maximum period of probation is an inference to be drawn from the facts of each case and any confirmation by implication is negatived when the show-cause notice is given during or at the end of the probation period.        (Paras 68 to 72)

State of Punjab v. Dharam Singh, (1968) 3 SCR 1, explained.

**Constitution of India — Articles 235 and 311 — Enquiry entrusted to Vigilance Department — Whether covered by the article — Termination simpliciter based on such enquiry if by way of punishment — Punjab Civil Services (Judicial Branch) Rules, 1951 — Rule 7(3) in Part D**

**Per Ray, C.J. and Palekar, Mathew, Chandrachud and Alagiriswami, JJ.**

Under Article 235 of the Constitution of India, the High Court is not justified in entrusting the enquiry against a subordinate judicial officer to the Vigilance Department.                (Paras 73 to 78)

**Constitution of India — Article 141 — Constitutional case — Supreme Court should not hesitate in overruling its earlier rulings when the situation is of extreme importance requiring authoritative statement of the constitutional position by the highest court — In constitutional interpretation such rulings which diverge from the constitutional philosophy or cut down the scope of power of important institutions in the constitution be overruled — Constitutional interpretation**

(Paras 97, 128 and 153)

Appeals accepted                                             G-M/2109/CL

The Judgments of the Court were delivered by

RAY, C.J. (*on behalf of himself, Palekar, Mathew, Chandrachud and Alagiriswami, JJ.*)—These two appeals are from the judgment of the Punjab and Haryana High Court.

2.    The appellants joined the Punjab Civil Service (Judicial Branch). They were both on probation.

3.    By an order dated April 27, 1967, the services of the appellant Samsher Singh were terminated.  The order was as follows :

The Governor of Punjab is pleased to terminate the services of Shri Samsher Singh, Subordinate Judge, on probation under Rule 9 of the Punjab Civil Services (Punishment and Appeal) Rules, 1952 with immediate effect. It is requested that these orders may please be conveyed to the officer concerned under intimation to the Government.


SCC Online Web Edition, Copyright © 2021
Page 6          Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases



-----------------------------------------------------------------------------------------------------------------------------------

4. By an order dated December 15, 1969 the services of the appellant Ishwar Chand Agarwal were terminated. The order was as follows :

> On the recommendation of the High Court of Punjab and Haryana, the Governor of Punjab is pleased to dispense with the services of Shri Ishwar Chand Agarwal, P. C. S. (Judicial Branch), with immediate effect, under Rule 7(3) in Part 'D' of the Punjab Civil Services (Judicial Branch) Rules, 1951, as amended from time to time.

5. The appellants contend that the Governor as the constitutional or the formal head of the State can exercise powers and functions of appointment and removal of members of the Subordinate Judicial Service only personally. The State contends that the Governor exercises powers of appointment and removal conferred on him by or under the Constitution like executive powers of the State Government only on the aid and advice of his Council of Ministers and not personally.

6. The appellants rely on the decision of this Court in *Sardari Lal* v. *Union of India*[1] where it has been held that where the President or the Governor, as the case may be, if satisfied, makes an order under Article 311(2) proviso (*c*) that in the interest of the security of the State it is not expedient to hold an enquiry for dismissal or removal or reduction in rank of an officer, the satisfaction of the President or the Governor is his personal satisfaction. The appellants on the authority of this ruling contend that under Article 234 of the Constitution the appointment as well as the termination of services of Subordinate Judges is to be made by the Governor personally.

7. These two appeals were placed before a larger Bench to consider whether the decision in *Sardari Lal's case* (supra) correctly lays down the law that where the President or the Governor is to be satisfied it is his personal satisfaction.

8. The appellants contend that the power of the Governor under Article 234 of the Constitution is to be exercised by him personally for these reasons.

9. First, there are several constitutional functions, powers and duties of the Governor. These are conferred on him *eo nomine* the Governor. The Governor, is, by and under the Constitution, required to act in his discretion in several matters. These constitutional functions and powers of the Governor *eo nomine* as well as these in the discretion of the Governor are not executive powers of the State within the meaning of Article 154 read with Article 162.

10. Second, the Governor under Article 163 of the Constitution can take aid and advice of his Council of Ministers when he is exercising executive power of the State. The Governor can exercise powers and functions without the aid and advice of his Council of Ministers when he is required by or under the Constitution to act in his discretion, where

---

1. (1971) 3 SCR 461 : (1971) 1 SCC 411.


SCC Online Web Edition, Copyright © 2021
Page 7      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-------------------------------------------------------------------------------------------------------------------------------

he is required to exercise his constitutional functions conferred on him *eo nomine* as the Governor.

11. Third, the aid and advice of the Council of Ministers under Article 163 is different from the allocation of business of the government of the State by the Governor to the Council of Ministers under Article 166(3) of the Constitution. The allocation of business of government under Article 166(3) is an instance of exercise of executive power by the Governor through his Council by allocating or delegating his functions. The aid and advice is a constitutional restriction on the exercise of executive powers of the State by the Governor. The Governor will not be constitutionally competent to exercise these executive powers of the State without the aid and advice of the Council of Ministers.

12. Fourth, the executive powers of the State are vested in the Governor under Article 154(1). The powers of appointment and removal of Subordinate Judges under Article 234 have not been allocated to the Ministers under the Rules of Business of the State of Punjab. Rule 18 of the Rules of Business states that except as otherwise provided by any other rule cases shall ordinarily be disposed of by or under the authority of the Minister-in-charge who may, by means of Standing Orders, give such directions as he thinks fit for the disposal of cases in his department. Rule 7(2) in Part D of the Punjab Civil Service Rules which states that the Governor of Punjab may on the recommendation of the High Court remove from service without assigning any cause any Subordinate Judge or revert him to his substantive post during the period of probation is incapable of allocation to a Minister. Rule 18 of the Rules of Business is subject to exceptions and Rule 7(2) of the Service Rules is such an exception. Therefore, the appellants contend that the power of the Governor to remove Subordinate Judges under Article 234 read with the aforesaid Rule 7(2) of the Service Rules cannot be allocated to a Minister.

13. The Attorney General for the Union, the Additional Solicitor General for the State of Punjab and counsel for the State of Haryana contended that the President is the constitutional head of the Union and the Governor is the constitutional head of the State and the President as well as the Governor exercises all powers and functions conferred on them by or under the Constitution on the aid and advice of the Council of Ministers.

14. In all the articles which speak of powers and functions of the President, the expressions used in relation thereto are 'is satisfied', 'is of opinion', 'as he thinks fit' and 'if it appears to'. In the case of Governor, the expressions used in respect of his powers and functions are 'is satisfied', 'if of opinion' and 'as he thinks fit'.

15. Article 163(1) states that there shall be a Council of Ministers with the Chief Minister at the head to aid and advise the Governor in the exercise of his functions, except in so far as he is by or under this Constitution, required to exercise his functions or any of them in his



SCC Online Web Edition, Copyright © 2021
Page 8        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

discretion. Article 163 (2) states that if any question arises whether any matter is or is not a matter as respects which the Governor is by or under this Constitution required to act in his discretion, the decision of the Governor in his discretion shall be final and the validity of anything done by the Governor shall not be called in question on the ground that he ought or ought not to have acted in his discretion. Extracting the words "in his discretion" in relation to exercise of functions, the appellants contend that the Council of Ministers may aid and advise the Governor in executive functions but the Governor individually and personally in his discretion will exercise the constitutional functions of appointment and removal of officers in State Judicial Service and other State Services.

16. It is noticeable that though in Article 74 it is stated that there shall be a Council of Ministers with the Prime Minister at the head to aid and advise the President in the exercise of his functions, there is no provision in Article 74 comparable to Article 163 that the aid and advice is except in so far as he is required to exercise his functions or any of them in his discretion.

17. It is necessary to find out as to why the words 'in his discretion' are used in relation to some powers of the Governor and not in the case of the President.

18. Article 143 in the Draft Constitution became Article 163 in the Constitution. The Draft Constitution in Article 144(6) said that the functions of the Governor under that article with respect to the appointment and dismissal of Ministers shall be exercised by him in his discretion. Draft Article 144(6) was totally omitted when Article 144 became Article 164 in the Constitution. Again Draft Article 153(3) said that the functions of the Governor under clauses (a) and (c) of clause (2) of the article shall be exercised by him in his discretion. Draft Article 153(3) was totally omitted when it became Article 174 of our Constitution. Draft Article 175 (proviso) said that the Governor "may in his discretion return the Bill together with a message requesting that the House will reconsider the Bill". Those words that "the Governor may in his discretion" were omitted when it became Article 200. The Governor under Article 200 may return the Bill together with a message requesting that the House will reconsider the Bill. Draft Article 188 dealt with provisions in case of grave emergencies. Clauses (1) and (4) in Draft Article 188 used the words "in his discretion" in relation to exercise of power by the Governor. Draft Article 188 was totally omitted. Draft Article 285(1) and (2) dealing with composition and staff of Public Service Commission used the expression "in his discretion" in relation to exercise of power by the Governor in regard to appointment of the Chairman and Members and making of regulation. The words "in his discretion" in relation to exercise of power by the Governor were omitted when it became Article 316. In Paragraph 15(3) of the Sixth Schedule dealing with annulment or suspension of Acts or suspension of Acts and resolutions of District and Regional Councils it was said that the functions of the Governor under the paragraph shall be exercised by



SCC Online Web Edition, Copyright © 2021
Page 9      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------------------

SAMSHER SINGH v. STATE OF PUNJAB (*Ray, C. J.*)          839

him in his discretion.  Sub-paragraph 3 of paragraph 15 of the Sixth Schedule was omitted at the time of enactment of the Constitution.

19.  It is, therefore, understood in the background of these illustrative draft articles as to why Article 143 in the Draft Constitution which became Article 163 in our Constitution used the expression "in his discretion" in regard to some powers of the Governor.

20.  Articles where the expression "acts in his discretion" is used in relation to the powers and functions of the Governor are those which speak of special responsibilities of the Governor.  These articles are 371A(1)(*b*), 371A(1)(*d*), 371A(2)(*b*) and 371A(2)(*f*).  There are two paragraphs in the Sixth Schedule, namely 9(2) and 18(3) where the words "in his discretion" are used in relation to certain powers of the Governor.  Paragraph 9(2) is in relation to determination of amount of royalties payable by licensees or lessees prospecting for, or extracting minerals, to the District Council.  Paragraph 18(3) has been omitted with effect from January 21, 1972.

21.  The provisions contained in Article 371A(1)(*b*) speak of the special responsibility of the Governor of Nagaland with respect to law and order in the State of Nagaland and exercise of his individual judgment as to the action to be taken.  The proviso states that the decision of the Governor in his discretion shall be final and it shall not be called in question.

22.  Article 371A(1)(*d*) states that the Governor shall in his discretion make rules providing for the composition of the Regional Council for the Tuensang District.

23.  Article 371A(2)(*b*) states that for periods mentioned there the Governor shall in his discretion arrange for an equitable allocation of certain funds, between the Tuensang District and the rest of the State.

24.  Article 371A(2)(*f*) states that the final decision on all matters relating to the Tuensang District shall be made by the Governor in his discretion.

25.  The executive power of the Union is vested in the President under Article 53(1).  The executive power of the State is vested in the Governor under Article 154(1).  The expressions "Union" and "State" occur in Articles 53(1) and 154(1) respectively to bring about the federal principles embodied in the Constitution.  Any action taken in the exercise of the executive power of the Union vested in the President under Article 53(1) is taken by the Government of India in the name of the President as will appear in Article 77(1).  Similarly, any action taken in the exercise of the executive power of the State vested in the Governor under Article 154(1) is taken by the Government of the State in the name of the Governor as will appear in Article 166(1).

26.  There are two significant features in regard to the executive action taken in the name of the President or in the name of the Governor.


SCC Online Web Edition, Copyright © 2021
Page 16        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-------------------------------------------------------------------------------------------------------------------------------

846                              SUPREME COURT CASES                              (1974) 2 SCC

by the President are functions of the Union or the functions of the President they have equally to be exercised with the aid and advice of the Council of Ministers, and the same is true of the functions of the Governor except those which he has to exercise in his discretion.

45. In *Sardari Lal's case* (supra) an order was made by the President under sub-clause (*c*) to clause (2) of Article 311 of the Constitution. The order was :

> The President is satisfied that you are unfit to be retained in the public service and ought to be dismissed from service. The President is further satisfied under sub-clause (c) of proviso to clause (2) of Article 311 of the Constitution that in the interest of the security of the State it is not expedient to hold an inquiry.

The order was challenged on the ground that the order was signed by the Joint Secretary and was an order in the name of the President of India and that the Joint Secretary could not exercise the authority on behalf of the President.

46. This Court in *Sardari Lal's case* (supra) relied on two decisions of this Court. One is *Moti Ram Deka* v. *General Manager, N. E. F. Railway, Maligaon, Pandu*[9] and the other is *Jayantilal Amritlal Shodhan's case* (supra). *Moti Ram Deka's case* (supra) was relied on in support of the proposition that the power to dismiss a Government servant at pleasure is outside the scope of Articles 53 and 154 of the Constitution and cannot be delegated by the President or the Governor to a subordinate officer and can be exercised only by the President or the Governor in the manner prescribed by the Constitution. Clause (*c*) of the proviso to Article 311(2) was held by this Court in *Sardari Lal's case* (supra) to mean that the functions of the President under that provision cannot be delegated to anyone else in the case of a civil servant of the Union and the President has to be satisfied personally that in the interest of the security of the State it is not expedient to hold an inquiry prescribed by Article 311(2). In support of this view this Court relied on the observation in *Jayantilal Amritlal Shodhan's case* (supra) that the powers of the President under Article 311(2) cannot be delegated. This Court also stated in *Sardari Lal's case* that the general consensus of the decisions is that the executive functions of the nature entrusted by certain articles in which the President has to be satisfied himself about the existence of certain facts or state of affairs cannot be delegated by him to anyone else.

47. The decision in *Sardari Lal's case* that the President has to be satisfied personally in exercise of executive power or function and that the functions of the President cannot be delegated is with respect not the correct statement of law and is against the established and uniform view of this Court as embodied in several decisions to which reference has already been made. These decisions are from the year 1955 up to the year 1971. These decisions are *Rai Saheb Ram Jawaya Kapur* v. *State of Punjab* (supra), *A. Sanjeevi Naidu* v. *State of Madras* (supra), and

9. (1964) 5 SCR 683 : AIR 1964 SC 600 : (1964) Lab LJ 467.


SCC Online Web Edition, Copyright © 2021
Page 17      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------------------

*U. N. R. Rao* v. *Smt. Indira Gandhi* (supra). These decisions were neither referred to nor considered in *Sardari Lal's case* (supra).

48. The President as well as the Governor is the constitutional or formal head. The President as well as the Governor exercises his powers and functions conferred on him by or under the Constitution on the aid and advice of his Council of Ministers, save in spheres where the Governor is required by or under the Constitution to exercise his functions in his discretion. Wherever the Constitution requires the satisfaction of the President or the Governor for the exercise by the President or the Governor of any power or function, the satisfaction required by the Constitution is not the personal satisfaction of the President or Governor but the satisfaction of the President or Governor in the constitutional sense in the Cabinet system of Government, that is, satisfaction of his Council of Ministers on whose aid and advice the President or the Governor generally exercises all his powers and functions. The decision of any Minister or officer under Rules of Business made under any of these two Articles 77(3) and 166(3) is the decision of the President or the Governor respectively. These articles did not provide for any delegation. Therefore, the decision of a Minister or officer under the Rules of Business is the decision of the President or the Governor.

49. In *Moti Ram Deka's case* (supra) the question for decision was whether Rules 148(3) and 149(3) which provided for termination of the service of a permanent Government servant by a stipulated notice violated Article 311. The majority opinion in *Moti Ram Deka's case* was that Rules 148(3) and 149(3) were invalid inasmuch as they are inconsistent with the provisions of Article 311(2). The decision in *Moti Ram Deka's case* is not an authority for the proposition that the power to dismiss a servant at pleasure is outside the scope of Article 154 and cannot be delegated by the Governor to a subordinate officer.

50. This Court in *State of U. P.* v. *Babu Ram Upadhya*[10] held that the power of the Governor to dismiss at pleasure, subject to the provisions of Article 311, is not an executive power under Article 154 but a constitutional power and is not capable of being delegated to officers subordinate to him. The effect of the judgment in *Babu Ram Upadhya's case* (supra) was that the Governor could not delegate his pleasure to any officer nor could any law provide for the exercise of that pleasure by an officer with the result that statutory rules governing dismissal were binding on every officer though they were subject to the overriding pleasure of the Governor. This would mean that the officer was bound by the rules but the Governor was not.

51. In *Babu Ram Upadhya's case* (supra) the majority view stated seven propositions at p. 701 of the report. Proposition No. 2 is that the power to dismiss a public servant at pleasure is outside the scope of Article 154 and therefore cannot be delegated by the Governor to a subordinate officer and can be exercised by him only in the manner

10. (1961) 2 SCR 679 : AIR 1961 SC 751 : (1961) 1 Cri LJ 773.


Case 1:21-cv-00396-RJL   Document 19-3   Filed 08/14/21   Page 13 of 26

SCC Online Web Edition, Copyright © 2021
Page 30      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

---------------------------------------------------------------------------------------------------------------------------

860                          SUPREME COURT CASES                    (1974) 2 SCC

and a Cabinet answerable to Parliament, substantially  embodying the
conventions of the British Constitution — not a turn-key project imported
from Britain, but an edifice made in India with the knowhow of British
constitutionalism.  If this theory be sound, Government is carried on by
the Ministers according to the Rules of Allocation of Business and,  the
Governor, no more than the Queen, need know or approve orders issued
in his name.  The core of the Westminster system is that the Queen
reigns, but the Ministers rule, except in a few special, though blurred,
areas, one of which certainly is not the appointment and dismissal of civil
servants.  The second major contention of Shri Sanghi, for the appellant,
is that the High Court and Government have, in substance, dismissed
the probationers and, in doing so, violated the constitutional mandate of
Article 311 and the canons of natural justice.  Even on the footing  that
the impugned orders are innocuous terminations of probation, the rules
which embody procedural fairness have been flouted, the consequence
being invalidation.  In the course of the submissions, some criticism was
levelled at the High Court requesting the Director of Vigilance — a
police officer — to investigate into the veracity of charges against judi-
cial officers.  Thirdly, has the High Court the last word regarding
termination of service of judicial personnel, Government being a formal
agency to implement it ?  This was challenged at the Bar, although we
do not finally deal with it, for the reasons to be mentioned later.  Other
lesser illegalities were relied on, but they have been dealt with in the
judgment of the learned Chief Justice, with which we wholly agree. We
confine ourselves to the dual principal pleas whose impact will far exceed
the nullification of orders by Ministers removing judicial probationers
from service and deserve careful study.

100.  The first broad proposition of the appellants is that the President
— and the Governor — are not just constitutional cousins of the British
Queen, but real wielders of power, bestowed on them expressly by the
terms of the text, almost next of kin to their American counterparts with
similar designations.  The issue is so fundamental that its resolution is
necessary to know not only who can declare a probationer's fitness but
who can declare a war in national defence or proclaim a breakdown of
the State constitutional machinery or assent to a Bill passed by Parlia-
ment.  For, if under Article 311 the President must be personally satisfied
for certain small steps he must surely be individually convinced regard-
ing the far more momentous spectrum of functions he is called upon
to discharge under a big bunch of other provisions.  And this reasoning
regarding disposal of gubernatorial business or discharge of official res-
ponsibilities will equally apply to Governors.

101.  A sort of constitutional mini-crisis has been sparked off by
the decision in *Sardari Lal's case* (supra) which regarded the President's
personal satisfaction for dispensing with an enquiry, for reasons of security
of the State under clause (c) of the proviso to Article 311(2) of the
Constitution, as necessary and non-delegable.  We will presently project,
with reference to the articles, the rainbow of administrative quasi-judicial
and legislative tasks specifically directed by the Constitution to be per-


SCC Online Web Edition, Copyright © 2021
Page 31    Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------

formed by the Head of the State in contradistinction to his Council of Ministers, if the appellant's proposition were sound, thus bringing dyarchy by a side wind, as it were, and emasculating the plenary authority of Parliament to whom the President is not but the Council of Ministers is responsible. The peril to the Westminster model of Government is self-evident and serious if vital business of Government is to be transacted de facto and de jure by the head of the State, and the Ministers, who are responsible to the House consisting of the elected representatives of the people, are to be relegated to carrying on of the administration only, subject to the overriding presence, pleasure and powers of their uncrowned republican King.

102. This dilemma of democracy, created by a spreadout of the rationale of *Sardari Lal* (supra), can be resolved only by a study in depth of the political perspective and philosophy and of the conspectus of provisions, as well as an understanding of the models which influenced the Constitution framers. What are the basic fabric, the animating spirit, and jurisdical ideas of our constitutional structure and dynamics ?

103. The law of our Constitution, any student of Indian political history and of comparative constitutional systems will agree, is partly eclectic but primarily an Indo-Anglican version of the Westminster model with quasi-federal adaptations, historical modifications, geo-political mutations and home-spun traditions — basically a blended brew of the British Parliamentary system, and the Government of India Act, 1935 and near-American, nomenclature-wise and in some other respects.

104. Not the Potomac, but the Thames, fertilises the flow of the Yamuna, if we may adopt a riverine imagery. In this thesis we are fortified by precedents of this Court, strengthened by Constituent Assembly proceedings and reinforced by the actual working of the organs involved for about a 'silver jubilee' span of time.

105. Historically, the Indian constitutional aspirations flowed along the British pattern. Granville Austin refers, in his book, to the Motilal Nehru Report and the Tej Bahadur Sapru Report and K. M. Munshi's Draft Constitution, in support. Several pages from the many volumes of the *Constituent Assembly Debates* were read at the Bar and the keynote thought in the lengthy deliberations has been given by Granville Austin in these words : (pp. 116-17)

In the rapidly moving world of the mid-twentieth century, a new India had to be built almost over-night. How was the leadership for this task to be provided ? What type of Executive would be stable, strong, effective, and quick, yet withal, democratic ?

The Assembly chose a slightly modified version of the British Cabinet system. India was to have a President, indirectly elected for a term of five years, who would be a constitutional head of State in the manner of the Monarch in England . . . . As in England, there was to be a Council of Ministers, headed by the Prime Minister and collectively responsible to Parliament, to aid and advise the head of State. The President was to be nominal head of the Executive ; the Prime Minister the real head.



SCC Online Web Edition, Copyright © 2021
Page 48      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------

139. Of course, there is some qualitative difference between the position of the President and the Governor. The former, under Article 74 has no discretionary powers ; the latter too has none, save in the tiny strips covered by Articles 163(2), 371A(1)(*b*) and (*d*), 371A(2)(*b*) and (*f*), VI Schedule. para 9(2) [and VI Schedule, para 18(3), until omitted recently with effect from January 21, 1972]. These discretionary powers exist only where expressly spelt out and even these are not left to the sweet will of the Governor but are remote-controlled by the Union Ministry which is answerable to Parliament for those actions. Again, a minimal area centering round reports to be despatched under Article 356 may not, in the nature of things, be amenable to Ministerial advice. The practice of sending periodical reports to the Union Government is a pre-constitutional one and it is doubtful if a Governor could or should report behind the back of his Ministers. For a Centrally appointed constitutional functionary to keep a dossier on his Ministers or to report against them or to take up public stances critical of Government policy settled by the Cabinet or to interfere in the administration directly — these are unconstitutional faux pas and run counter to Parliamentary system. In all his constitutional 'functions' it is the Ministers who act ; only in the narrow area specifically marked out for discretionary exercise by the Constitution, he is untramelled by the State Ministers' acts and advice. Of course, a limited free-wheeling is available regarding choice of Chief Minister and dismissal of the Ministry, as in the English practice adapted to Indian conditions.

140. Shri Sanghi, Counsel for the appellant, adopted an ingenious argument to get round the holdings of this Court that India has accepted the Cabinet form of Government, by urging that while the Ministers exercise powers by virtue of allocation of business of Government under Article 77(3) and have, on the strength of Article 74, the authority to discharge all the functions of the head of States, still wherever the Constitution has expressly vested powers in the President or Governor, they belong to him alone and cannot be handled on his behalf by Ministers under the relevant Rules of Business. He concedes that we cannot read the articles literally in the context of a Parliamentary Executive but insists on an exception in the category just mentioned. Inspiration for this argument comes from *Sardari Lal* (supra) and a few other cases which do lend countenance to this rather extravagant claim of personal power for President and Governor. How ambitious and subversive such an interpretation can be to Parliamentary (and popular) authority unfolds itself when we survey the vide range of vital powers so enunciated in the Constitution.

141. The argument of the Counsel for the appellant is that wherever the President is invested with power — and the same holds good for the Governor — he is sovereign in his own right and has to exercise the functions *personally* and the orders of a proxy, even a Minister, cannot do duty for the exercise of Presidential power. There is logic in arguing that if, under Article 311, the President or Governor means President or Governor *personally*, under other similar articles the Rules of Business


SCC Online Web Edition, Copyright © 2021
Page 49    Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------------------

SAMSHER SINGH *v.* STATE OF PUNJAB (*Krishna Iyer, J.*)    879

making over exercise of functions to Ministers and officers cannot be valid. Indeed, a whole host of such articles exist in the Constitution, most of them very vital for the daily running of the administration and embracing executive, emergency and legislative powers either of a routine or momentous nature. The power to grant pardon or to remit sentence (Article 161), the power to make appointments including of the Chief Minister (Article 164), the Advocate General (Article 165), the District Judges (Article 233). the Members of the Public Service Commission (Article 316) are of this category. Likewise, the power to prorogue either House of Legislature or to dissolve the Legislative Assembly (Article 174), the right to address or send messages to the Houses of the Legislature (Article 175 and Article 16), the power to assent to Bills or withhold such assent (Article 200), the power to make recommendations for demands of grants [Article 203(3)], and the duty to cause to be laid every year the annual budget (Article 202), the power to promulgate ordinances during recesses of the Legislature (Article 213) also belong to this species of power. Again, the obligation to make available to the Election Commission the requisite staff for discharging the functions conferred by Article 324(1) on the Commission [Article 324(6)], the power to nominate a member of the Anglo-Indian Community to the Assembly in certain situations (Article 333), the power to authorise the use of Hindi in the proceedings in the High Court [Article 348(2)], are illustrative of the functions of the Governor *qua* Governor.

142. Similarly, the President is entrusted with powers and duties covering a wide range by the articles of the Constitution. Indeed, he is the Supreme Commander of the Armed Forces [Article 53(2)], appoints Judges of the Supreme Court and the High Courts and determines the latter's age when dispute arises, has power to refer questions for the advisory opinion of the Supreme Court, (Article 143) and has power to hold that government of a State cannot be carried in accordance with the Constitution (Article 356). The Auditor-General, the Attorney-General, the Governors and the entire army of public servants hold office during the pleasure of the President. Bills cannot become law, even if passed by Parliament, without the assent of the President. Recognising and derecognising Rulers of former native States of India is a power vested in the President. The extraordinary powers of legislation by ordinances, dispensing with enquiries against public servants before dismissal, declaration of emergency and imposition of President's rule by proclamation upon States, are vast powers of profound significance. Indeed, even the power of summoning and proroguing and dissolving the House of the People and returning Bills passed by the Parliament belongs to him. If only we expand the *ratio* of *Sardari Lal* (supra) and *Jayantilal* (supra) to every function which the various articles of the Constitution confer on the President or the Governor, Parliamentary democracy will become a dope and national elections a numerical exercise in expensive futility. We will be compelled to hold that there are two parallel authorities exercising powers of governance of the country, as in the dyarchy days, except that Whitehall is substituted by Rashtrapati Bhavan and Raj



SCC Online Web Edition, Copyright © 2021
Page 50      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases
-----------------------------------------------------------------------------------------------------------------------

880                      SUPREME COURT CASES                    (1974) 2 SCC

Bhavan. The Cabinet will shrink at Union and State levels in political
and administrative authority and, having solemn regard to the gamut of
his powers and responsibilities, the Head of State will be reincarnation
of Her Majesty's Secretary of State for India, untroubled by even the
British Parliament — a little taller in power than the American President.
Such a distortion, by interpretation, it appears to us, would virtually amount
to a subversion of the structure, substance and vitality of our Republic,
particularly when we remember that Governors are but appointed functio-
naries and the President himself is elected on a limited indirect basis. As we
have already indicated, the overwhelming catena of authorities of this
Court have established over the decades that the cabinet form of Govern-
ment and the Parliamentary system have been adopted in India and the
contrary concept must be rejected as incredibly allergic to our political
genius, constitutional creed and culture.

143. The contention of the appellant, however, has been built upon
*Sardari Lal* v. *Union of India* (supra). There the Court had to consider
"the exercise of powers expressly conferred on the President by clause (*c*)
of the proviso to Article 311(2) of the Constitution". It was common
ground in that case that the President had no occasion to deal with the
case of the appellant himself and the order was made by a subordinate
official of the Government of India. The dispute was as to whether
the function of dispensing with enquiry in the name of the security of
the State had to be performed by the President *personally,* under clause(*c*)
of the proviso to Article 311(2), or could be one of the functions
allocable under the Allocation of Business Rules. Of course, the relevant
text of Article 311 speaks of the President being satisfied and the Court
came to the conclusion that what was intended was not Ministerial but
Presidential satisfaction. Grover, J. speaking for a unanimous Court,
observed :

> On the principles which have been enunciated by this Court, the function
> in clause (c) of the proviso to Article 311(2) cannot be delegated by the President
> to any one else in the case of a civil servant of the Union. In other words he
> has to be satisfied **personally** that in the interest of the security of the State, it is
> not expedient to hold the inquiry prescribed by clause (2). In the first place, the
> general consensus has been that executive functions of the nature entrusted by
> the articles, some of which have been mentioned before and in particular those
> articles in which the President has to be satisfied himself about the existence of
> certain fact or state of affairs cannot be delegated by him to any one else. Secondly
> even with regard to clause (c) of the proviso, there is a specific observation in the
> passage extracted above from the case of **Jayantilal Amrit Lal Shodhan** that the
> powers of the President under that provision cannot be delegated. Thirdly, the
> dichotomy which has been specifically introduced between the authority mentioned
> in clause (b) and the President mentioned in clause (c) of the proviso cannot be
> without significance. The Constitution makers apparently felt that a matter in
> which the interest of the security of the State had to be considered should receive
> the **personal** attention of the President or the head of the State and he should be
> **himself satisfied** that an inquiry under the substantive part of clause (2) of
> Article 311 was not expedient for the reasons stated in clause (c) of the proviso
> in the case of a particular servant.

144. Some observations in the ruling relied upon, namely, *Jayantilal
Amritlal Shodhan* v. *F. N. Rana* (supra) apparently seem to support the


SCC Online Web Edition, Copyright © 2021
Page 51        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases
-----------------------------------------------------------------------------------------------------------------------------------

conclusion reached in *Sardari Lal* (supra), but it must be remembered that the actual case turned on the constitutionality of the President delegating executive powers conferred on him by Article 258 to a Government of a State. In that case a distinction was made between functions with which the *Union Government* is invested and those vested in the *President*. The Court took the view that Article 258(1) did not permit the President to part with powers and functions with which he is, by express provisions of the Constitution *qua* President, invested. The particular observations relied upon in *Sardari Lal* may well be extracted here :

> The power to promulgate ordinances under Article 123 ; to suspend the provisions of Articles 268 to 279 during an emergency ; to declare failure of the constitutional machinery in States under Article 356 ; to declare a financial emergency under Article 360 ; to make rules regarding the recruitment and conditions of service of persons appointed to posts and services in connection with the affairs of the Union under Article 309 — to enumerate a few out of the various powers — are not powers of the Union Government ; these are powers vested in the President by the Constitution and are incapable of being delegated or entrusted to any other body or authority under Article 258(1). The plea that the very nature of these powers is such that they could not be intended to be entrusted under Article 258(1) to the State or officer of the State, and, therefore, that clause must have a limited content, proceeds upon an obvious fallacy. Those powers cannot be delegated under Article 258(1) because they are not the powers of the Union, and not because of their special character. There is a vast array of other powers exercisable by the President — to mention only a few — appointment of Judges ; Articles 124 and 217, appointment of Committees of Official Languages Act ; Article 344, appointment of Commissions to investigate conditions of backward classes ; Article 340, appointment of Special Officer for Scheduled Castes and Tribes ; Article 338, exercise of his pleasure to terminate employment ; Article 310, declaration that in the interest of the security of the State it is not expedient to give a public servant sought to be dismissed an opportunity contemplated by Article 311(2) — these are executive powers of the President and may not be delegated or entrusted to another body or officer because they do not fall within Article 258.

145. The Court there was not concerned with the question whether the President must exercise these executive powers personally or they can be exercised by a Minister or an officer on his behalf according to the allocation made under the Rules of Business.

146. Before jettisoning wholesale the theory of absolute power of Presidency we must deal with two articles of the Constitution, one relating to the determination of the age of High Court Judges [Article 217(3)] and the other relating to the Election Commission (Article 361) which have come up for judicial consideration. Counsel for the appellant has relied on passages from these cases which hark back, in a way, to the theory of individual judgment of the head of State.

147. In *J. P. Mitter* v. *Chief Justice, Calcutta*[30] this Court had to consider the decision of the Government of India on the age of a Judge of the Calcutta High Court and, in that context, had to ascertain the true scope of effect of Article 217(3) which clothes the President with exclusive jurisdiction to determine the age of a Judge finally. In

---

30. (1965) 2 SCR 53 68 : AIR 1965 SC 961.

SCC Online Web Edition, Copyright © 2021
Page 52      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases



-----------------------------------------------------------------------------------------------------------------------------------

882                              **SUPREME COURT CASES**                              (1974) 2 SCC

that case the Ministry of Home Affairs went through the exercise prescribed in Article 217(3). "The then Home Minister wrote to the Chief Minister, West Bengal, that he had consulted the Chief Justice of India and he agreed with the advice given to him by the Chief Justice, and so he had decided that the date of birth of the appellant was . . . . It is this decision which was, in due course, communicated to the appellant". When the said decision was attacked as one reached by the Home Minister only and not by the President *personally*, the Court observed :

> The alternative stand which the appellant took was that the Executive was not entitled to determine his age, and it must be remembered that this stand was taken before Article 217(3) was inserted in the Constitution; the appellant was undoubtedly justified in contending that the Executive was not competent to determine the question about his age, because that is a matter which would have to be tried normally, in judicial proceedings instituted before High Courts of competent jurisdiction. There is considerable force in the plea which the appellant took at the initial stages of this controversy that if the Executive is allowed to determine the age of a sitting Judge of a High Court, that would seriously affect the independence of the Judiciary itself.

Based on this reasoning, the Court quashed the order, the *ratio* of the case being that the President himself should decide the age of the Judge, uninfluenced by 'the Executive, i.e., by the Minister in charge of the portfolio dealing with justice.

148. This decision was reiterated in *Union of India* v. *Jyoti Prakash Mitter*[11]. Although an argument was made that the President was guided in that case by the Minister of Home Affairs and by the Prime Minister, it was repelled by the Court which, on the facts, found the decision to be that of the President himself and not of the Prime Minister or the Home Minister.

149. In the light of the scheme of the Constitution we have already referred to, it is doubtful whether such an interpretaion as to the personal satisfaction of the President is correct. We are of the view that the President means, for all practical purposes, the Minister or the Council of Ministers as the case may be, and his opinion. satisfaction or decision is constitutionally secured when his Ministers arrive at such opinion satisfaction or decision. The independence of the Judiciary, which is a cardinal principle of the Constitution and has been relied on to justify the deviation, is guarded by the relevant article making consultation with the Chief Justice of India obligatory. In all conceivable cases consultation with that highest dignitary of Indian justice will and should be accepted by the Government of India and the Court will have an opportunity to examine if any other extraneous circumstances have entered into the verdict of the Minister, if he departs from the counsel given by the Chief Justice of India. In practice the last word in such a sensitive subject must belong to the Chief Justice of India, the rejection of his advice being ordinarily regarded as prompted by oblique considerations vitiating the order. In this view it is immaterial whether the President or the Prime Minister or the Minister for Justice formally decides the issue.

31. (1971) 3 SCR 483 : (1971) 1 SCC 396.




SCC Online Web Edition, Copyright © 2021
Page 53      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-------------------------------------------------------------------------------------------------------------------------------------

SAMSHER SINGH *v.* STATE OF PUNJAB (*Krishna Iyer, J.*)     883

150. In *Brundaban Nayak* v. *Election Commission*[32] another sensitive situation relating to the functions of the President (Article 103) and the Governor (Article 192) arose. It is a sacred principle of our democracy, like the independence of the Judiciary, that decisions on the disqualifications of Members of Assemblies should be unbiassed. While formally the power to decide a dispute in this behalf is vested in the President and the Governor under Articles 103 and 192, respectively, it would be a travesty of impartiality if such decision were to be made on the aid and advice of a Ministry which is essentially chosen from a party or combination of parties. How can a political activist with party loyalty in our pluralistic society judge a cause in which he has deep concern? Therefore the Constitution has made the Election Commission the real arbiter in the dispute, it being assumed that the Election Commission is free and fearless and unobliged to the party in power. The constitutional mechanism is that the President (Governor) shall refer the question of disqualification of a member for the opinion of the Election Commission and "shall act according to such opinion", so that whether the right to decide is formally in the President or is to be exercised by the aid and advice of his Ministers, it is immaterial, since the actual adjudication has always to be made by the Election Commission which binds the Government and the President merely appends his signature to the order in regard to such decision. In this view, *Brundaban* (supra) deals with a special situation and does not affect the otherwise universal rule of the head of State being bound to act only in accordance with the aid and advice of his Ministers. Gajendragadkar, C.J. outlined the scheme relating to the decision about the disqualification of Members of the Legislature, at p. 60, thus:

> The object of this provision (Article 192) clearly is to leave it to the Election Commission to decide the matter, though the decision as such would formally be pronounced in the name of the Governor. When the Governor pronounces his decision under Article 192(1), he is not required to consult his Council of Ministers; he is not even required to consider and decide the matter himself; he has merely to forward the question to the Election Commission for its opinion, and as soon as the opinion is received, 'he shall act according to such opinion.' In regard to complaints made against the election of Members to the Legislative Assembly, the jurisdiction to decide such complaints is left with the Election Tribunal under the relevant provisions of the Act. That means that all allegations made challenging the validity of the election of any Member, have to be tried by the Election Tribunals constituted by the Election Commission. Similarly, all complaints in respect of disqualifications subsequently incurred by Members who have been validly elected, have, in substance, to be tried by the Election Commission, though the decision in form has to be pronounced by the Governor.

All these add up to making a Sovereign who can scotch the Legislature, rubberise the Judiciary and overrule the Cabinet. One has only to cast a glance at similar powers relating to the Governor to reach the same conclusion at the State level, with the additional factor that an area of discretionary power is expressly left to him. What is of grave import is that the Court has no jurisdiction to inquire what advice has been given by the Ministers to the President or the Governor and thus the

32. (1965) 3 SCR 53 : AIR 1965 SC 1892 : (1966) 2 SCJ 166.

SCC Online Web Edition, Copyright © 2021
Page 54        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases



-----------------------------------------------------------------------------------------------------------------------------------

684 **SUPREME COURT CASES** (1974) 2 SCC

effective judicial check on exercise of power is also under eclipse. If we read these powers literally as 'personal' to the head of State, the conclusion is rather disquieting in a country which has already had a long night of imperial subjection and Monarchical tradition. Dr. Ambedkar expressed this warning in the Constituent Assembly in words which have contemporary relevance :

> This caution is far more necessary in the case of India than in the case of any other country. For, in India, **Bhakti** or what may be called the path of devotion or hero-worship, plays a part in its politics unequalled in magnitude by the part it plays in the politics of any other country in the world. **Bhakti** in religion may be a road to the salvation of the soul. But in politics, **Bhakti** or hero-worship is a sure road to degradation and eventual dictatorship.[33]

151. The omnipotence of the President and of the Governor at State level — is euphemistically inscribed in the pages of our Fundamental Law with the obvious intent that even where express conferment of power or functions is written into the articles, such business has to be disposed of decisively by the Ministry answerable to the Legislature and through it vicariously to the people, thus vindicating our democracy instead of surrendering it to a single summit soul whose deification is incompatible with the basics of our political architecture — lest national elections become but Dead Sea fruits, legislative organs become labels full of sound and fury signifying nothing and the Council of Ministers put in a quandary of responsibility to the House of the People and submission to the personal decision of the head of State. A Parliamentary-style Republic like ours could not have conceptualised its self-liquidation by this process. On the contrary, democratic capital-formation to strengthen the people's rights can be achieved only through invigoration of the mechanism of Cabinet-House-Elections.

152. Certainly, the key words of wide import in the fasciculus of articles relating to the President and Governor are 'functions' (Articles 74 and 163) and 'business' and allocation of portfolios, Rules of Business and delegation to subordinate officials are but the methodology of working out the Cabinet process. Long arguments on the terminological niceties of the various provisions, divorced from the essentials of Parliamentary perspective, will land us in 'Himalayan' constitutional blunders. Similarly, expressions like 'is satisfied', 'opinion', 'as he thinks fit', 'if it appears to' have to be interpreted by super-imposing the invisible but very real presence of the Ministry over the head of State.

153. Before we conclude on this part of the case we remind ourselves that so long as the Constitution shall endure — no one can say how long, each generation being almost a separate nation — this Court must exist with it, deciding in the peaceful forms of forensic proceeding, the delicate and dangerous controversies inter alia, between sub-sovereignties and citizens. And the pronouncements of this summit Tribunal being law under Article 141, it binds until reinterpreted differently and competently. But as Judges we have solemnly to remind

33. *Constitutional Government in India*—by M.V. Pylee p. 770—1965 Edition-Asia Publishing House


SCC Online Web Edition, Copyright © 2021
Page 55      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-------------------------------------------------------------------------------------------------------------------------------

SAMSHER SINGH *v.* STATE OF PUNJAB (*Krishna Iyer, J.*)      885

ourselves of the words of the historian of the U. S. Supreme Court, Mr. Charles Warren[34] :

> However the Court interpret the provisions of the Constitution, it is still the Constitution which is the law and not the decision of the Court.

Nor is *Sardari Lal* (supra) of such antiquity and moment that a reversal would upset the sanctity of *stare decisis*. Some rulings, even of the highest Court, when running against the current of case-law and the clear stream of Constitutional thought, may have to fall "into the same class as restricted railroad ticket, good for the day and train only", to adopt the language of Justice Roberts[35].

154. We declare the law of this branch of our Constitution to be that the President and Governor, custodians of all executive and other powers under various articles shall, by virtue of these provisions, exercise their formal constitutional powers only upon and in accordance with the advice of their Ministers save in a few well-known exceptional situations. Without being dogmatic or exhaustive, these situations relate to (*a*) the choice of Prime Minister (Chief Minister), restricted though this choice is by the paramount consideration that he should command a majority in the House ; (*b*) the dismissal of a Government which has lost its majority in the House, but refuses to quit office ; (*c*) the dissolution of the House where an appeal to the country is necessitous, although in this area the head of State should avoid getting involved in politics and must be advised by his Prime Minister (Chief Minister) who will eventually take the responsibility for the step. We do not examine in detail the constitutional proprieties in these predicaments except to utter the caution that even here the action must be compelled by the peril to democracy and the appeal to the House or to the country must become blatantly obligatory. We have no doubt that de Smith's statement[36] regarding royal assent holds good for the President and Governor in India :

> Refusal of the royal assent on the ground that the Monarch strongly disapproved of a Bill or that it was intensely controversial would nevertheless be unconstitutional. The only circumstances in which the withholding of the royal assent might be justifiable would be if the Government itself were to advise such a course — a highly improbable contingency — or possibly if it was notorious that a Bill had been passed in disregard to mandatory procedural requirements ; but since the Government in the latter situation would be of the opinion that the deviation would not affect the validity of the measure once it had been assented to, prudence would suggest the giving of assent.

155. So far as the appeals before us are concerned, the effect is that there is no infirmity in the impugned orders on the score that the Governor has not himself perused the papers or passed the orders.

156. The second spinal issue in the case, as earlier indicated, bears on fearless justice, another prominent creed of our Constitution. The independence of the Judiciary is a fighting faith of our founding document. Since the days of Lord Coke, judicial independence from executive control

---

34. *The Supreme Court in United States History*, (1922) III pp. 470-471.
35. *Smith* v. *Allesight*, 321 US 649, 665.

36. *Constitutional and Administrative Law*— by S A. de Smith—Penguin Books on Foundations of Law.


SCC Online Web Edition, Copyright © 2021
Page 56          Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------------------------------

886                                    **SUPREME COURT CASES**                         (1974) 2 SCC

has been accomplished in England. The framers of our Constitution, impressed by this example, have fortified the cherished value of the rule of law by incorporating provisions to insulate the Judicature. Justice becomes fair and free only if institutional immunity and autonomy are guaranteed (of course there are other dimensions to judicial independence which are important but irrelevant for the present discussion). The exclusion of executive interference with the Subordinate Judiciary, i.e., grass-roots justice, can prove a teasing illusion if the control over them is vested in two masters, viz., the High Court and the Government, the latter being otherwise stronger. Sometimes a transfer could be more harmful than punishment and disciplinary control by the High Court can also be stultified by an appellate jurisdiction being vested in Government over the High Court's administrative orders. This constitutional perspective informed the framers of our Constitution when they enacted the relevant Articles, 233 to 237. Any interpretation of administrative jurisdiction of the High Court over its subordinate limbs must be aglow with the thought that separation of the Executive from the Judiciary is a cardinal principle of our Constitution. However, we do not pursue this question further since, in the present case, Government has agreed with and acted on the High Courts 'recommendation' and, moreover, the methodology of conflict resolution, when the view of the High Court is unpalatable to the Executive, falls to be directly considered in a different set of pending appeals.

157. Nevertheless, we must refer to one aspect of the matter. It is nice on paper to invest disciplinary authority over the Subordinate Judiciary in the High Court. But when charges or aspersions of corrupt practice or incompetence against the members of the Lower Judiciary are brought to the cognisance of the High Court, there is an operational handicap. Who is to investigate into the truth of the allegations? Is there a machinery at the exclusive disposal of the High Court to probe into the prima facie veracity of such complaints? It is awkward and ineffectual for a superior Judge, trained in formal procedures and weighing and not collecting evidence, to undertake the *sub rosa*, informal extensive and technical job of investigation which demands a different kind of expertise. At the same time, if the police are permitted to check upon complaints, the successful invasion of judicial independence is inevitable. No Magistrate may function fearlessly if the prosecuting department may also investigate against him. It is indeed regrettable that this sensitive side of the issue was over-looked by the Punjab High Court when it requested Government to direct the Vigilance Commissioner to report on a member of the Judicature. The true intendment of judicial independence is fulfilled not by declining to investigate into delinquencies of judicial personnel nor by holding an open enquiry by a Judge which is a poor substitute for collection of evidence, but by creating an apparatus for collecting intelligence and presenting evidence, which is under the complete control of the High Court. This is no new idea but had been mooted in the '50s at an all-India Law Minister's Conference but at least, now after such a long lapse of time, this felt want may be remedied.


SCC Online Web Edition, Copyright © 2021
Page 57      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------

158. The third contention, argued elaborately by both sides, turns on the scope and sweep of Article 311 in the background of the rules framed under Article 309 and the 'pleasure' doctrine expressed in Article 310. The two probationers, who are appellants, have contended that what purport to be simple terminations of probation on the ground of 'unsuitability' are really and in substance by way of punishment and falling short of the rigorous prescriptions of Article 311(2), they are bad. Their complaint is that penal consequences have been visited on them by the impugned orders and since even a probationer is protected by Article 311(2), in such situations the Court must void those orders. Naturally, the launching pad of the argument is *Dhingra's case* (supra). In a sense, *Dhingra* is the *Magna Carta* of the Indian civil servant, although it has spawned diverse judicial trends, difficult to be disciplined into one single, simple, practical formula applicable to termination of probation of freshers and of the services of temporary employees. The judicial search has turned the focus on the discovery of the element of punishment in the order passed by Government. If the proceedings are disciplinary, the rule in *Dhingra's case* is attracted. But if the termination is innocuous and does not stigmatise the probationer or temporary servant, the constitutional shield of Article 311 is unavailable. In a series of cases, the Court has wrestled with the problem "of devising a principle or rule to determine this question" — where non-punitive termination of probation for unsuitability ends and punitive action for delinquency begins. In *Gopi Kishore* (supra) this Court ruled that where the State holds an enquiry on the basis of complaints of misconduct against a probationer or temporary servant, the employer must be presumed to have abandoned his right to terminate simpliciter and to have undertaken disciplinary proceedings bringing in its wake the protective operation of Article 311. At first flush, the distinguishing mark would therefore appear to be the holding of an inquiry into the complaints of misconduct. Sinha, C.J. observed :

It is true that, if the Government came to the conclusion that the respondent was not a fit and proper person to hold a post in the public service of the State, it could discharge him without holding any enquiry into his alleged misconduct . . . . Instead of taking that easy course, the Government chose the more difficult one of starting proceedings against him and of branding him as a dishonest and an incompetent officer. He had the right, in those circumstances, to insist upon the protection of Article 311(2) of the Constitution.

The learned Chief Justice summarised the legal position thus :

1. Appointment to a post on probation gives the person so appointed no right to the post and his services may be terminated, without taking recourse to the proceedings laid down in the relevant rules for dismissing a public servant, or removing him from service.

2. The termination of employment of a person holding a post on probation without any enquiry whatsoever cannot be said to deprive him of any right to a post and is, therefore, no punishment.

3. But if instead of terminating such a person's service without any enquiry, the employer chooses to hold an enquiry into his alleged misconduct, or inefficiency, or for some similar reason, the termination of service is by way of punishment, because it puts a stigma on his competence and thus affects his future


SCC Online Web Edition, Copyright © 2021
Page 58    Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------------------------------

888                         **SUPREME COURT CASES**                         (1974) 2 SCC

career. In such a case, he is entitled to the protection of Article 311(2) of the Constitution.

4.   . . . .

5. But, if the employer simply terminates the services of a probationer without holding an enquiry and without giving him a reasonable chance of showing cause against his removal from service, the probationary civil servant can have no cause of action, even though the real motive behind the removal from service may have been that his employer thought him to be unsuitable for the post he was temporarily holding, on account of his misconduct, or inefficiency, or some such case.

159. The fifth proposition states that the real motive behind the removal is irrelevant and the holding of an enquiry leaving an indelible stain as a consequence alone attracts Article 311(2). *Ram Narayan Das* (supra) dealt with a case where the rules under the proviso to Article 309 provided some sort of an enquiry before termination of probation. In such a case, the *enquiry* test would necessarily break down and so the Court had to devise a different test. Mr. Justice Shah (as he then was) stated the rule thus :

> The enquiry against the respondent was for ascertaining whether he was fit to be confirmed . . . . The third proposition in . . . (the **Gopi Kishore**) case refers to an enquiry into allegations of misconduct or inefficiency with a view, if they were found established, to imposing punishment and not to an enquiry whether a probationer should be confirmed. Therefore, the fact of holding of an enquiry is not decisive of the question. What is decisive is whether the order is by way of punishment, in the light of the tests laid down in **Purshottam Lal Dhingra's Case.**

Thus a shift was made from the *factum of enquiry* to the *object of the enquiry*. *Madan Gopal* (supra) found the Court applying the *object of enquiry* doctrine to a simple order of termination which had been preceded by a show cause notice and enquiry. It was held that if the enquiry was intended to take traumatic action, the innocent phraseology of the order made no difference. Then came *Jagdish Mitter* v. *Union of India* (supra) where Mr. Justice Gajendragadkar (as he then was) held :

> No doubt the order purports to be one of discharge and, as such, can be referred to the power of the authority to terminate the temporary appointment with one month's notice. But it seems to us that when the order refers to the fact that the appellant was found undesirable to be retained in Government service, it expressly casts a stigma on the appellant and in that sense, must be held to be an order of dismissal and not a mere order of discharge.

160. Thus we see how membranous distinctions have been evolved between an enquiry merely to ascertain unsuitability and one held to punish the delinquent — too impractical and uncertain, particularly when we remember that the machinery to apply this delicate test is the administrator, untrained in legal nuances. The impact on the 'fired' individual, be it termination of probation or removal from service, is often the same. Referring to the anomaly of the *object of inquiry* test, Dr. Tripathi has pointed out[37] :

> The 'object of inquiry' rule discourages this fair procedure and the impulse

37. *Spotlights on Constitutional Interpretation*—1972—N. M. Tripathi Pvt. Ltd., Bombay.



SCC Online Web Edition, Copyright © 2021
Page 59          Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-------------------------------------------------------------------------------------------------------------------------------------

of justice behind it by insisting that the order setting up the inquiry will be judicially scrutinised for the purpose of ascertaining the object of the inquiry.

Again, could it be that if you summarily pack off a probationer, the order is judicially unscrutable and immune?  If you conscientiously seek to satisfy yourself about allegations by some sort of enquiry you get caught in the coils of law, however, harmlessly the order may be phrased. And so, this sphinx-complex has had to give way in later cases.  In some cases the rule of guidance has been stated to be 'the substance of the matter' and the 'foundation' of the order.  When does 'motive' trespass into 'foundation'?  When do we lift the veil of 'form' to touch the 'substance'?  When the Court says so.  These 'Freudian' frontiers obviously fail in the work-a-day world and Dr. Tripathi's observations in this context are not without force.  He says :

> As already explained, in a situation where the order of termination purports to be a mere order of discharge without stating the stigmatizing results of the departmental enquiry a search for the 'substance of the matter' will be indistinguishable from a search for the motive (real, unrevealed object) of the order.

> Failure to appreciate this relationship between motive (the real, but unrevealed object) and form (the apparent, or officially revealed object) in the present context has led to an unreal interplay of words and phrases wherein symbols like 'motive', 'substance', 'form' or 'direct' parade in different combinations without communicating precise situations or entities in the world of facts.

161.   The need, in this branch of jurisprudence, is not so much to reach perfect justice but to lay down a plain test which the administrator and civil servant can understand without subtlety and apply without difficulty.  After all, between 'unsuitability' and 'misconduct', 'thin partitions do their bounds divide'.  And, over the years, in the rulings of this Court, the accent has shifted, the canons have varied and predictability has proved difficult because the play of legal light and shade has been baffling.  The learned Chief Justice has, in his judgment, tackled this problem and explained the rule which must govern the determination of the question as to when termination of service of a probationer can be said to amount to discharge simpliciter and when it can be said to amount to punishment so as to attract the inhibition of Article 311.  We are in agreement with what the learned Chief Justice has said in this connection.  So far as the present case is concerned, it is clear on the facts set out in the judgment of the learned Chief Justice that there is breach of the requirements of Rule 7 and the orders of termination passed against the appellants are, on that account, liable to be quashed and set aside.

162.   In the result, we agree with the conclusion reached by the learned Chief Justice and concur in the order proposed by him.

———————