# Exhibit 4

to the Expert Opinion of
Justice (Retired) Pradeep Nandrajog

dated August 13, 2021



SCC Online Web Edition, Copyright © 2021
Page 1        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------

230                     SUPREME COURT CASES                    (1985) 3 SCC

### (1985) 3 Supreme Court Cases 230

(BEFORE Y.V. CHANDRACHUD, C.J. AND D.A. DESAI, O. CHINNAPPA
REDDY, E.S. VENKATARAMIAH AND RANGANATH MISRA, JJ.)

M/s McDOWELL AND COMPANY LIMITED     ..     Appellant ;

*Versus*

COMMERCIAL TAX OFFICER     ..     Respondent.

Civil Appeal No. 570 of 1983†,
decided on April 17, 1985

**Sales Tax — Turnover of liquor manufacturer — Sale of liquor by manu-
facturer on payment of excise duty by purchaser direct to excise authorities or
State exchequer in terms of Rules or arrangement or contract — Held, excise
duty so paid would form part of manufacturer's turnover — Primary liability
to pay excise duty on manufacturer — A.P. General Sales Tax Act, 1957,
Section 2(s) — A.P. Distillery Rules, 1970, Rules 76 and 79 (as amended in
1981) — A.P. Indian Liquor (Storage in Bond) Rules, 1969, Rules 5 and 10 —
A.P. Excise Act, 1968, Sections 21, 28 and 65**

**Taxation — Colourable measures for avoidance of tax by making suitable
arrangements in commercial transactions — Discouraged**

**Interpretation of Statutes — Taxing statutes — Statutes should be so
construed as to disfavour tax evading measures adopted by the assessees — Proper
rule for interpretation stated — Old rule criticised**

The appellant carries on business of manufacture and sale of Indian
liquors in their distillery established in the State of A.P. The sale of liquor
from its distillery was arranged by making it a condition precedent for the whole-
sale buyers to pay the excise duty directly to the excise authorities or the State
exchequer for obtaining distillery passes for release of liquor and on presenta-
tion of the same the bills of sales or invoices were used to be prepared by the
distillery showing the price of liquor but excluding excise duty. The appellant's
books of account also did not contain any reference to excise duty paid by the
purchaser. The Supreme Court in the earlier **McDowell & Co.** case, (1977)
1 SCC 441 conformed with the stand taken by the appellant that the excise
duty directly paid by the purchasers was not includible in the turnover of
the appellant. Rules 76 and 79 of the A.P. Distillery Rules were amended
in 1981 inter alia enjoining the D-2 license holders, like the appellant, to pay
the excise duty before removal of liquor from distillery. On the basis of
the amended provisions, the respondent CTO issued a notice to the appellant
proposing to include the excise duty paid directly by buyers of the appellant's
liquor in the appellant's turnover. The appellant's writ petition against the
notice was dismissed by the High Court. When leave was granted by
a Division Bench of Supreme Court, the correctness of the decision in the
earlier **McDowell & Co.** case was doubted and the matter was referred to the
present larger Bench. Dismissing the appeal the Supreme Court

†From the Judgment and Order dated December 6, 1982 of the High Court
  of Andhra Pradesh in Writ Petition No. 7985 of 1982



SCC Online Web Edition, Copyright © 2021
Page 2      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-------------------------------------------------------------------------------------------------------------------------------

**Held :**

**Per Curiam**

The definition of turnover in Section 2(s) of the A.P. General Sales Tax Act clearly indicates that the total amount charged as the consideration for the sale is to be taken into account for determining the turnover.  Where a bill of sale is issued the total amount set out therein is to be taken into account.  According to the normal commercial practice, excise duty should have been reflected in the bill either as merged in price or being shown separately.  In the hands of the buyer the cost of liquor is what is charged by the appellant manufacturer under its bill together with excise duty which the buyer has directly paid on seller's account.  Excise duty though paid by the purchaser to meet the liability of the appellant, is thus a part of the consideration for the sale and is includible in the turnover of the appellant.  The purchaser has paid the tax because the law asks him to pay it on behalf of the manufacturer.

(Paras 33 and 35)

McDowell & Co. Ltd. v. C.T.O., (1977) 1 SCC 441 : 1977 SCC (Tax) 198 : (1977) 1 SCR 914, overruled

Hindustan Sugar Mills v. State of Rajasthan, (1978) 4 SCC 271 : 1978 SCC (Tax) 225 : (1979) 1 SCR 276 ; Paprika Ltd. v. Board of Trade, (1944) 1 All ER 372 ; George Oakes (P) Ltd. v. State of Madras, (1962) 2 SCR 570 : AIR 1962 SC 1037 : (1961) 12 STC 476 and Love v. Norman Wright (Builders) Ltd., (1944) 1 All ER 618, relied on

The view taken in the earlier **McDowell & Co. case** that when the excise duty does not go into the common till of the assessee and it does not become a part of the circulating capital, it does not constitute turnover, is not the decisive test for determining whether such duty would constitute turnover.

(Para 40)

George Oakes (Pvt.) Ltd. v. State of Madras, 13 STC 98 : AIR 1962 SC 1352, limited

For determining whether excise duty is a part of the turnover, reference to the Schedule to the A.P. General Sales Tax Act is wholly irrelevant.  However, after amendment of the Schedule in 1984 sale of liquor has now been made exigible to tax at every point other than the point of last sale in the State.

(Para 38)

The incidence of excise duty is directly relatable to manufacture but its collection can be deferred to a later stage as a measure of convenience or expediency.  Payment of excise duty is the primary and exclusive obligation of the manufacturer and is a condition precedent to the removal of the liquor from the distillery.  So when payment is made under a contract or arrangement by any other person, or when under a prior agreement, the legal liability of the manufacturer-dealer for payment of excise duty is satisfied by the purchaser by direct payment to the excise authorities or to the State exchequer, it would amount to meeting of the obligation of the manufacturer and nothing more.  Rules 80 to 84 do not militate against this conclusion.  The view expressed in earlier **McDowell & Co. case** that the purchasers of liquor seeking distillery passes are also legally responsible for payment of excise duty is too broad.  Even if the purchasers paid the duty under the Distillery Rules as it stood prior to their amendment in 1981, the provisions were merely enabling and did not give rise to any legal responsibility for meeting the burden resting on the manufacturer to pay the duty.  The relevant consideration is not whether the law permits the incidence of the duty to be passed on to


SCC Online Web Edition, Copyright © 2021
Page 3        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases
-----------------------------------------------------------------------------------------------------------------

the purchaser but whether there is a prohibition against the passing of it.  If there is no bar, the incidence would be passed on to the purchaser in accordance with normal commercial practice.  By virtue of the amendment of Rules 76 and 79 in 1981, the holder of D-2 licence, such as the appellant, has to pay the excise duty.                                        (Paras 29 and 34 to 36)

McDowell & Co. Ltd. v. CTO, (1977) 1 SCC 441 : 1977 SCC (Tax) 198 : (1977) 1 SCR 914; Province of Madras v. Boddu Paidanna & Sons, 1942 FCR 90 : AIR 1942 FC 33 : 200 IC 551; R.C. Jall v. Union of India, 1962 Supp 3 SCR 436 : AIR 1962 SC 1281; Re Sea Customs Act, (1964) 3 SCR 787 : AIR 1963 SC 1760 : (1964) 2 SCJ 51; Guruswamy & Co. v. State of Mysore, (1967) 1 SCR 548 : AIR 1967 SC 1512; Julluudur Rubber Goods Manufacturers' Association v. Union of India, (1969) 2 SCC 644 : (1970) 2 SCR 68 and A.B. Abdul Kadir v. State of Kerala, (1976) 3 SCC 219 : 1976 SCC (Tax) 270, relied on

Anand Swarup Mahesh Kumar v. CST, (1980) 4 SCC 451 : 1981 SCC (Tax) 1 : (1981) 1 SCR 707, distinguished

The contention that it is open to everyone to so arrange his affairs as to reduce the brunt of taxation to the minimum and such a process does not constitute tax evasion, does not carry any ignominy.  Tax planning may be legitimate provided it is within the framework of law.  Colourable devices cannot be part of tax planning and it is wrong to encourage or entertain the belief that it is honourable to avoid the payment of tax by resorting to dubious methods.  It is the obligation of every citizen to pay the taxes honestly without resorting to subterfuges.                                      (Paras 41 and 45)

CIT v. A. Raman & Co., (1968) 67 ITR 11 : (1968) 1 SCR 10 : AIR 1968 SC 49 and Bank of Chettinad Ltd. v. CIT, (1940) 8 ITR 522 (PC), criticised

Jiyajeerao Cotton Mills Ltd. v. CIT & Excess Profits Tax, Bombay, (1958) 34 ITR 888 : AIR 1959 SC 270; CIT v. Vadilal Lallubhai, (1972) 86 ITR 2 : (1973) 3 SCC 17 : 1973 SCC (Tax) 1 and Latilla v. I.R., 25 TC 107, relied on

CIT v. Sakarlal Balabhai, (1968) 69 ITR 186 (Guj HC), approved

CIT v. B.M. Kharwar, (1969) 72 ITR 603 : (1969) 1 SCR 651 : AIR 1969 SC 812, cited

It is high time for the judiciary in India to desist from the alluring logic of tax avoidance and disfavour the ingenious attempt to rationalise and legitimise the same.  There is behind taxation laws as much moral sanction as behind any other welfare legislation and it is a pretence to say that avoidance of taxation is not unethical and that it stands on no less moral plane than honest payment of taxation.  The proper way to construe a taxing statute, while considering a device to avoid tax, is not to ask whether the provisions should be construed literally or liberally, nor whether the transaction is not unreal and not prohibited by the statute, but whether the transaction is a device to avoid tax, and whether the transaction is such that the judicial process may accord its approval to it.                                       (Para 17)

Wood Polymer Ltd. and Bengal Hotels Ltd., In re. 47 Com Cas 597 (Guj HC), relied on

CIT v. A. Raman & Co., (1968) 1 SCR 10 : AIR 1968 SC 49 : 67 ITR 11 and CIT v. B.M. Kharwar, 72 ITR 603 : AIR 1969 SC 812 : (1969) 1 SCR 651, criticised



Case 1:21-cv-00396-RJL   Document 19-4   Filed 08/14/21   Page 5 of 27
SCC Online Web Edition, Copyright © 2021
Page 4       Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source:  Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------

MCDOWELL AND CO. LTD. v. COMML. TAX OFFICER (*Chinnappa Reddy, J.*)   233

Inland Revenue Commissioners v. Fisher's Executors, 1926 AC 395 ; Inland
    Revenue Commissioners v. Duke of Westminster, 1936 AC 1 : 1935 All
    ER Rep 259 ; Lord Howard De Waldan v. Inland Revenue Commissioners,
    (1942) 1 KB 389 ; Latilla v. Inland Revenue Commissioners, 1943 AC 377 :
    (1943) 1 All ER 265 ; Griffiths v. J.P. Harrizen Ltd., 1963 AC 1 ;
    Morgan v. Inland Revenue Commissioners, 1963 Chancery 438 : (1963)
    1 All ER 481 ; Public Trustee v. Inland Revenue Commissioners, 1965
    Chancery 286 : (1964) 3 All ER 780 ; Campbell v. Inland Revenue Com-
    missioners, 1967 Chancery 651 ; Greenberg v. Inland Revenue Com-
    missioners, (1971) 3 All ER 136 ; W.T. Ramsay v. Inland Revenue
    Commissioners, 1982 AC 300 : (1981) 1 All ER 865 ; Chinn v. Collins, 1981
    AC 533 ; Inland Revenue Commissioners v. Plummer, (1980) AC 896 ;
    Federal Commissioner of Taxation v. Westraders Pty. Ltd., (1980) 30
    ALR 353, 354-55 ; Inland Revenue Commissioners v. Burmah Oil Com-
    pany Ltd., 1982 STC 30 ; Furniss v. Dawson, (1984) 1 All ER 530
    and United Australia Ltd. v. Barclays Bank Ltd., (1940) 4 All ER 20,
    37 : 1941 AC 1, 29, referred to

                                                              R-M/6952/CT

Advocates  who  appeared  in  this  case :

    Soli J. Sorabjee, Senior Advocate (Harish N. Salve, Ravinder Narain and
        Mrs A.K. Verma, Advocates, with him), for the Appellant ;

    S.T. Desai, Senior Advocate (B. Parthasarthi and T.V.S.N. Chari, Advocates,
        with him), for the Respondent.

The  Judgments  of  the  Court  were  delivered  by

    CHINNAPPA REDDY, J. (*concurring*)*—While I entirely agree with
my brother, Ranganath Misra, J. in the judgment proposed to be
delivered by him, I wish to add a few paragraphs, particularly to
supplement what he has said on the "fashionable" topic of tax avoidance.
My excuse for inflicting this extra opinion is that the ingenious attempts
to rationalise and legitimise tax avoidance have always fascinated and
amused me and made me wonder how ready the minds are to adapt
themselves and discover excuses to dip into the treasury.

    **2.** The shortest definition of tax avoidance that I have come across
is "the art of dodging tax without breaking the law".  Much legal
sophistry and judicial exposition have gone into the attempt to
differentiate the concepts of tax evasion and tax avoidance and to
discover the invisible line supposed to exist which distinguishes one
from the other.   Tax avoidance, it seems is legal ; tax evasion is illegal.

    **3.** Though initially the law was, and I suppose the law still is,
"there is no equity about a tax.   There is no presumption as to a

*Ed. :   This judgment has been signed by all the five judges constituting the
    Bench


SCC Online Web Edition, Copyright © 2021
Page 5        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------------

234                    SUPREME COURT CASES                    (1985) 3 SCC

tax. Nothing is to be read in, nothing is to be implied", during the period between the two World Wars, the theory came to be propounded and developed that it was perfectly open for persons to evade (avoid) income tax if they could do so legally. For some time it looked as if tax avoidance was even viewed with affection. Lord Sumner in *IRC* v. *Fisher's Executors*[1] said :

> My Lords the highest authorities have always recognised that the subject is entitled so to arrange his affairs as not to attract taxes imposed by the Crown so far as he can do so within the law, and that he may legitimately claim the advantage of any expressed term or of any emotions that he can find in his favour in taxing Acts. In so doing he neither comes under liability nor incurs blame.

**4.** Lord Tomlin echoing what Lord Sumner had said observed in *IRC* v. *Duke of Westminster*[2] as follows, typifying the prevalent attitude towards tax avoidance at that time :

> Every man is entitled, if he can, to order his affairs so that the tax attaching under the appropriate Acts is less than it otherwise would be. If he succeeds in ordering them so as to secure this result then however unappreciative the Commissioners of Inland Revenue or his fellow taxpayers may be of his ingenuity, he cannot be compelled to pay an increased tax.

**5.** Then came World War II and in its wake huge profiteering and racketeering, something which persists till today, but on a much larger scale. The attitude of the courts towards avoidance of tax perceptibly changed and hardened and in *Lord Howard De Waldan* v. *IRC*[3], Greene, M.R., dealing with the construction of an anti-avoidance section said :

> For years a battle of manoeuvre has been waged between the Legislature and those who are minded to throw the burden of taxation off their own shoulders on to those of their fellow subjects. In that battle the Legislature has been worsted by the skill, determination and resourcefulness of its opponents of whom the present appellant has not been the least successful. It would not shock us in the least to find that the Legislature has determined to put an end to the struggle, by imposing the severest penalties. It scarcely lies in the mouth of the taxpayer who plays with fire to complain of burnt fingers.

1. 1926 AC 395
2. 1936 AC 1 : 1935 All ER Rep 259
3. (1942) 1 KB 389


SCC Online Web Edition, Copyright © 2021
Page 6          Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------------------

**6.** Expressing the same sentiment and dissertating on the moral aspects of tax avoidance Lord Simon in *Latilla* v. *IRC*[4] said :

> My Lords, of recent years much ingenuity has been expended in certain quarters in attempting to devise methods of disposition of income by which those who were prepared to adopt them might enjoy the benefits of residence in this country while receiving the equivalent of such income without sharing in the appropriate burden of British taxation.   Judicial dicta may be cited which point out that, however elaborate and artificial such methods may be, those who adopt them are "entitled" to do so.   There is, of course, no doubt that they are within their legal rights, but that is no reason why their efforts, or those of the professional gentlemen who assist them in the matter, should be regarded as a commendable exercise of ingenuity or as a discharge of the duties of good citizenship.   On the contrary, one result of such methods, if they succeed, is, of course, to increase pro tanto the load of tax on the shoulders of the great body of good citizens who do not desire, or do not know how, to adopt these manoeuvres.

**7.** In several cases, *Griffiths* v. *J.P. Harrizan Ltd.*[5], *Morgan* v. *IRC*[6], *Public Trustee* v. *IRC*[7], Lord Denning repeatedly referred to tax avoidance schemes and described them as magic performance by *lawyer-turned-magicians*.   Lord Harman, almost in the same words as Lord Denning described a tax avoidance scheme as one "which smells a little of the lamp" and said "*it is a splendid scheme . . . it is almost too good to be true.   In law quite too good to be true.   It won't do*". (*Campbell* v. *IRC*[8]) Stamp, J. in *re Weston's Settlements*[8a] observed :

> . . . There must be some limit to the devices which this Court ought to countenance in order to defeat the fiscal intentions of the Legislature.   In my judgment these proposals overstep that limit . . . I am not persuaded with this application represents more than a *cheap exercise in tax avoidance which I ought not to sanction, as distinct from a* legitimate avoidance of liability to taxation.

**8.** In *Greenberg* v. *IRC*[9], Lord Reid dealing with a scheme for tax avoidance by forward dividend stripping observed :

> We seem to have travelled a long way from the general and salutary rule that the subject is not be taxed except by plain words.

4. 1943 AC 377 : (1943) 1 All ER 265
5. 1963 AC 1
6. 1963 Ch 438 : (1963) 1 All ER 481
7. 1965 Ch 286 : (1964) 3 All ER 780
8. 1967 Ch 651 : (1966) 2 All ER 736
8a. (1968) 1 All ER 720, 725 : (1969) 1 Ch 223
9. (1971) 3 All ER 136


SCC Online Web Edition, Copyright © 2021
Page 7          Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source:  Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------------

But I must recognise that plain words are seldom adequate to anticipate and forestall the multiplicity of ingenious schemes which are constantly being devised to evade taxation.  Parliament is very properly determined to prevent this kind of tax evasion and, if the courts find it impossible to give very wide meanings to general phrases, the only alternative may be for Parliament to do as some other countries have done, and introduce legislation of a more sweeping character which will put the ordinary well-intentioned person at much greater risk than is created by a wide interpretation of such provisions as those which we are now considering . . . .

\*          \*          \*

I am inclined to think that the real explanation of these verbal difficulties may be that, in legislation of such extreme complexity as we have here, it is not humanly possible for a draftsman to preserve that consistency in the use of language which we generally look for.  *Indeed, I sometimes suspect that our normal meticulous methods of statutory construction tend to lead us astray by concentrating too much on verbal niceties and paying too little attention to the provisions read as a whole.*

9. The march of the law against tax avoidance schemes continued and came a significant departure from the *Westminster*[2] and the *Fisher's Executors*[1] principle.  In *W.T. Ramsay* v. *IRC*[10], the House of Lords had to consider a scheme of tax avoidance which consisted of a series or a combination of transactions each of which was individually genuine but the result of all of which was an avoidance of tax.  Lord Wilberforce, with great force, observed :

Given that a document or transaction is genuine, the court cannot go behind it to some supposed underlying substance.  This is the well-known principle of *IRC* v. *Duke of Westminster*[2].  This is a cardinal principle *but it must not be overstated or over-extended*.  While obliging the court to accept documents or transactions, found to be genuine, as such, *it does not compel the court to look at a document or a transaction in blinkers, isolated from any context to which it properly belongs*.  If it can be seen that a document or transaction was intended to have effect as part of a nexus or series of transactions, or as an ingredient of a wider transaction intended as a whole, there is nothing in the doctrine to prevent it being so regarded ; to do so is not to prefer form to substance, or substance to form.  *It is the task of the court to ascertain the legal nature of any transactions to which it is sought to attach a tax or a tax consequence* and if that emerges from a series or combination of transactions, intended to

10. 1982 AC 300 : (1981) 1 All ER 865


SCC Online Web Edition, Copyright © 2021
Page 8       Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases
-----------------------------------------------------------------------------------------------------------------

operate as such, it is that series or combination which may be regarded.   For this there is authority in the law relating to income tax and capital gains tax ; see *Chinn* v. *Collins*[11] and *IRC* v. *Plummer*[12].

For the commissioners considering a particular case it is wrong, and an unnecessary self-limitation, to regard themselves as precluded by their own finding that documents or transactions are not 'shams', from considering what, as evidenced by the documents themselves or by the manifested intentions of the parties, the relevant transaction is. *They are not, under the Duke of Westminster[2] doctrine or any other authority, bound to consider individually each separate step in a composite transaction intended to be carried through as a whole*

Later again he observed :

. . .For the taxpayers it was said that to accept the revenue's wide contention involved a rejection of accepted and established canons, and that, if so general an attack on schemes for tax avoidance as the revenue suggest, is to be validated, that is a matter for Parliament.   The function of the courts is to apply strictly and correctly the legislation which Parliament has enacted ; if the taxpayer escapes the charge, it is for Parliament, if it disapproves of the result, to close the gap.   General principles against tax avoidance are, it was claimed, for Parliament to lay down. We were referred, at our request, in this connection to the various enactments by which Parliament has from time to time tried to counter tax avoidance by some general prescription.   The most extensive of these is the Income and Corporation Taxes Act, 1970, Section 460 et seq.   We were referred also to well-known sections in Australia and New Zealand (Australia, the Income Tax Assessment Act, 1936, Section 260 ; New Zealand, the Income Tax Act, 1976, Section 99, replacing earlier legislation). Further, it was pointed out that the capital gains tax legislation (starting with the Finance Act, 1965) does not contain any provision corresponding to Section 460.   The intention should be deduced therefore, it was said, to leave capital gains tax to be dealt with by 'hole and plug' methods ; that such schemes as the present could be so dealt with has been confirmed by later legislation as to 'value shifting' (Capital Gains Tax Act, 1979, Section 25 et seq).   These arguments merit serious consideration. In substance they appealed to Barwick, C.J. in the recent

11. 1981 AC 533
12. 1980 AC 896



SCC Online Web Edition, Copyright © 2021
Page 9      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-------------------------------------------------------------------------------------------------------------------------

238                          SUPREME COURT CASES                  (1985) 3 SCC

Australian case of *Federal Commissioner of Taxation* v. *Westraders' Pty. Ltd.[18]*

I have a full respect for the principles which have been stated but I do not consider that they should exclude the approach for which the Crown contends. That does not introduce a new principle : it would be to apply to new and sophisticated legal devices the undoubted power and duty of the courts to determine their nature in law and to relate them to existing legislation. *While the techniques of tax avoidance progress and are technically improved, the courts are not obliged to stand still. Such immobility must result either in loss of tax, to the prejudice of other taxpayers, or to Parliamentary congestion or (most likely) to both. To force the courts to adopt, in relation to closely integrated situations, a step by step, dissecting, approach which the parties themselves may have negated would be a denial rather than an affirmation of the true judicial process.'* In each case the facts must be established ; and a legal analysis made ; legislation cannot be required or even be desirable to enable the court to arrive at a conclusion which corresponds with the parties' own intentions.

*The capital gains tax was created to operate in the real world, not that of make-believe.*

**10.** The significance of *Ramsay*[10] as a turning point in the interpretation of tax laws in England and the departure from the strings of *Westminster*[2] were explained in *IRC* v. *Burmah Oil Company Ltd.*[14], where Lord Diplock said :

It would be disingenuous to suggest, and dangerous on the part of those who advise on elaborate tax-avoidance schemes to assume, that *Ramsay case*[10] did not mark a significant change in the approach adopted by this House in its judicial role to a pre-ordained series of transactions (whether or not they include the achievement of a legitimate commercial end) into which there are inserted steps that have no commercial purpose apart from the avoidance of a liability to tax which in the absence of those particular steps would have been payable. The difference is in approach. It does not necessitate the overruling of any earlier decisions of this House ; but *it does involve recognising that Lord Lamlin's oft-quoted dictum in IRC* v. *Duke of Westminster*[15] "Every man is entitled if he can to order his affairs so that the tax attaching under the appropriate Acts is less than it otherwise

13. (1980) 30 ALR 353, 354-55
14. 1982 STC 30
15. 1936 AC 1, 19 : 1935 All ER Rep 259, 267


SCC Online Web Edition, Copyright © 2021
Page 10        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------

MCDOWELL AND CO. LTD. v. COMML. TAX OFFICER (*Chinnappa Reddy, J.*)   239

would be", *tell us little or nothing as to what methods of ordering one's affairs will be recognised by the courts* as effective to lessen the tax what would attach to them if business transactions were conducted in a straightforward way.

Lord Scarman said :

First, it is of the utmost importance that the business community (and others, including their advisers) should appreciate, as my noble and learned friend Lord Diplock has emphasised, that *Ramsay case*[10] marks "*a significant change in the approach adopted by this House in its judicial role" towards tax avoidance schemes. Secondly, it is now crucial when considering any such scheme to take the analysis far enough to determine where the profit, gain or loss is really to be found.*

**11.** The winds of change continued to blow and in *Furniss* v. *Dawson*[16], *Ramsay*[10] was reiterated. Lord Brightman observed :

The fact that the court accepted that each step in a transaction was a genuine step producing its intended legal result did not confine the court to considering each step in isolation for the purpose of assessing the fiscal results.

He further said :

My Lords, in my opinion the rationale of the new approach is this. In a preplanned tax saving scheme, no distinction is to be drawn for fiscal purposes, because none exists in reality, between (*i*) a series of steps which are followed through by virtue of an arrangement which falls short of a binding contract, and (*ii*) a like series of steps which are followed through because the participants are contractually bound to take each step seriatim. In a contractual case the fiscal consequences will naturally fall to be assessed in the light of the contractually agreed results.

**12.** In the same case Lord Fraser explained the principle of *Ramsay*[10] as follows :

The true principle of the decision in *Ramsay*[10] was that the fiscal consequences of a preordained series of transactions, intended to operate as such, are generally to be ascertained by considering the result of the series as a whole, and not by dissecting the scheme and considering each individual transaction separately.

Lord Scarman in his characteristic style observed :

The law will develop from case to case. Lord Wilberforce in *W.T. Ramsay Ltd.* v. *IRC*[17] referred to 'the emerging principle' of

16. (1984) 1 All ER 530
17. (1981) 1 All ER 865, 872 : 1982 AC 300, 324


Case 1:21-cv-00396-RJL   Document 19-4   Filed 08/14/21   Page 12 of 27
SCC Online Web Edition, Copyright © 2021
Page 11      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------

240                    SUPREME COURT CASES              (1985) 3 SCC

the law. *What has been established with certainty by the House in Ramsay case[10] is that the determination of what does, and what does not, constitute unacceptable tax evasion is a subject suited to development by judicial process.* The best chart that we have for the way forward appears to me, with great respect to all engaged on the map-making process, to be the words of Lord Diplock in *IRC* v. *Burmah Oil Co. Ltd.*[18] which my noble and learned friend Lord Brightman quotes in his speech. These words leave space in the law for the principle enunciated by Lord Tomlin in *IRC* v. *Duke of Westminster*[19] that every man is entitled if he can to order his affairs so as to diminish the burden of tax. The limits within which this principle is to operate remain to be probed and determined judicially. Difficult though the task may be for judges, it is one which is beyond the power of the blunt instrument of legislation. Whatever a statute may provide, it has to be interpreted and applied by the courts ; and ultimately it will prove to be in this area of judge-made law that our elusive journey's end will be found.

Lord Roskill put it even more forcefully :

*The error, if I may venture to use that word, into which the courts below have fallen is that they have looked back to 1936 and not forward from 1982.* They do not appear to have appreciated the true significance of the passages in the speeches in *Ramsay case*[20] of Lord Wilberforce and Lord Fraser, and, even more important, of the warnings in the *Burmah Oil case*[21] given by Lord Diplock and Lord Scarman in the passages to which my noble and learned friend Lord Brightman refers and which I will not repeat. It is perhaps worth recalling the warning given, albeit in another context by Lord Atkin, who himself dissented in the *Duke of Westminster case*[2], in *United Australia Ltd.* v. *Barclays Bank Ltd.*[22] : "*When these ghosts of the past stand in the path of justice, clanking their mediaeval chains, the proper course for the judge is to pass through them undeterred*". 1936, a bare half century ago, cannot be described as part of the Middle Ages but the ghost of the Duke of Westminster and of his transaction, be it noted a single and not a composite transaction, with his gardener and with other members of his staff has haunted the administration of this branch of the law for

18. 1982 STC 30, 32
19. 1936 AC 1, 19 : 1935 All ER Rep 259, 267
20. W.T. Ramsay Ltd. v. I.R.C., (1981) 1 All ER 865, 872-73 : 1982 AC 300, 325, 337
21. I.R.C. v. Burmah Oil Co. Ltd., 1982 STC 30, 32, 39
22. (1940) 4 All ER 20, 37 : 1941 AC 1, 29


SCC Online Web Edition, Copyright © 2021
Page 12    Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases
-----------------------------------------------------------------------------------------------------------------------------

too long.   I confess that I had hoped that that ghost might have found quietude with the decisions in *Ramsay*[10] and in *Burmah*[18] Unhappily it has not.   *Perhaps the decision of this House in these appeals will now suffice as exorcism.*

**13.** Thus the ghost of *Westminster*[2] (in the words of Lord Roskill) has been exercised in England.   Should it be allowed to rear its head in India ?

**14.** I have referred to the English cases at some length, only to show that in the very country of its birth, the principle of *Westminster*[2] has been given a decent burial and in that very country where the phrase 'tax avoidance' originated the judicial attitude towards tax avoidance has changed and the smile, cynical or even affectionate though it might have been at one time, has now frozen into a deep frown.   The courts are now concerning themselves not merely with the genuineness of a transaction, but with the intended effect of it for fiscal purposes.   No one can now get away with a tax avoidance project with the mere statement that there is nothing illegal about it.

**15.** Some years ago, a diverting attempt was made by a correspondent to the London 'Times' to defend tax avoidance.   He said :

> The taxpayer is morally bound to obey the law, but is not bound beyond the law, for apart from the law taxation would be blackmail or racketeering.   There is not behind taxing laws, as there is behind laws against crime, an independent moral obligation.   When therefore the taxpayer has obeyed the law, he has done all that morality requires.

He had further said :

> It is said that by avoiding a tax he throws a load on to some other taxpayer.   But this is not quite accurate, for the deficiency might be met by reducing expenditure. . . is it not a good thing that there should be this last lawful remedy against oppressive taxation by a majority, that human ingenuity can always find a way by which the minority can escape from tyrannical imposts.

The correspondent was answered by another correspondent who described the former's defence of tax avoidance as "an amusing attempt to raise the art of tax avoidance to the moral level of political martyrdom and to make Hampdens of our modern tax dodgers".   Nor, may we say, are our tax dodgers Gandhijis on the Dandi March to protest against the Salt Tax.

**16.** In *CIT* v. *A. Raman & Co.*[23], J.C. Shah, J. speaking for himself and Sikri and Ramaswami, JJ. repeating almost verbatim the

23. (1968) 1 SCR 10 : AIR 1968 SC 49 : 67 ITR 11


SCC Online Web Edition, Copyright © 2021
Page 13      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------------------

242                         SUPREME COURT CASES                    (1985) 3 SCC

observations in *Westminster*[2] and *Fisher's Executors*[1] observed :

> Avoidance of tax liability by so arranging commercial affairs that charge of tax is distributed is not prohibited. A taxpayer may resort to a device to divert the income before it accrues or arises to him. Effectiveness of the device depends not upon considerations of morality, but on the operation of the Income Tax Act. Legislative injunction in taxing statutes may not, except on peril of penalty, be violated, but it may lawfully be circumvented.

The same Judge, speaking for himself, Ramaswami and Grover, JJ. in *CIT* v. *B.M. Kharwar*[24] expressly followed *Westminster*[2] and observed :

> The taxing authority is entitled and is indeed bound to determine the true legal relation resulting from a transaction. If the parties have chosen to conceal by a device the legal relation, it is open to the taxing authorities to unravel the device and to determine the true character of the relationship. But the legal effect of a transaction cannot be displaced by probing into the "substance of the transaction".

**17.** We think that time has come for us to depart from the *Westminster*[2] principle as emphatically as the British Courts have done and to dissociate ourselves from the observations of Shah, J. and similar observations made elsewhere. The evil consequences of tax avoidance are manifold. First there is substantial loss of much needed public revenue, particularly in a Welfare State like ours. Next there is the serious disturbance caused to the economy of the country by the piling up of mountains of black-money, directly causing inflation. Then there is "the large hidden loss" to the community (as pointed out by Master Wheatcroft[25]) by some of the best brains in the country being invloved in the perpetual war waged between the tax-avoider and his expert team of advisers, lawyers, and accountants on one side and the tax-gatherer and his perhaps not so skilful, advisers on the other side. Then again there is the "sense of injustice and inequality which tax avoidance arouses in the breasts of those who are unwilling or unable to profit by it". Last but not the least is the ethics (to be precise, the lack of it) of transferring the burden of tax liability to the shoulders of the guideless, good citizens from those of the 'artful dodgers'. It may, indeed, be difficult for lesser mortals to attain the state of mind of Mr Justice Holmes, who said, "Taxes are what we pay for civilized society. I like to pay taxes. With them I buy civilization". But, surely, it is high time for the judiciary in India too to part its ways from the principle of *Westminster*[2] and the alluring

24. 72 ITR 603 : AIR 1969 SC 812 : (1969) 1 SCR 651
25. 18 Modern Law Review 209



Case 1:21-cv-00396-RJL   Document 19-4   Filed 08/14/21   Page 15 of 27

SCC Online Web Edition, Copyright © 2021
Page 14      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-------------------------------------------------------------------------------------------------------

MCDOWELL AND CO. LTD. v. COMML. TAX OFFICER (*Ranganath Misra, J.*)   243

logic of tax avoidance.  We now live in a Welfare State whose financial needs, if backed by the law, have to be respected and met.  We must recognise that there is behind taxation laws as much moral sanction as behind any other welfare legislation and it is a pretence to say that avoidance of taxation is not unethical and that it stands on no less moral plane than honest payment of taxation.  In our view, the proper way to construe a taxing statute, while considering a device to avoid tax, is not to ask whether the provisions should be construed literally or liberally, nor whether the transaction is not unreal and not prohibited by the statute, but whether the transaction is a device to avoid tax, and whether the transaction is such that the judicial process may accord its approval to it.  A hint of this approach is to be found in the judgment of Desai, J. in *Wood Polymer Ltd. and Bengal Hotels Limited, In re*[26] where the learned Judge refused to accord sanction to the amalgamation of Companies as it would lead to avoidance of tax.

**18.** It is neither fair nor desirable to expect the Legislature to intervene and take care of every device and scheme to avoid taxation.  It is up to the Court to take stock to determine the nature of the new and sophisticated legal devices to avoid tax and consider whether the situation created by the devices could be related to the existing legislation with the aid of 'emerging' techniques of interpretation (*sic* as) was done in *Ramsay*[10], *Burmah Oil*[14] and *Dawson*[16], to expose the devices for what they really are and to refuse to give judicial benediction.

**19.** We agree with Ranganath Misra, J. that the appeal should be dismissed.

RANGANATH MISRA, J. (*On behalf of Chandrachud, C.J., Desai and Venkataramiah, JJ. and himself*)—The appellant company, a licensed manufacturer of Indian liquor at Hyderabad, is in appeal by special leave questioning the dismissal of its writ petition by the High Court.

**21.** Manufacture, sale — wholesale and retail — as also storage and transport of liquor are regulated by the Andhra Pradesh Excise Act, 1968 ('Excise Act' for short) and the Andhra Pradesh Distillery Rules, the Andhra Pradesh Indian Liquor (Storage in Bond) Rules and the Andhra Pradesh Foreign Liquor and Indian Liquor Rules, all made under the Excise Act.  'Excise duty' as defined in Section 2(10) of the Excise Act is leviable on the manufacture of liquor and the manufacturer cannot remove the same from the distillery unless the duty imposed under the Excise Act has been paid.  Buyers

26. 47 Com Cas 597 (Guj HC)


SCC Online Web Edition, Copyright © 2021
Page 15      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases
-----------------------------------------------------------------------------------------------------------------------

of Indian liquor from the appellant's distillery as alleged by it, obtain distillery passes for release of liquor after making payment of excise duty and present the same at the distillery whereupon the bill of sale or invoice is prepared by the distillery showing the price of liquor but excluding the excise duty.  The appellant's books of account also did not contain any reference to excise duty paid by the purchaser. The appellant paid sales tax payable by it under the Andhra Pradesh General Sales Tax Act, 1957, ('Sales Tax Act' for short), on the basis of its turnover which excluded excise duty.  The Company was assessed to sales tax on the basis of its returns but later the Commercial Tax Officer was of the view that the Company had failed to include the excise duty paid on the liquor sold by it to wholesalers.  The taxing authority accordingly called upon the Company to show cause why assessments made may not be reopened.  The appellant moved the High Court for quashing of such notice and having failed, carried the matter in appeal to this Court.  A Division Bench of this Court in *McDowell & Company Ltd.* v. *CTO*[27], examined the provisions of the Excise Act and the Rules made thereunder as also the provisions of the Sales Tax Act.  This Court took the view :  (SCC p. 449, para 9)

> (W)e hold that intending purchasers of the Indian liquors who seek to obtain distillery passes are also legally responsible for payment of the excise duty which is collected from them by the authorities of the Excise Department.

This Court then proceeded to determine whether excise duty paid directly to the excise authorities or deposited directly in the State Exchequer in respect of Indian liquor by the buyers before removing the same from the distillery could be said to form part of the taxable turnover of the appellant distillery.  Precedents were referred to and the Court came to the conclusion that excise duty did not go into the common till of the appellant and did not become a part of the circulating capital.  Therefore, the sales tax authorities were not competent to include in the turnover of the appellant the excise duty which was not charged by it but was paid directly to the excise authorities by the buyers of the liquor.  The appellant, therefore, succeeded before this Court and the notices issued by the sales tax authorities were quashed.

**22.** The judgment of this Court was delivered on October 25, 1976. Rules 76 and 79 of the Distillery Rules were amended with effect from August 4, 1981.  Rule 76(*a*) now provides : "No spirit or liquor manufactured or stored shall be removed unless the excise duty specified in Rule 6 has been paid by a holder of D-2 licence before such

27. (1977) 1 SCR 914 : (1977) 1 SCC 441 : 1977 SCC (Tax) 198


SCC Online Web Edition, Copyright © 2021
Page 16      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------------------

removal". It is not disputed that appellant is the holder of a D-2 licence under the law. Amended Rule 79(1) provides :

79(1) On payment of the excise duty by the holder of D-2 license a distillery pass for the removal of spirit fit for human consumption may be granted in favour of any of the following persons only, namely :

(*a*) A person holding a licence in the Andhra Pradesh or in other States for sale of spirit by wholesale or retail and when the spirit is to be transported or exported beyond the limits of the district in which the distillery is situated to a person holding a permit signed by the Excise Superintendent of the District of destination or an officer of that district authorised in this behalf.

(*b*) A person holding a permit signed by the officer of any other State referred to in clause (*a*) above for the export of such spirit from the Andhra Pradesh into that State.

(*c*) A person holding a permit signed by an officer duly authorised in that behalf for export of such spirit to an Union Territory.

(*d*) A person holding a permit from the Excise Superintendent of any district in the Andhra Pradesh or from an officer referred to in clause (*a*) above of any other State to transport or export rectified spirits or wine, to such district or State.

**23.** On the basis of the amended provisions, the respondent Officer issued a notice to the appellant proposing to include a sum of Rs 4,49,09,552·40 representing the excise duty paid directly by buyers of appellant's liquor in the appellant's turnover for a part of the year 1982-83. Thereupon, the appellant again moved the High Court for quashing of the notice. Reliance was placed on the earlier decision of this Court. The High Court very appropriately felt bound by the decision of this Court and considered the effect of the amended Rules and held that the primary liability to pay excise duty was indisputably of the holder of the D-2 licence. It further found that the turnover related to liquor ; excise duty which was payable by the appellant but had by amicable arrangement been paid by the buyer was actually a part of the turnover of the appellant and was, therefore, liable to be so included for determining liability for sales tax. On these findings the High Court dismissed the writ petition. When leave was granted by a Division Bench of this Court to appeal against the judgment of the High Court, the correctness of the decision in appellant's


SCC Online Web Edition, Copyright © 2021
Page 17      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------------

case, namely, *McDowell & Co. Ltd.*[27], was doubted and the matter was referred to a larger Bench. That is how this appeal came to be heard by us.

**24.** Mr Sorabji, appearing in support of the appeal at the very commencement of his submissions stated that there was no constitutional question involved in the appeal. He also fairly stated that the vires of the Excise Act and the Rules was not under challenge. Nor was the amendment of Rules in 1981 in dispute.

**25.** The Federal Court in *Province of Madras* v. *Messrs Boddu Paidanna & Sons*[28], held:

> There is in theory nothing to prevent the Central Legislature from imposing a duty of excise on a commodity as soon as it comes into existence, no matter what happens to it afterwards, whether it be sold, consumed, destroyed or given away. A taxing authority will not ordinarily impose such a duty, because it is much more convenient administratively to collect the duty (as in the case of most of the Excise Acts) when the commodity leaves the factory for the first time, and also because the duty is intended to be an indirect duty which the manufacturer or producer is to pass on to the ultimate consumer, which he could not do if the commodity had, for example, been destroyed in the factory itself. It is the fact of manufacture which attracts the duty, even though it may be collected later;...

This view has been followed by this Court and the position has been put beyond doubt by a series of decisions. In *R.C. Jall* v. *Union of India*[29], it has been observed:

> .The excise duty is primarily a duty on the production or manufacture of goods produced or manufactured within the country. Subject always to the legislative competence of the taxing authority, the said tax can be levied at a convenient stage so long as the character of the impost, is not lost. The method of collection does not affect the essence of the duty but only relates to the machinery of collection for administrative convenience,

**26.** In *Re. Sea Customs Act*[30], this Court said:

> With great respect, we accept the principles laid down by the said three decisions (1939 FCR 18[31], 1942 FCR 90[32] and 1945

28. 1942 FCR 90 : AIR 1942 FC 33 : 200 IC 551
29. 1962 Supp 3 SCR 436 : AIR 1962 SC 1281
30.  (1964) 3 SCR 787 : AIR 1963 SC 1760 : (1964) 2 SCJ 51
31. In re : Central Provinces and Berar Sales of Motor and Lubricant Taxation Act, 1939 FCR 18 : AIR 1939 FC 1 : (1939) 1 MLJ 1
32. Province of Madras v. Boddu Paidanna, 1942 FCR 90 : AIR 1942 FC 33 : (1942) 2 MLJ 327


SCC Online Web Edition, Copyright © 2021
Page 18      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-------------------------------------------------------------------------------------------------------------------

MCDOWELL AND CO. LTD. *v.* COMML. TAX OFFICER (*Ranganath Misra, J.*)   247

FCR 179[33]) in the matter of levy of an excise duty and the machinery for collection thereof.

**27.** In *Guruswamy & Co.* v. *State of Mysore*[34] Sikri, J. (as he then was), spoke for the majority and stated the ratio thus :

> These cases establish that in order to be an excise duty (*a*) the levy must be upon 'goods' and (*b*) the taxable event must be the manufacture or production of goods. Further the levy need not be imposed at the stage of production or manufacture but may be imposed later.

**28.** In *Jullundur Rubber Goods Manufacturers' Association* v. *Union of India*[35], Grover, J. after extracting a part of the judgment in *Jall case*[29] spoke for the Court thus : (SCC p. 648, para 5)

> The above statement of law in no way supports the argument that the excise duty cannot be collected from persons who are neither producers nor manufacturers. Its incidence certainly falls directly on the production or manufacture of goods but the method of collection will not affect the essence of the duty.

**29.** In *A.B. Abdul Kadir* v. *State of Kerala*[36], this Court restated the position thus : (SCC p. 226, para 9)

> Excise duty, it is now well-settled, is a tax on articles produced or manufactured in the taxing country. Generally speaking, the tax is on the manufacturer or the producer, yet laws are to be found which impose a duty of excise at stages subsequent to the manufacture or production.

Thus, the incidence of excise duty is directly relatable to manufacture but its collection can be deferred to a later stage as a measure of convenience or expediency.

**30.** On an examination of the provisions of the Excise Act, the Rules framed thereunder and the pronouncements referred to above, we are of the view that the conclusion of this Court at page 921 of the Reports that intending purchasers of the Indian liquors who seek to obtain distillery passes are also legally responsible for payment of the excise duty is too broadly stated. The "duty" was primarily a burden which the manufacturer had to bear and even if the purchasers paid the same under the Distillery Rules, the provisions were merely enabling and did not give rise to any legal responsibility or obligation

33. Governor-General in Council v. Province of Madras, 1945 FCR 179 : AIR 1945 PC 98 : 72 IA 91
34. (1967) 1 SCR 548 : AIR 1967 SC 1512
35. (1970) 2 SCR 68 : (1969) 2 SCC 644
36. (1976) 3 SCC 219 : 1976 SCC (Tax) 270



SCC Online Web Edition, Copyright © 2021
Page 19     Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-------------------------------------------------------------------------------------------------------------------------------------

for meeting the burden. We do not propose, however, to examine this aspect any further for the change in Rule 76 of the Distillery Rules has clearly affirmed the position that liability for payment of excise duty is of the manufacturer. Provisions of Rules 80, 81, 82, 83 and 84 do not militate against the conclusion that the payment of excise duty is a liability exclusively of the manufacturer. In these rules detailed provisions have been made regarding obtaining of distillery pass, correct calculation and full payment of excise duty, the manner of depositing such duty and ultimately issue of the spirit under the pass from the distillery. These rules, therefore, do not detract from the position that payment of excise duty is the primary and exclusive obligation of the manufacturer and if payment be made under a contract or arrangement by any other person it would amount to meeting of the obligation of the manufacturer and nothing more.

**31.** It was the stand of the appellant before the High Court that it makes a condition precedent for the buyer of its finished goods that he (the buyer) pays the excise duty to the excise authorities directly and only on production of the receipted challan, liquor is issued from the distillery by way of sale under the supervision of the excise authorities. In view of such an arrangement, the excise duty paid by the buyer does not become a part of the turnover of the appellant.

**32.** 'Turnover' is defined in Section 2(*s*) of the Sales Tax Act to mean "the total amount set out in the bill of sale (or if there is no bill of sale, the total amount charged) as the consideration for the sale or purchase of goods (whether such consideration be cash, deferred payment or any other thing of value) including any sums charged by the dealer for anything done in respect of goods sold at the time of or before the delivery of the goods and any other sums charged by the dealer, whatever be the description, name or object thereof".

**33.** The definition clearly indicates that the total amount charged as the consideration for the sale is to be taken into account for determining the turnover. Where a bill of sale is issued (and obviously the bill has to state the total amount charged as consideration), the total amount set out therein is to be taken into account. In every transaction of sale, there is bound to be a seller at one end and a buyer at the other and transfer of title in the goods takes place for a consideration.

**34.** In *Hindustan Sugar Mills* v. *State of Rajasthan*[37], this Court

37. (1979) 1 SCR 276 : (1978) 4 SCC 271 : 1978 SCC (Tax) 225


SCC Online Web Edition, Copyright © 2021
Page 20      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases
-----------------------------------------------------------------------------------------------------------------------------------

MCDOWELL AND CO. LTD. v. COMML. TAX OFFICER (*Ranganath Misra, J.*)   249

observed :

> The test is, what is the consideration passing from the purchaser to the dealer for the sale of the goods.  It is immaterial to enquire as to how the amount of consideration is made up, whether it includes excise duty or sales tax or freight.  The only relevant question to ask is as to what is the amount payable by the purchaser to the dealer as consideration for the sale. . . .

The Court proceeded to say :

> Take for example, excise duty payable by a dealer who is a manufacturer.  When he sells goods manufactured by him, he always passes on the excise duty to the purchaser.  Ordinarily it is not shown as a separate item in the bill, but it is included in the price charged by him.  The 'sale price' in such a case could be the entire price inclusive of excise duty because that would be the consideration payable by the purchaser for the sale of the goods.  True, the excise duty component of the price would not be an addition to the coffers of the dealer, as it would go to reimburse him in respect of the excise duty already paid by him on the manufacture of the goods.  But even so, it would be part of the 'sale price' because it forms a component of the consideration payable by the purchaser to the dealer.  It is only as part of the consideration for the sale of the goods that the amount representing excise duty would be payable by the purchaser.  There is no other manner of liability, statutory or otherwise, under which the purchaser would be liable to pay the amount of excise duty to the dealer.  And, on this reasoning, it would make no difference whether the amount of excise duty is included in the price charged by the dealer or is shown as a separate item in the bill.

We would like to add, that the position is not different when under a prior agreement, the legal liability of the manufacturer-dealer for payment of excise duty is satisfied by the purchaser by direct payment to the excise authorities or to the state exchequer.

**35.** In *Paprika Ltd.* v. *Board of Trade*[38], Lawrence, J. stated :

> Wherever a sale attracts purchase tax, that tax presumably affects the price which the seller who is liable to pay the tax demands, but it does not cease to be the price which the buyer has to pay even if the price is expressed as *X* plus purchase tax.

This Court in *Messrs George Oakes* (*P*) *Ltd.* v. *State of Madras*[39], quoted this extract with approval and also referred to the following

38. (1944) 1 All ER 372
39. (1962) 2 SCR 570, 580 : AIR 1962 SC 1037 : (1961) 12 STC 476


Case 1:21-cv-00396-RJL   Document 19-4   Filed 08/14/21   Page 22 of 27
SCC Online Web Edition, Copyright © 2021
Page 21        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-------------------------------------------------------------------------------------------------------------------------------

250                        SUPREME COURT CASES                    (1985) 3 SCC

passage in the judgment of Goddard, L.J. in *Love* v. *Norman Wright (Builders) Ltd.*[40] :

> Where an article is taxed, whether by purchase tax, customs duty or excise duty, the tax becomes part of the price which ordinarily the buyer will have to pay. The price of an ounce of tobacco is what it is because of the rate of tax, but on a sale there is only one consideration, though made up of cost plus profit plus tax. So, if a seller offers goods for sale, it is for him to quote a price which includes the tax if he desires to pass it on to the buyer ; if the buyer agrees to the price it is not for him to consider how it is made up, or whether the seller has included tax or not.

and added :

> So far as the purchaser is concerned, he pays for the goods what the seller demands, namely, the price even though it may include tax. That is the whole consideration for the sale and there is no reason why the whole amount paid to the seller by the purchaser should not be treated as the consideration for the sale and included in the turnover.

Admittedly, the bills issued by the appellant did not include the excise duty. As already found, payment of excise duty is a legal liability of the manufacturer ; its payment is a condition precedent to the removal of the liquor from the distillery and payment by the purchaser is on account of the manufacturer. According to normal commercial practice, excise duty should have been reflected in the bill either as merged in price or being shown separately. As a fact, in the hands of the buyer the cost of liquor is what is charged by the appellant under its bill together with excise duty which the buyer has directly paid on seller's account. The consideration for the sale is thus the total amount and not what is reflected in the bill. We are, therefore, clearly of the opinion that excise duty though paid by the purchaser to meet the liability of the appellant, is a part of the consideration for the sale and is includible in the turnover of the appellant. The purchaser has paid the tax because the law asks him to pay it on behalf of the manufacturer.

36. Mr Sorabji in the course of his submission relied on a Division Bench decision of this Court in *Anand Swarup Mahesh Kumar* v. *CST*[41]. This Court was considering the liability for sales tax under the corresponding U.P. Act in respect of a dealer carrying on business at Mandi Anandganj, Baraut in the District of Meerut. The sales tax

**40.** (1944) 1 All ER 618
**41.** (1981) 1 SCR 707 : (1980) 4 SCC 451 : 1981 SCC (Tax) 1



Case 1:21-cv-00396-RJL   Document 19-4   Filed 08/14/21   Page 23 of 27
SCC Online Web Edition, Copyright © 2021
Page 22      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------

MCDOWELL AND CO. LTD. *v.* COMML. TAX OFFICER (*Ranganath Misra, J.*)   251

authorities had included in the dealer's purchase turnover 'market fee' and the commission payable to the commission agent operating within the market area for the purpose of computing sales tax.   The decision turned on the definition of 'turnover of purchase' in the U.P. Act and the provision of the Adhiniyam and the Rules made thereunder. Market fee and commission payable to an agent are very different from excise duty and a very different position emerges in law in regard to them.   No support is available from that decision for the appellant's case.   We would like to point out that the relevant consideration is not whether the law permits the incidence of the duty to be passed on to the purchaser but whether there is a prohibition against the passing of it.   If there is no bar, the incidence would be passed on to the purchaser in accordance with normal commercial practice.

37. Mr Sorabji built up an argument in support of the appellant's stand by referring to the amendment to the First Schedule to the Sales Tax Act.   The relevant part of the Schedule provides thus :

| Item No. | Description of goods | Point of levy | Rate of tax |
|---|---|---|---|
| 26. | All liquors, other than country liquor 2 (but i n c l u d i n g Vodka) (1026) | At the point of first sale in the State. | |
| | (*a*) not covered by item (*b*) below | | 3 (50 paise) in the rupee. |
| | (*b*) where the consideration for the sale or purchase of liquor includes the duties of excise payable under the Andhra Pradesh Excise Act, 1968. | | 3 (25 paise) in the rupee. |

38. Apparently this amendment was brought about after the judgment of this Court in the appellant's appeal in 1976 and the position has been further altered by amendment in 1984.   Sale of liquor has now been made exigible to tax at every point other than the point of last sale in the State.   The argument advanced before this Court is that the appellant had already paid tax on the basis of 50 p. in the rupee on the footing that the consideration for sale of its liquor did not include duty of excise payable under the Excise Act and the appellant cannot, therefore, be made liable for sales tax on a different footing.   This contention too has no force.   Such a stand had not been taken in the writ petition before the High Court and there has


SCC Online Web Edition, Copyright © 2021
Page 23    Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases
-------------------------------------------------------------------------------------------------------------------------------------

been no factual examination of the position as to whether the classification indicated is not intended to cover a totally different situation.    For resolving the dispute as to whether excise duty is a part of the turnover, reference to the Schedule is indeed wholly irrelevant.

**39.** Mr Sorabji relied heavily on the observations of Hidayatullah, J. (as he then was) speaking for the Court in the case of *George Oakes (Private ) Ltd* v. *State of Madras*[42], where it was said :

> It was pointed out by this Court† that the word "price" insofar as the purchaser is concerned, includes the tax also, and that in laws dealing with sales tax, turnover has in England and America also, been held to include the tax.    The reason for such inclusion is stated to be that the dealer who realises the tax does not hand it over forthwith to Government but keeps it with him, and turns it over in his business before he parts with it. Thus, the tax becomes, for the time being, a part of the circulating capital of the tradesman, and is turned over in his business.    Again, it was said that the price paid by the purchaser was not so much money for the article *plus* tax but a composite sum. Therefore, in calculating the total turnover, there is nothing wrong in treating the tax as part of the turnover, because "turnover" means the amount of money which is turned over in the business.

**40.** According to Mr Sorabji the excise duty had never come into the hands of the appellant and the Company had no occasion or opportunity to turn it over in its hands, and, therefore, the same could never be considered as a part of its turnover.    The observations made by this Court were in a very different setting and what was being considered was whether the additional tax levied under the Madras Act formed a part of the turnover.    If we accept the observations of Hidayatullah, J. as laying down the test for general application, it would be very prejudicial to the Revenue as between the seller and the buyer, by special arrangement, a part of what ordinarily would constitute turnover proper could even be kept out and the turnover could be reduced and tax liability avoided.    We are of the view that the conclusion reached in the appellant's case in *McDowell & Co. Ltd. case*[27] on the second aspect of the matter, namely, when the excise duty does not go into the common till of the assessee and it does not become a part of the circulating capital, it does not constitute turn over, is not the decisive test for determining whether such duty would constitute turnover.

**41.** A further contention was advanced by Mr Sorabji as his last submission that it is open to everyone to so arrange his affairs as to

42. 13 STC 98 : AIR 1962 SC 1352
†In 12 STC 476


SCC Online Web Edition, Copyright © 2021
Page 24      Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source: Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------------

reduce the brunt of taxation to the minimum and such a process does not constitute tax evasion ; nor does it carry any ignominy. In support of this submission he relied on the observations of Shah, J. speaking for this Court in *CIT* v. *Raman & Co.*[43], where it was said :

> [T]he law does not oblige a trader to make the maximum profit that he can out of his trading transactions. Income which accrues to a trader is taxable in his hands : income which he could have, but has not earned, is not made taxable as income accrued to him. . . . Avoidance of tax liability by so arranging commercial affairs that charge of tax is distributed is not prohibited. A taxpayer may resort to a device to divert the income before it accrues or arises to him. Effectiveness of the device depends not upon considerations of morality, but on the operation of the Income-tax Act. Legislative injunction in taxing statutes may not, except ·on peril of penalty, be violated, but it may lawfully be circumvented.

Support was also sought from the observations of the same learned Judge (as he then was) in the case of *CIT* v. *B.M. Kharwar*[44]. After quoting a passage from the judgment of the Privy Council in the case of *Bank of Chettinad Ltd.* v. *CIT*[45], this Court stated :

> The taxing authority is entitled and is indeed bound to determine the true legal relation resulting from a transaction. If the parties have chosen to conceal by a device the legal relation, it is open to the taxing authorities to unravel the device and to determine the true character of the relationship. But the legal effect of a transaction cannot be displaced by probing into the *"substance of the transaction"*.

**42.** In *Jiyajeerao Cotton Mills Ltd.* v. *CIT & EPT*[46], this Court observed :

> Every person is entitled so to arrange his affairs as to avoid taxation, but the arrangement must be real and genuine and not a sham or make-believe.

**43.** The Gujarat High Court in the case of *CIT* v. *Sakarlal Balabhai*[47], said :

> Tax avoidance postulates that the assessee is in receipt of amount which is really and in truth his income liable to tax but on which he avoids payment of tax by some artifice or

43. (1968) 67 ITR 11 : (1968) 1 SCR 10 : AIR 1968 SC 49
44. (1969) 72 ITR 603 : (1969) 1 SCR 651 : AIR 1969 SC 812
45. (1940) 8 ITR 522 (PC)
46. (1958) 34 ITR 888 : AIR 1959 SC 270
47. (1968) 69 ITR 186 (Guj HC)


SCC Online Web Edition, Copyright © 2021
Page 25          Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source:  Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------------------

device.   Such artifice or device may apparently show the income
as accruing to another person, at the same time making it avail-
able for use and enjoyment to the assessee as in a case falling
within Section 44-D or mask the true character of the income by
disguising it as a capital receipt as in a case falling within
Section 44-E or assume diverse other forms. . . .   But there must
be some artifice or device enabling the assessee to avoid payment
of tax on what is really and in truth his income.   If the assessee
parts with his income producing asset, so that the right to receive
income arising from the asset which theretofore belonged to the
assessee is transferred to and vested in some other person, there
is no avoidance of tax liability : no part of the income from
the asset goes into the hands of the assessee in the shape of
income or under any guise. . . .

This decision has been affirmed by this Court in *CIT* v. *Vadilal
Lallubhai*[48].

**44.** We may also recall the observations of Viscount Simon in
*Latilla* v. *I.R.*[49] :

> Of recent years much ingenuity has been expended in certain
> quarters in attempting to devise methods of disposition of income
> by which those who were prepared to adopt them might enjoy
> the benefits of residence in this country while receiving the
> equivalent of such income, without sharing in the appropriate
> burden of British taxation.   Judicial dicta may be cited which
> point out that, however elaborate and artificial such methods may
> be, those who adopt them are "entitled" to do so.   There is,
> of course, no doubt that they are within their legal rights, but
> that is no reason why their efforts, or those of the professional
> gentlemen who assist them in the matter, should be regarded as
> a commendable exercise of ingenuity or as a discharge of the
> duties of good citizenship.   On the contrary one result of such
> methods, if they succeed, is of course to increase pro tanto the
> load of tax on the shoulders of the great body of good citizens
> who do not desire, or do not know how, to adopt these
> manoeuvres.   Another consequence is that the Legislature has
> made amendments to our Income Tax Code which aim at nullify-
> ing the effectiveness of such schemes.

**45.** Tax planning may be legitimate provided it is within the
framework of law.   Colourable devices cannot be part of tax planning
and it is wrong to encourage or entertain the belief that it is honourable

48. (1972) 86 ITR 2 : (1973) 3 SCC 17 : 1973 SCC (Tax) 1
49. 25 TC 107



Case 1:21-cv-00396-RJL   Document 19-4   Filed 08/14/21   Page 27 of 27
SCC Online Web Edition, Copyright © 2021
Page 26        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
TruePrint™ source:  Supreme Court Cases

-----------------------------------------------------------------------------------------------------------------

BANWARI LAL KOTIYA *v.* P.C. AGGARWAL                    **255**

to avoid the payment of tax by resorting to dubious methods. It is the obligation of every citizen to pay the taxes honestly without resorting to subterfuges.

**46.** On this aspect one of us, Chinnappa Reddy, J., has proposed a separate and detailed opinion with which we agree.

**47.** In our view, therefore, there is no merit in the appeal and the same is liable to be dismissed with costs. Hearing fee is assessed at Rs 5000. We would like to add that now that a clear picture of the situation has emerged the State of Andhra Pradesh should rationalise the law on the subject, if necessary, by making other appropriate amendments.

**48.** While granting leave and allowing stay of proceedings, this Court had directed that˙bank guarantee be furnished for the tax to the satisfaction of the assessing authority and in the event of the respondent succeeding in the appeal, the appellant do pay interest at 12% per annum. The respondent may now proceed to collect the dues of the State in accordance with law.

---

**(1985) 3 Supreme Court Cases 255**

(BEFORE V.D. TULZAPURKAR AND RANGANATH MISRA, JJ.)

BANWARI LAL KOTIYA                              .. Appellant ;

*Versus*

P.C. AGGARWAL                                   .. Respondent.

Civil Appeal No. 2729(N) of 1972†,
decided on May 8, 1985

Arbitration Act, 1940 — Sections 2(e) and (a) and 20 — 'Reference' — Fresh assent for reference not required if provided in the agreement and when also sanctioned by statutory rules, regulations or bye-laws

The appellant, a share-broker and a member of the Delhi Stock Exchange, had dealings in shares and securities with the respondent, a non-member, in respect whereof printed Contract Notes in prescribed form were issued by the appellant and signed by the respondent. These transactions were subject to the rules, regulations and bye-laws of the Exchange which covered transactions between a member and a non-member. Each one of the contracts contained an arbitration clause couched in very wide terms requiring the parties thereto to refer all their disputes or claims to arbitration as provided in the rules, regulations and bye-laws of the Exchange and Bye-law 247(a) incorporated a 'Reference to Arbitration' in respect of such disputes or claims (whether admitted or not) between a member and a non-member arising out of or in relation to

†From the Judgment and Order dated July 18, 1972 of the Delhi High Court in F.A.O. No. 139-D of 1962