# Exhibit 4

to Expert Opinion of Sudipto Sarkar SA
dated August 13, 2021

LEX/HEPK/0009/1954

**Equivalent Citation:** 6 DLR (1954) 183

# HIGH COURT OF EAST PAKISTAN

Death Reference Case No. 10 of 1953 and Appeal No. 541 of 1953

Decided On: 25.01.1954

Appellants: **The Crown**
Vs.
Respondent: **Akbar (Ali) Mollah and Ors.**

**Hon'ble Judges:**
*Ellis, C.J. and Badiuzzaman, J.*

## JUDGMENT

**Ellis, C.J.**

**1.** Reference No. 10 of 1953 is a reference under section 374 of the Code of Criminal Procedure by Mr. A.C. Lahiri, Sessions Judge of Pabna asking for confirmation of the sentence of death passed by him on (1) Akbar Molla, (2) Darogali, (3) Taher Molla and (4) Fakir Khalifa on the 14th December, 1953. Criminal Appeal No. 541 of 1953 is the appeal of the 4 condemned prisoners against their convictions and sentences. The Reference and the appeal have been heard together for the sake of convenience and are now disposed of under this one judgment. The four appellants were tried along with another accused Jabbar Molla on a charge under section 302/34 of the Pakistan Penal Code for that on the 29th May, 1953 at Dhulawari under police station Santhia in the district of Pubna they committed murder by intentionally causing the death of Baheer Molla in furtherance of the common intention of them all. They were tried by the learned Sessions Judge and a special Jury of nine. The Jury returned a unanimous verdict finding Jubbar Molla not guilty but the other four accused guilty under section 302/34 of the Penal Code. The learned Sessions Judge accepting the verdict convicted the four accused under section 302/34 and sentenced them to death subject to confirmation by this Court.

**2.** The appellants have been represented before us by Mr. Sabita Ranjan Pal, while Mr. Salahuddin Ahmed, Deputy Legal Remembrancer has appeared for the Crown.

**3.** We have recently had to deal with several cases which have come up on appeal from the decisions of this learned Sessions Judge and we have had to order retrials because of his failure to give the Jury proper directions with regard to the evidentiary value of the first information report. Only a week ago in Reference case No. 9 of 1953 where this same learned Sessions Judge asked for confirmation of the sentence of death passed on Abdul Gaffur Paramanik and Seraj Shaik alias Pramanik we found no alternative but to direct a retrial on the ground that the learned Sessions Judge had persisted in his misdirection. In the present case Mr. Sabita Ranjan Pal has no difficulty in pointing out that the learned Sessions Judge has repeated the same misdirection to the Jury. In Criminal Reference No. 9 of 1953 we did not comment on his disobedience of our directions and his endeavour to justify his action. In the present case as he has again flouted our ruling it is necessary for us to deal with the matter at somewhat greater length.



**4.** It was in the case of The Crown Vs. Abdul Barik, reported in II D.L.R. 120 that we first set out in detail what is the law with regard to the evidentiary value of a first information report, In that case we observed:- "The law on the question as to the proper use of the first information report has been well-laid down in the case of Emperor Vs. Rehanuddin Mandal reported in I.L.R. 1943, 2 Calcutta at page 381. As we are frequently confronted in hearing appeals with an improper use of a first information report, it is perhaps of service to set out here what has actually been laid down by their lordships in that particular case.

> 'A first information report is not ordinarily substantive evidence. It is merely a previous statement, which may be proved by the prosecution for the purpose of corroborating the informant, and may be used by the defence for the purpose of contradicting, him. For the latter purpose, it is essential that the attention of the witness should be drawn to those parts of document which it is intended to use for the purpose of contradicting him in order that he may be given an opportunity to furnish a suitable explanation with regard to the alleged contradiction. Failure to do so is not due compliance with the provisions of section 145 of the Indian Evidence Act.
>
> Statement in the first information report cannot be used for the purpose of discrediting any witness other than the first informant, for such use is in effect to treat the first information report as substantive evidence in the case'.
>
> With this proposition of law we respectfully agree.
>
> * * * ".

**5.** This is the direction which we have consistently given to courts in this Province and we expect subordinate courts loyally to follow the direction and not to flout it and seek to justify their disrespect on one ground or another.

**6.** In the present case the learned Sessions Judge delivered himself of the following observation in his preamble to the Jury:--

> "Same is the position ordinarily, with the statement made at the time of lodging the F.I.R. Ordinarily it is also one kind of corroborative evidence and cannot count as evidence of primary nature. The statement in the F.I.R. may ordinarily corroborate the evidence of the persons who lodged it. It is ordinarily of no use so far as third persons are concerned. If the version given in the F.I.R. is found to be discrepant with the evidence of the person who lodged it, in that case the evidence given by such persons during trial falls into discount unless the discrepancy is sufficiently explained. There may be omissions. But the questions has to be considered whether that omission is justified or not. It has to be borne in mind that the F.I.R. is not expected to be a substitute for the evidence to be given during trial. But if the omission is found to be sufficiently material and cannot, in view of the attending circumstances, be overlooked it may affect the value of the evidence now adduced by the person who lodged the F.I.R.
>
> There may be cases outside ordinary where informant is explicitly or by implication agent of other person or persons. Since ordinarily the F.I.R. is lodged by only one person--such a thing may in certain cases happen. When that happens--the F.I.R. may count as evidence corroborating or



contradicting the evidence of persons on whose behalf it appears to have been lodged. That is because of the fact that the agent binds the principal for whom he acts. But here too the F.I.R. is nothing more than evidence of corroboration."

**7.** In order No. 10 dated the 16th December, 1953, the learned Sessions Judge elaborates his observation in the preamble to the charge:

"'Ordinarily' the F.I.R. is evidence to corroborate or to contradict its maker (vide amongst others decision reported at page 120 of 2 D.L.R. based on the decision reported at page 381 of 1943 I.L.R. Cal. (Vol. II). But is it not possible to apply this ordinary rule to cases out of the ordinary. In such case--the principles of law called into play by the special circumstance, have to be applied.

This is the law of agent and principal. Accordingly if agency is established explicitly or by implication the law has to be applied. In that case the F.I.R. is usable in favour and against not only the informant but also others furnishing the materials and the inspiration and occupying on that account the position of the principal.

As a piece of circumstance, making the case of prosecution highly probable or improbable, the F.I.R. may again be used under section II, Evidence Act. Section 157, Evidence Act, meant for corroborative evidence, does not furnish the last word on the question how the F.I.R. may be used. Apart from section 157, Evidence Act, the F.I.R. may be admissible if one or other provisions of the Evidence Act applies.

Such extended use of the F.I.R. will be noticed amongst other in the decisions reported at page 66 of I.D.R. (53 C.W.N.), page 413 of 1946. Cr.L.J. (Privy Council) page 1457 of 53 Cr. L.J. page 29 of 1953 Cr.L.J., page 1372 of 1952 Cr.L.J. Page 330 of 39 Cr.L.J., and page 198 of 15 C.W.N.

In the decisions reported at page 554 of 11 C.W.N. and page 1154 of 1952 Cr.L.J. the F.I.R. was used for the purpose of ascertaining Res Jesta (sic).

If yet one has to restrict the use of the F.I.R. one will be committing errors in law. Hence the direction in the charge about the somewhat (sic) application of the F.I.R.

In Reference No. 9 of 1953, the case of Abdul Gaffur Pramanik and Siraj Shakh alias Pramanik Vs. The Crown, we have already advised the learned Judge that in considering the evidentiary value of the first information report he has committed a grave error when he tries to introduce the legal doctrine of Agent and Principal. He is equally in error when he claims that the first information reports may be used under section II of the Evidence Act "As a piece of circumstance, making the case of the prosecution highly probable or improbable."

**8.** Section 11 of the Evidence Act provides that:--

"Facts not otherwise relevant are relevant--

    (1) if they are inconsistent with any fact in issue or relevant fact;



(2) if by themselves or in connection with other facts they make the existence or nonexistence of any fact in issue or relevant fact highly probable or improbable."

**9.** The content and use of a first information report do not fall within the scope of section 11 of the Evidence Act.

**10.** If the learned Sessions Judge will study the Evidence Act and consult Sarkar on Evidence, 6th Edition, he will obtain guidance with regard to the use of first information report. Section 35 of the Evidence Act provides:--

"An entry in any public or other official book, register or record, stating a fact in issue or relevant fact, and made by a public servant in the discharge of his official duty, or by any other person in performance of a duty specially enjoined by the law of the country in which such book, register or record, is kept, is itself a relevant fact".

**11.** On page 376 of the Book the learned Judge will find a paragraph dealing with the first information report:

"First information. First information taken down under section 154 Cr.P.C. amounts to an entry by a public servant in the discharge of his official duty and falls within section 35. But it is not a substantive evidence and is not evidence of the facts which it mentions. It can be used merely by way of corroboration or contradiction and not any further. (Vide Chittar V.R. 85 I.C. 650 (A) : 47 A. 280; Mohan Singh V.R. 85 I.C. 647 A 1925, A. 413). See also R.V. Ram Sukh (1897) A.W.N. 47; Autur Singh V.R. 17 C.W.N. 1213; 21, I.C. 882; Nag Tun. V.R.A. 1934 R. 60; Afsar Sheikh V.R. 15 C.W.N. 198; 8 I.C. 52, where it has been held that the first information report is not evidence in the case and is not admissible for proving that the facts stated therein are correct. But it can only be used as previous statement admissible to contradict or corroborate the author of it. (Vide notes under sections 145, 157 post)."

**12.** Section 145 of the Evidence Act is the well-known section which deals with the cross examination of the witness as to his previous statement in writing:

"A witness may be cross examined as to previous statement made by him in writing or reduced into writing, and relevant t6 matters in question, without such writing being shown to him or being proved; but, if it is intended to contradict him by the writing, his attention must, before the writing can be proved, be called to those parts of it which are to be used for the purpose of contradicting him".

**13.** At page 1205 of Sarkar's Book the learned Sessions Judge will find the following in regard to the first information:--

"First information can only be used to corroborate or contradict under section 157 and section 145, the person who made it. It cannot be used as substantive evidence to contradict other persons, (vide Gaman V.R.A. 1928, L. 913; R.V. Ibrahim 8 L. 605). The first information report may be relied on by the defence under section 145 to contradict the informant. Statements made by third party to the police in the course of their investigation are admissible to contradict under section 145, provided the person who made



the statement is called as a witness, (vide, Azimuddy V. R. 44 C.L.J. 253; A 1927, C. 17). First information does not come under sections 161, 162 Cr.P.C. and may be used to contradict or corroborate the author of it, (Vide, Md. Ibrahim V.R. A 1929 N. 43; Autar V.R. 17 C.W.N. 1213)."

**14.** Section 157 of the Evidence Act deals with the former statement of a witness as proved in order to corroborate the later testimony of the witness to the same effect:

"In order to corroborate the testimony of a witness, any former statement made by such witness relating to the same fact at or about the time when the fact took place, or before any authority legally competent to investigate the fact, may be proved."

**15.** At page 1247 the learned Sessions Judge will find a lengthy note with regard to the first information report:

"First information report. As to what is really the first information report, see Monimohan V.R. 58 C. 1312: A 1931 C. 745. A report of the commission of an offence made at a thana, or even the deposition of a witness previously made, would be admissible for corroborating a witness or throwing doubt on his statement in court, but would be inadmissible for proving that the fact stated in it are correct (R.V. Ram Sukh, 1897, A.W.N. 47 (Afsar Sheikh V.R. 15 C.W.N. 198; Autar V.R. 17 C.W.N. 1213 refd. to) Sankaralinga V.R.A 1930, M. 632; 58 M.L.T. 397; Harnam V.R.A 1936, L. 833). First information is not substantive evidence. It can only be used for corroboration or contradiction (In re Sankaralinga, 53 M. 590; Nga Tun V.R.A 1934, R. 60 and cases ante, P. 376) Use of first information report as substantive evidence is illegal. (Sheo Karan V.R.A. 1928 L. 923 (See ante, S. 35 P. 376). The first information report, putting aside wholly the question of its use under section 145 or section 155, if proved, may be of value as res gestae (Mahta V.R.A. 1931, L. 38; Azimuddy V.R. 44 C.L.J. 253: 54 C. 237). In a suitable case, information under section 154 Cr.P.C. may be recorded even during the course of an investigation of police officer. If prior to that, a statement was made to the police and recorded in the station diary, it is not affected by section 162 Cr.P. Code (Mani Mohan V.R. 58 C. 1312; 35 C.W.N. 623: A 1913, C. 745).

A first information taken under section 154 Cr.P. Code falls within the scope of section 35 Evidence Act, and is simply a relevant fact. But is not a substantive piece of evidence; it can be used merely by way of corroboration or as a contradiction and not any further. The statement of a witness examined by an investigating police officer cannot be used as a 'first report' especially when a 'first report' has already been made by a choukidar sent from the scene of occurrence for that purpose (R.V. Chittar, 47 A. 280; 23 A.L.J. 14 : I.C. 650; Gajadhar V.R. 7 Luck 552). Statement made to police after investigation is commenced is not first information and is inadmissible except for the purpose of section 162 (Habib V.R. 110 I.C. 584 : A 1928 P. 634 : Gansa V.R. 2 P. 517; see also Keshwar V.R. 1 P.L.T 491; Chandrika V.R. 1 P. 401. As to the first information that can be used in evidence under sections 157 and 158 to corroborate or impeach the testimony of the person lodging the first information, such a document becomes valueless if drawn up by some person other than the proper informant. As the first information in this case which related to a charge of criminal conspiracy at Midnapore

was drawn up by a police officer employed in the C.I. Department in Calcutta and settled by an Attorney-held that it was of no value (Peary Mohan V. Weston, 16 C.W.N. 145 P. 178. A statement made to a police officer not being a first information under section 154 Cr.P. Code can be proved only by the police officer (Salim V.R. 61 I.C. 650; 22 C.L.J. 410. See In re Thachrath, 75 I.C. 695: 45 M.L.J. 279. A reqa sent by a police officer from spot during investigation embodying substance of complainant's report made previously and some result of investigation neither signed nor thumb-marked by complainant is not a first information. A first information is not substantive evidence. It can only be used as a previous statement to corroborate or contradict a statement made subsequently in court (Choghatta V.R. 91 I.C. 697 : A 1926 L. 179 (R.V. Kampu, 11 C.W.N. 554; R.V. Daulat 6 C.W.N. 921 refd. to)".

**16.** There is of course section 32 clause (1) of the Evidence Act which deals with the cases in which statements of relevant fact made by person who is dead, or who cannot be found are themselves relevant facts. In the notes under this section at page 300 the learned Sessions Judge will find the following observation:

"First information. The first information report against an accused is admissible under section 32(1) as a declaration as to the cause of the informant's death (Azimuddy V. R. 44 C.L.J. 253; Gajjan V.R., A 1931, L. 103. It is not substantive evidence and can be used only to corroborate or contradict the maker, but in case of death it is admissible under section 32(1). Vide Kapur V.R., A 1930, L. 450: 31 P.L.R. 83."

**17.** It is clear, therefore, from examination of the above sections of the Evidence Act that a first information can only be used for the purpose of corroborating or contradicting its maker and it is not to be used to corroborate or contradict any person or persons or whose behalf it is said to have been lodged.

**18.** The learned Sessions Judge has referred to a number of cases in support of the view that he has taken. It is necessary, therefore, to examine these cases. Chronologically the first case is a case of Afsar Sheikh Vs. King-Emperor, reported in 15 C.W.N. 198. It is a case of 1910 A.D. The judgment in this case was delivered by Holmwood and Doss J.J. Their lordships' remarks with regard to the first information report are to the following effect:--

"Now the first information is not evidence in the case. It is tendered by the Crown for such use as the defence may be able to make of it and to test the consistency of the prosecution evidence. The most use therefore that the learned Judge could have made of it was, as he subsequently seems to have pointed out, to say that although it gave a different account of the occurrence from that in the evidence yet on the Sub-Inspector's evidence it could be reconciled with that evidence. That is the highest at which he could put it. Then the jury would have had an opportunity of judging whether in that view the positive evidence in the case could be believed."

**19.** This remark is couched in general language and certainly does not support the proposition which the learned Sessions Judge put forward.

**20.** Chronologically the next case is one of 1938 A.D. and it is reported in 39 Crl. L.J. 330. It is a case decided by a single Judge of the Oudh Chief Court. It seems a strange feature that the learned Sessions Judge prefers to take his law from



authorities outside Pakistan, even going to Oudh and Ajmer for decisions to cite in his support. It is the case of Dildar Khan and another Vs. Emperor and was disposed of by Zia Ul-Hasan J. on the 20th January 1938. The observations in this judgment with regard to the first information report are to the following effect:--

> "He disbelieved all the prosecution witnesses because none of them was mentioned in the First Information Report made by Asghar Khan and because most of them were not independent and made some statements which were contrary to what was stated before the Committing Magistrate or the Police. None of these factors is always sufficient to totally discard the evidence of witnesses though they are sufficient to raise a suspicion against the truthfulness of the witnesses and to lead the trying Judge to scrutinize the evidence with caution. If oral evidence of witnesses is corroborated by medical or other reliable evidence, there is no reason why it should not be believed even though the witnesses were not named in the First Information Report or are not totally independent."

**21.** In this case, therefore, the learned Judge was merely concerned with whether or not the prosecution witnesses, whose names were not mentioned in the first information report, were reliable witnesses. This case also affords no support for his present contention.

**22.** The next case cited by the learned Sessions Judge is the case of 1944 A.D. It is the case of King-Emperor Vs. Khwaja Nazir Ahmad, reported in 46 Cr. L.J. 413. It is a decision of the Privy Council. The Judgment in the case was delivered by his lordship Lord Porter and the observation which his lordship made with regard to the first information report is as follows:--

> "In truth, the provisions as to an information report (commonly called a first information report) are enacted for other reasons. Its object is to obtain early information of alleged criminal activity, to record the circumstances before there is time for them to be forgotten or embellished , and it has to be remembered that the report can be put in evidence when the informant is examined if it is desired to do so."

**23.** The use of the words "when the informant is examined" lend no support to the view of the learned Sessions Judge that it can be used when some other witness is being examined.

**24.** The next decision cited by the learned Sessions Judge is the decision of this Court in the case of The Crown V. Sahadullah and another reported in 53 C.W.N. 1 D.R. 66. This was a case in which Mr. A. Maleque, Assistant Sessions Judge of Noakhali made a reference under section 307 of the Criminal Procedure Code asking that the verdict of the Jury finding the accused persons not guilty under section 395 of the Penal Code should be set aside. We presume that the learned Session Judge is referring to the penultimate paragraph of that judgment in which the following observations appear:--

> "It may well be that the fact the jury's acceptance of the evidence that Kali Chandra and Dhananjoy had identified the two accused and were in a position to give their names as being two or the supposed dacoits, was strained by on the fact that identification was not mentioned in the somewhat elaborate first information report which was lodged by Upendra Kumar Dey."

**25.** This observation was by way of comment on an argument which was put to the Court as a possible reason why the Jury had returned that particular verdict and it was certainly never meant to lend any support whatsoever to the contention that a first information report can be used either to corroborate or to contradict any person other than the first informant. The judgment was delivered on the 19th January 1949 and was followed a year later by the judgment in the case of The Crown Vs. Abdul Barik reported in 11 D.L.R. 120 which was delivered on March 7th, 1950 when it was only too apparent, from a succession of cases coming up to the High Court, that the courts below did not appreciate the legal use of the first information report in a criminal trial.

**26.** Next in point of time is a case of 1952 cited by the learned Sessions Judge. It is the case of Nanu Ram V. State, reported in 1952 Cr.L.J. 1372, which is from the Ajmer Judicial Commissioner's Court and it was decided by Atma Chanran J.C. So far as the first information report is concerned the learned Judge states:--

> "The F.I.R. in the case was lodged by the P.C. Girdhari Lal, but it has not been produced by the prosecution on the pretext that it was not taken down as a F.I.R. but was taken down as a report in the General Diary. This was no ground on which the report which, in fact, really amounted to a F.I.R. should have been suppressed by the prosecution. The importance of a F.I.R. lies only in the fact as to what was the initial version of the case as reported to the Police."

**27.** This general observation also affords no support to the learned Sessions Judge's proposition.

**28.** The last case cited by the learned Sessions Judge is the case of Narapureddigari Narayanareddi and others Vs. State and another reported in 1953 Crl.L.J. 29 which was decided by Ramaswami J., a Judge of the Madras High Court sitting singly. Paragraph 14 illustrating the first information report is as follows:--

> "(14) The information in Exhibit P-8 is not mere gossip or hearsay. It is conveyed by C.W. 1 who came to Pulivendla from the scene of offence and was of a person whose house was also damaged and of P.W. 2 who is the son of P.W. 6 whose house also was damaged. P.W. 6 herself is stated to have come from the scene of offence, to Pulivendla and conveyed the information to C.W. 1. Then Exhibit P-8a was passed on by P.W. 14 to P.W.-11 with the note Exhibit P-8 for moving the police in the matter. This first information has naturally got much importance because it represents the earliest version in the case before there was time concoct and shape the evidence in a particular fashion. There is no dispute that the information in Exhibit P-8 and P-8a has no resemblance whatsoever to the case which has been developed and for which these accused persons have been committed to the Sessions. In my opinion, this complete variance between the first information report and the present case for which the accused have been committed not in regard to minor details or unimportant matters or side issues but in regard to main charges is enough throughout this case as an unreliable one which will not commend itself to any tribunal."

**29.** The observations are couched in somewhat general language but if it is meant to be the considered opinion of the Judge that a first information report can be used to contradict "the prosecution case" and not the informant we respectfully disagree with

his decision.

**30.** The last case cited by the learned Sessions Judge is 1953 Cr.L.J. 1475 and appears to be a wrong reference.

**31.** We have already cited Sarkar on Evidence at page 1247 in respect of the value of a first information report as res gestae:--

> "The first information report, putting aside wholly the question of its use under section 145 or section 155, if proved, may be of value as res gestae". "Res Gestae"--"Things done", i.e. Acts.

**32.** This means that the fact that the informant has actually been to the police station and has lodged the information, is one "res gesta" of the number of "res gestae" which go to make up an occurrence and is of course no authority for proposition of the learned Sessions Judge. In his support he cites an old decision of the year 1902. It is the case of the Emperor Vs. Karnpu Kuki and Dingur Singh, reported in 11 C.W.N. 554. The case was decided by Prinsep, C.J. and Henderson, J. of the Calcutta High Court. The observations of their lordships are to the following effect:--

> "Such a practice is altogether contrary to section 154, Code of Criminal Procedure. The first information, if recorded as directed by section 154 at the time that it is made, is of considerable value at the trial because it should on what materials the investigation commenced and what was the story then told. Any statement, recorded as in this case several days after the commencement of the investigation and after there had been some development, is not only no first information but has very little or no value at all as the original story, because it can be made to fit into the case as then developed. It may be observed that the Sub-Inspector professes to state what Ainuddi the informant first told him, but this cannot be accepted as supplying what the law has directed to be done and has been left undone. No one would accept such a statement as reliable in its details after the lapse of time, even if it were admissible in evidence. We do not, moreover, find that Ainuddi has himself stated what he then told the Police. The statement of the police officers in this respect stands alone and cannot be compared with the statement of the informant himself made several days later".

**33.** We fail to understand how this decision supports the contention of the learned Sessions Judge that the first information was used for the purpose of ascertaining res gestae. We have been unable to lay our hands on 1953 Cr.L.J. in order to test the other case cited by the learned Sessions Judge.

**34.** For the above reasons it is clear that the special pleading of the learned Sessions Judge that "a first information may count as evidence corroborating or contradicting the evidence of persons on whose behalf it appears to have been lodged" cannot possibly be accepted. It is impossible to calculate what effect this misdirection has had on the minds of the Jury particularly when in this case, as in the previous cases, at a later stage of his charge the learned Sessions Judge once again throws the first information report into the scale as evidence of corroboration on the side of the prosecution. For the above reasons this Reference under section 374 of the Code of Criminal Procedure is rejected and the appeal of the condemned prisoners against their convictions and sentences is allowed. We direct that the four appellants be retried on the original charge under section 302/34 of the Penal Code for committing murder by intentionally causing the death of Baher Molla on the 29th of May, 1953 at

Dhulawari under police station Santhia in the district of Pabna. We also direct that they shall remain in jail pending their retrial.

**Badiuzzaman, J.**

I agree.

© Manupatra Information Solutions Pvt. Ltd.