# Exhibit 6

to Expert Opinion of Sudipto Sarkar SA

dated August 13, 2021

A

# 𝔄𝔭𝔭𝔢𝔞𝔩 ℭ𝔞𝔰𝔢𝔰

BEFORE

B

# THE HOUSE OF LORDS

## (ENGLISH—IRISH—AND SCOTTISH)

AND

# THE JUDICIAL COMMITTEE

C

OF

## HER MAJESTY'S MOST HONOURABLE

# PRIVY COUNCIL

D

THE QUEEN . . . . . . . APPELLANT;

AND

MURUGAN RAMASAMY . . . . RESPONDENT.

P. C.*

1964
July 21.

ON APPEAL FROM THE COURT OF CRIMINAL APPEAL, CEYLON

E

*Ceylon—Criminal law—Evidence—Statements made in course of police investigation—Inadmissibility applicable to evidence of both oral and written statements and to both accused and witnesses—Statutory provision admitting evidence of fact discovered as result of statement when in police custody—Statutory provision that statements to police inadmissible—Reconciliation—Generalia specialibus non derogant—Evidence Ordinance (Legislative Enactments of Ceylon, 1938 Rev., c. 11), s. 27 (1)—Code of Criminal Procedure (Legislative Enactments of Ceylon, 1938 Rev., c. 16), s. 122 (3).*

F

*Crime — Evidence — Confession — Statement leading to discovery of relevant fact—Finding of gun—Principle of admissibility.*

*Statute—Construction—Generalia specialibus non derogant—Provision that statements to police inadmissible in evidence—Provision that statement leading to discovery of fact admissible.*

G

By section 27 of the Evidence Ordinance of Ceylon: "(1) Pro-
"vided that, when any fact is deposed to as discovered in
"consequence of information received from a person accused of

---

* *Present*: LORD DILHORNE L.C., VISCOUNT RADCLIFFE, LORD MORRIS OF BORTH-Y-GEST, LORD HODSON and LORD PEARCE.

2                    HOUSE OF LORDS        **[1965]**

P. C.

1964

REG.
*v.*
RAMASAMY.

" any offence, in the custody of a police officer, so much of such    A
" information, whether it amounts to a confession or not, as
" relates distinctly to the fact thereby discovered may be proved."

By section 122 of the Code of Criminal Procedure of Ceylon:
" (3) No statement made by any person to a police officer or an
" inquirer in the course of any investigation . . . shall be used
" otherwise than to prove that a witness made a different statement
" at a different time, or to refresh the memory of the person    B
" recording it."

At the trial of the respondent, who was convicted on a charge
of attempted murder by shooting with a gun and sentenced to 10
years' rigorous imprisonment, evidence was admitted by the judge
to the effect that " a " gun capable of causing the injury actually
inflicted had been discovered in consequence of information of its
whereabouts which the respondent had given to a police officer in    C
the course of an investigation under section 122 of the Criminal
Procedure Code. On the respondent's appeal, the Court of Criminal
Appeal quashed the conviction and directed an acquittal, holding
that the evidence of the respondent's statement to the police
officer had been improperly admitted and that that had vitiated
the jury's verdict. On appeal by the Crown:—

*Held,* (1) that the prohibition imposed by the opening sentence    D
of section 122 (3) of the Criminal Procedure Code of using " state-
" ments " to a police officer applied to both written records and
oral statements and extended to an accused person as much as
to any other witness. What was intended was that, except for
the limited purposes specified, statements made by a person under
the special conditions of a police investigation were not to be used
against him in any form. Accordingly, section 122 (3) covered    E
the use of oral evidence of statements made during a police
investigation just as much as the written records of such
statements (post, pp. 22, 23, 24).

*Reg.* v. *Buddharakkita Thera* (1962) 63 N.L.R. 433 approved.

*Rex* v. *Jinadasa* (1950) 51 N.L.R. 529 disapproved.

*Pakala Narayana Swami* v. *King-Emperor* (1939) L.R. 66 I.A.    F
66 considered.

(2) In deciding what, if any, effect section 122 (3) of the
Code of Criminal Procedure as above construed had on section 27
of the Evidence Ordinance it was necessary to look for guidance
in a wider field than that of section 122 (3) itself, and to apply
the maxim of interpretation *generalia specialibus non derogant.*
On that basis the evidence falling within section 27—the words
admitted must be limited to and relate distinctly to the fact—    G
could lawfully be given at a trial though it would otherwise be
excluded as a statement made in the course of an investigation
under section 122 of the Criminal Procedure Code (post, pp. 25,
26, 27, 31).

Accordingly, applying the above principles of law, the police
officer's evidence as to the information leading to the discovery of
the gun was properly admitted under section 27 of the Evidence

**A.C.**                AND PRIVY COUNCIL.                                3

P. C.

1964

REG.
v.
RAMASAMY.

A          Ordinance and the conviction had been wrongly set aside by the
       Court of Criminal Appeal (post, p. 30).
              Order of the Court of Criminal Appeal (1962) 64 N.L.R. 433
       set aside, the verdict of the jury restored, and the appeal remitted
       to the Court of Criminal Appeal for hearing of the respondent's
       appeal against sentence.

B          APPEAL (No. 24 of 1963), by special leave, by the Crown
       from a judgment and order of the Court of Criminal Appeal of
       Ceylon (Basnayake C.J., Tambiah, Herat, Abeyesundere and
       G. P. A. Silva JJ.) (December 17, 1962) allowing the present
       respondent's appeal against his conviction by a jury in the
       Supreme Court, Midland Circuit, District of Kandy (T. S.
C      Fernando J.) (December 21, 1961) on a charge of attempted
       murder by shooting one K. Piyadasa.  The respondent had been
       sentenced to 10 years' rigorous imprisonment.  The Court of
       Criminal Appeal, in allowing the appeal, quashed the conviction
       and directed a judgment of acquittal to be entered.
           The main questions of law on this appeal were whether or
D      not the Court of Criminal Appeal was right (1) so to interpret
       and apply section 122 (3) of the Code of Criminal Procedure and
       section 27 of the Evidence Ordinance as to arrive at the con-
       clusion that the admission in the trial court of the evidence of
       a police officer as to the finding of a gun following a statement
       made to him by the respondent which led to the finding of a
E      gun and ammunition was contrary to law and sufficient to quash
       the conviction; (2) so to interpret and apply section 122 (3) of
       the Criminal Procedure Code as thereby impliedly to repeal or
       nullify section 27 of the Evidence Ordinance.
           The facts appear from the judgment of the Judicial Com-
       mittee.  The material terms of section 27 of the Evidence
F      Ordinance and of section 122 (3) of the Code of Criminal
       Procedure are set out above.

           1964.  May 26, 27, 28; June 2.  *Dingle Foot Q.C., R. K.
       Handoo, Ralph Millner, V. S. A. Pullenayegum* and *V. C. Guna-
       tilaka* for the Crown.  The issues fall under three heads, two of
G      which are of considerable importance to the administration of the
       criminal law in Ceylon: (1) How far, if at all, is there any conflict
       between section 122 (3) of the Criminal Procedure Code and sec-
       tion 27 of the Evidence Ordinance; and if there is, which section
       prevails?  When section 27 was enacted it was really giving
       statutory form to a doctrine which was well understood in England.
       (2) How far does the doctrine of stare decisis apply to a judgment

4                         HOUSE OF LORDS              **[1965]**

P. C.     of the Court of Criminal Appeal in Ceylon?   (3) Even if the first    A
1964      two issues are decided in the respondent's favour, were the Court
——        of Criminal Appeal justified in setting aside the conviction?
REG.          The appellant's submissions in outline are : (1) The Court of
*v.*      Criminal Appeal were wrong in holding that the statement which
RAMASAMY. led to the recovery of the gun and cartridges was inadmissible;
——        that is put on three grounds : (i) On their true construction there    B
          is no conflict between section 27 of the Evidence Ordinance and
          section 122 (3) of the Criminal Procedure Code.   (ii) Section 27
          remains part of the law of Ceylon unless it can be said that there
          was an implied repeal by section 122 (3) of the Criminal Procedure
          Code.   There is no repeal by implication here, and this is a
          case for the application of the maxim generalia specialibus non    C
          derogant.   (iii) On its true construction section 122 (3) is con-
          fined to statements which are reduced to writing, and *Rex* v.
          *Jinadasa* [1] was rightly decided.   (2) *Jinadasa's* case [1] should not
          have been overruled by the Court of Criminal Appeal and the
          doctrine of stare decisis applies.   (3) Even if the information
          given to the police sergeant was wrongly admitted, there was    D
          ample evidence of the respondent's guilt and the proviso to section
          5 of the Criminal Appeal Ordinance should have been applied.
          Alternatively, the court below should have applied section 167
          of the Evidence Ordinance, which provides that " The improper
          " admission . . . of evidence shall not be ground of itself for . . .
          " reversal of any decisions . . . if it shall appear to the court . . .    E
          " that, independently of the evidence objected to and admitted,
          " there was sufficient evidence to justify the decision . . ."
          (4) The Court of Criminal Appeal were wrong in the criticism they
          directed to counsel for the Crown, and that may well have affected
          their judgment.
              [*E. F. N. Gratiaen Q.C.* (for the respondent).   That criticism    F
          is not supported here.]
              (5) It is the court which determines precisely how much of
          the statement should go in under section 27 of the Evidence
          Ordinance.   The judge took a very decided view on it and said
          that only one sentence should go in.   Assuming against the
          appellant that section 122 (3) has any application, then the whole    G
          statement should have gone in.
              Indian legislation was the genesis of section 27 of the Ceylon
          Evidence Ordinance, and there are two decisions of the Board in
          Indian cases on which the Chief Justice based his judgment in

                              [1] (1950) 51 N.L.R. 529.

P. C.

1964

REG.
v.
RAMASAMY.

A    the present case: *Pakala Narayana Swami* v. *King-Emperor*[2]; *Kottaya* v. *Emperor*.[3] The Board was not saying that section 27 had no application, but that its application must be very strictly limited; in fact the Board was not considering the question of possible conflict between a section of the Evidence Ordinance and a section of the Criminal Procedure Code, and the particular

B    point now in issue was left open.

As to the attempt by legislatures overseas to put in statutory form doctrines of law developed in this country, particularly in relation to the present matter, see *Jinadasa's* case[4] and *Queen-Empress* v. *Babu Lal*.[5]

Sections 25, 26 and 27 of the Ceylon Evidence Ordinance are

C    substantially the same as sections 148, 149 and 150 of the Indian Criminal Procedure Code of 1861. Those sections of the Indian Code of 1861 were in 1872 transferred to the Indian Evidence Act of 1872 as sections 25, 26 and 27. In the same year, 1872, there was a new Indian Criminal Procedure Code, and by section 162 there was a saving of the operation of section 27 of the

D    Evidence Ordinance. In 1898, however, that saving was omitted from the Criminal Procedure Code. If it had been intended in 1898 that section 162 should completely abrogate section 27 so far as police inquiries are concerned one would have expected to find it dealt with in specific terms. [Reference was made to *Biram Sardar* v. *Emperor*[6] and the reasoning of Sir John Beaumont in

E    that case adopted.]

Section 162 of the Indian Criminal Procedure Code of 1898 compares with section 122 (3) of the present Criminal Procedure Code of Ceylon. The submission is that section 27 of the Evidence Ordinance and section 122 of the Criminal Procedure Code deal with two different things, and there is not necessarily

F    any conflict between them; they aim at different objectives. In section 27 confessions made by accused persons are being dealt with; the section is to give effect to the rule of English law that a confession is ruled out except in circumstances which are covered by section 27.

As to implied repeal, see Maxwell on the Interpretation of

G    Statutes, pp. 153, 168, *Seward* v. " *Vera Cruz* "[7] and *Barker* v. *Edger*[8]; the application of those passages to the present case is

[2] (1939) L.R. 66 I.A. 66.
[3] (1947) L.R. 74 I.A. 65; A.I.R. (1947) P.C. 67.
[4] 51 N.L.R. 529, 534.
[5] (1884) I.L.R. 6 All. 509, 516.
[6] A.I.R. (1941) Bom. 146, 147.
[7] (1884) 10 App.Cas. 59, 68; 1 T.L.R. 111, H.L.(E.).
[8] [1898] A.C. 748, 754, P.C.

6                    HOUSE OF LORDS          **[1965]**

P. C.
1964
———
REG.
*v.*
RAMASAMY.
—

obvious.  Here is a provision of law which has been in existence   A
in India since 1861, and in Ceylon since 1895, and in each case
section 27 embodies, as has been said, a particular doctrine of
which one finds the foundation in the English law of evidence.
Here is a section which has been invoked many times over both
in India and in Ceylon, and it would be remarkable if the legis-
lature of either country had decided to abrogate the section   B
merely by implication; one would expect to find it dealt with in
express terms.

Subsection (3) of section 122 of the Criminal Procedure Code
is dealing with the use which may be made of the *document*—
the written record of the statement—to contradict the witness or
to refresh the memory of the person who recorded it.  It has   C
nothing to do with oral evidence.  That view has been taken over
a long period of years by the courts in Ceylon, but a different
view has been taken in the most recent case, *Reg.* v. *Buddharak-
kita Thera*,[9] when it was held that the section also excluded oral
evidence given during the course of an investigation.  [Reference
was also made to *Rex* v. *Pabilis*,[10] *Rex* v. *Gabriel*,[11] *Rex* v. *De*   D
*Silva*,[12] *Rex* v. *Haramanisa*[13] and *Rex* v. *Kiriwasthu*.[14]  *Jina-
dasa's* case,[15] which decided in effect that an oral statement made
during the course of a section 122 investigation can be proved
under section 27 of the Evidence Ordinance, was, it is submitted,
rightly decided—by five judges—but has nevertheless been over-
ruled in the instant case.  While not all the reasoning in *Jina-*   E
*dasa's* case[15] is adopted, it was right, and it will also be relied on
for the stare decisis point.  There is not necessarily a conflict
between *Jinadasa's* case[15] and *Reg.* v. *Buddharakkita Thera*,[16]
but if there is, the latter was wrongly decided.  In any case it
takes no account of the very material changes between the
original section in 1895 and the section in 1908; on any principle   F
of construction effect must be given to those changes.

Section 27 (1) of the Evidence Ordinance applies not only to
sections 25 and 26, but also to section 24.  In *Kottaya* v.
*Emperor*[17] the Board took the view that section 27 qualifies
section 26, but that was not an issue before the Board.  What
the authorities in Ceylon are anxious about is to have the Board's   G
view on the two points—the alleged conflict between section 27

9  (1962) 63 N.L.R. 433.                   14 (1939) 40 N.L.R. 289.
10 (1924) 25 N.L.R. 424, 425.              15 51 N.L.R. 529, 535 et seq.
11 (1937) 39 N.L.R. 38, 42.                16 63 N.L.R. 433.
12 (1940) 42 N.L.R. 57, 59.                17 L.R. 74 I.A. 65.
13 (1944) 45 N.L.R. 532, 539.

**A.C.**                    AND PRIVY COUNCIL.                    7

P. C.

1964

REG.
*v.*
RAMASAMY.

A    of the Evidence Ordinance and section 122 (3) of the Criminal
Procedure Code, and whether section 27 qualifies all the earlier
sections. [*Ganu Chandra* v. *Emperor*[18] was referred to.]

The question of stare decisis is a matter of importance to the
administration of the criminal law in Ceylon, and the point is
whether the doctrine should apply where there are decisions of
B    two Courts of Criminal Appeal, each of five judges, and where
there is a further appeal to this Board. The position might be
different if there were no appeal and the Court of Criminal Appeal
in Ceylon was the court of last resort. The question is whether
the Court of Criminal Appeal is bound by its own earlier decision.
So far as England is concerned there are accepted dicta: *Rex* v.
C    *Taylor*[19]; *Reg.* v. *Flynn.*[20] In Ceylon the doctrine has been
considered in the recent case of *Bandahamy* v. *Senanayake.*[21]
Stare decisis does not arise at the stage before the Board. There
have been decisions where the Board has departed from its earlier
decisions; the Board does not sit as a court, but to advise Her
Majesty, and stare decisis does not bind the Board. A court,
D    however, should follow its own decisions where it is a court of
subordinate jurisdiction. Roman-Dutch law does not come into
this at all. Where one has a decision of five judges a later court
of five judges should not depart from that decision.

Even if the points which have been taken above are wrong,
this was clearly a case in which the court should have applied
E    the proviso to section 5 of the Court of Criminal Appeal Ordinance.
In *Dharmasena* v. *The King*[22] English decisions were applied,
and, applying that test, the present is really an overwhelming
case. Further, in Ceylon one is concerned not only with the
proviso, but also with section 167 of the Evidence Ordinance.
There is a similar provision in the Indian Evidence Ordinance
F    which was considered by the Board in 1947 (*Kottaya's* case[23])—
it weights the scale still more against the appellant in a criminal
case; it is a slightly different test from the proviso, and either
can be applied.

Lastly, the attack made in the judgment below on counsel
for the Crown was quite unjustified.

G    *E. F. N. Gratiaen Q.C.* and *John A. Baker* for the respondent.

[18] (1931) I.L.R. 56 Bom. 172, 175.
[19] [1950] 2 K.B. 368; 66 T.L.R.
(Pt. 1) 1182; [1950] 2 All E.R. 170,
C.C.A.
[20] [1963] 1 Q.B. 729, 734; [1961] 3
W.L.R. 907; [1961] 3 All E.R. 58,
C.C.A.

[21] (1960) 62 N.L.R. 313, 349, 357.
[22] [1951] A.C. 1, 8; 66 T.L.R. (Pt.
2) 365, P.C.
[23] A.I.R. (1947) P.C. 67, 71.

8                         HOUSE OF LORDS                **[1965]**

P. C.

1964

———

REG.

*v.*

RAMASAMY.

———

The doctrine of stare decisis is not a rule of law; it is not a rule of    A
criminal procedure; it is a rule which most courts do impose on
themselves in order that there shall be no uncertainty about their
attitude.   But the Court of Criminal Appeal in Ceylon must work
out its own salvation in these matters; it is not a question on
which another court, which is the ultimate court in criminal
matters in special circumstances, would seek to lay down rules     B
for the guidance of anybody else.   In Ceylon for the Supreme
Court, as opposed to the Court of Criminal Appeal, there is an
express provision in the Courts Ordinance, section 51, governing
the matter; and see *Jane Nona* v. *Leo*.[24]   There is no such statu-
tory provision which binds the Court of Criminal Appeal.   Where
questions of liberty of the subject are involved there must neces-    C
sarily arise occasions when different judges take a different view
as to statutory interpretation on a matter which is of great
importance to the administration of justice.   [*Pakala Narayana
Swami* v. *King-Emperor*[25] was referred to.]

Section 122 (3) of the Criminal Procedure Code deals only
with a statement made by a witness including an accused    D
person.   The first landmark is *Rex* v. *Haramanisa*[26]—a
unanimous decision—and, whether the reasoning in that case
was right or not, it decided that the prohibition in section 122 (3)
applied to oral statements which had been duly recorded under
chapter 12 of the Criminal Procedure Code.   That was not dis-
sented from and seems to have been accepted and acted on by the    E
criminal courts in Ceylon for seven years.   Then came *Jinadasa's*
case[27] where a majority of four judges to one expressly ruled that
there is nothing in section 122 (3) of the Criminal Procedure Code
to exclude the operation of section 27 of the Evidence Ordinance,
and that an oral statement made during the course of a section
122 (3) investigation could be proved under section 27 of the    F
Evidence Ordinance.   In *Reg.* v. *Buddharakkita Thera*[28] the view
was taken that oral statements are prohibited except within the
narrow limits specified in section 122 (3)—that was a judgment
of five judges of the Court of Criminal Appeal.   In the present
case the same principle was laid down by the Chief Justice and
four judges.   On the correct analysis of the section the word    G
" statement " always means, and can only mean, an oral state-
ment which has been recorded.   The words mean that the police
officer refreshes his memory by looking at the oral statement as

[24] (1923) 25 N.L.R. 241, 250.         [27] 51 N.L.R. 529.
[25] L.R. 66 I.A. 66.                   [28] 63 N.L.R. 433.
[26] (1944) 45 N.L.R. 532.

P. C.

1964

REG.
*v.*
RAMASAMY.

A   recorded contemporaneously by himself. The defence has no right to look at the record of the statement unless the witness exercises the right of refreshing his memory.

Section 27 of the Evidence Ordinance and section 122 (3) of the Code of Criminal Procedure can be perfectly reconciled and there is room for both sections to operate, subject only to this,

B   that in a special case where a police officer is given special powers of compulsory interrogation, then that special case to that limited extent would prevail over section 27 interpreted in a particular way. There is no possibility of any conflict between section 27 and any interpretation of section 122 (3); and there has been no repeal of section 27 by implication. [*Anandagoda* v. *The Queen* [29]

C   was referred to.] Section 27 on any view of the matter provides an exception to the reception of evidence which would otherwise be inadmissible, and in fairness to the defence there is a prescribed limitation of how much of the statement should be led in evidence under section 27. The Court of Criminal Appeal was correct in holding that the statement alleged to have been made by the

D   respondent to the police officer was inadmissible in evidence having regard to the provisions of section 122 (3) of the Criminal Procedure Code, and that section 27 of the Evidence Ordinance is not to be construed as an exception to section 122 (3).

Subject to the submissions on section 122 (3), certainly a statement by the respondent which led to the discovery of the

E   gun was admissible under the Evidence Ordinance, assuming that that was *the* gun which was proved to have fired the shot; then under the general rule the whole of the exculpatory state-ment containing the statement which led to the discovery of the gun must be put in; the accused's knowledge of where the gun had been found would then be relevant to

F   the question in issue—whether he was the person who fired the gun. Archbold's Criminal Pleading, Evidence and Prac-tice, 35th ed., para. 1127, deals with confessions, but it is a rule of general application that the whole statement must be put in. When the trial judge here said that only one sentence could be put in, that was the moment at which prejudice occurred.

G   What was meant by " the " gun in the respondent's statement was left completely in the dark. The Court of Criminal Appeal held well-founded the submission of counsel for the appellant before them that " the repeated reference, both in the evidence " and the summing up to *the gun* and *this gun* was gravely " prejudicial to the appellant if Jayawardene's [the police

[29] [1962] 1 W.L.R. 817; 64 N.L.R. 73, P.C.

P. C.
1964
———
REG.
*v.*
RAMASAMY.

A  " sergeant's] evidence was meant to prove nothing more than that " the appellant was aware of where a gun and cartridges were " buried, not necessarily buried by him. He further submitted " that the way in which the evidence was presented to the jury " is likely to have had the effect of influencing the jurors to " attach that amount of weight which they might not otherwise " have attached to the evidence of " the injured man and two B eye witnesses. That statement by the court is adopted; they were entitled to take that view in the light of new material which was not before the jury at the trial. It is quite impossible to say how the jury would have been affected if they had not been told that the respondent said " the gun." It cannot be said that they would necessarily have convicted. C

Both in the original Criminal Procedure Code of 1898 and in the later chapter 12 the very limited use which could be made of a particular statement is because of the element of compulsion. There is no provision under which an exclusively exculpatory statement by an accused person under chapter 12 can be placed before the jury. Section 125 of the Code of 1898 clearly refers to oral D statements and is a prohibition against their use except in two instances: (1) where it is a dying declaration, and (2) the oral statement can be used to prove that the witness made a different statement at a different time. Throughout that section " state-" ment " means an oral statement. Under section 122 (3) of the present Code what a man orally stated to the police officer E can be relied on to prove that the witness made a different statement at a different time; and the words " or to refresh the " memory of the person recording it " would apply.

As to whether section 27 of the Evidence Ordinance is an exception only to section 26, or to sections 24 and 25 as well, in India there have been decisions both ways, and therefore on this F point the matter should be treated as if it were res integra. There is one Ceylon case where a judge of the Supreme Court sitting alone took the view that section 27 was an exception to section 24: *Rex v. Packeer Tamby.*[30] It is submitted that section 27 qualifies section 26 only. In any event section 27 would not apply in the special circumstances of the investigation of a G charge where a man under compulsion makes a confession leading to the discovery; that would be an exception to section 27. [Reference was also made to *Van Cuylenberg v. Caffoor.*[31]]

This is not a case for the application of the proviso to section 5

[30] (1931) 32 N.L.R. 262, 264.          [31] (1933) 34 N.L.R. 433.

**A.C.**            AND PRIVY COUNCIL.                    11

A  of the Court of Criminal Appeal Ordinance; the decision of the
Court of Criminal Appeal was a matter of discretion with which
the Board ought not to interfere.  Secondly, apart from the
proviso, there is in any event the manner in which the particular
evidence was placed before the jury on the express order of the
trial judge limiting the statement made so as to exclude the very
B  next sentence " I deny having shot at anyone." A recent
decision in England in connection with the use of the proviso is
*Reg.* v. *Parker* [32]; see also *Attygalle* v. *The King*. [33]  The Board
should bear in mind that the appellant below, after two years,
three months and 16 days in prison was acquitted, and may
think that in all the circumstances he has been sufficiently
C  punished.

*Dingle Foot Q.C.* in reply.  There are five questions: (1) What
is the true construction of section 122 (3) of the Criminal Pro-
cedure Code?  (2) Does section 27 of the Evidence Ordinance
qualify only section 26, or also sections 24 and 25?  (3) Is the
doctrine of stare decisis applicable to the Court of Criminal Appeal
D  in Ceylon?  (4) Was there here a miscarriage of justice?  (5) Should
the court below have applied the proviso or section 167 of the
Evidence Ordinance?

As to (1) (supra), see Maxwell on the Interpretation of
Statutes, 11th ed., p. 319.  There is a conflict of authority in
Ceylon ending with *Jinadasa's* case [34] on the one hand and
E  *Buddharakkita Thera* [35] and the present case on the other.
*Jinadasa* [36] was the correct view.  The contrary view would lead
to strange results; if an accused person made a statement denying
the offence, that denial could not be given in evidence.  Where
there are two possible interpretations and one leads to extra-
ordinary and unjust results and the other is consistent with reason
F  and justice, the court should lean, if it can, to the latter.  If the
argument on section 122 (3) is not accepted, then reliance is
placed on the submission as to implied repeal, and one must have
the clearest words for that.

As to section 27 of the Evidence Ordinance, the particular
part of the statement which leads to the discovery must be
G  admissible.  In Sarkar on the Indian Evidence Act, 6th ed.,
p. 245, there is a commentary on the Indian decisions.  See also
*State of Uttar Pradesh* v. *Deoman*. [37]  By far the greater number

P. C.

1964

REG.
*v.*
RAMASAMY.

[32] (1960) 45 Cr.App.R. 1, 4–5,
C.C.A.
[33] [1936] A.C. 338, 341; 52 T.L.R.
390, P.C.
[34] 51 N.L.R. 529.

[35] 63 N.L.R. 433.
[36] 51 N.L.R. 529.
[37] A.I.R. (1960) S.C. 1125, 1129–
1130.

P. C.

1964
———
REG.
*v.·*
RAMASAMY.
——

A

of Indian decisions support the view contended for—that section 27 qualifies sections 25 and 24. The matter was considered in *Jinadasa's* case [38]; there is a current of authority in Ceylon in the appellant's favour on this point.

With regard to stare decisis, it is not proper that where there is a tribunal of last resort a court of subordinate jurisdiction of five judges should overrule a court of five judges.

B

The defence consisted of a complete denial of the police officer's evidence as regards the taking of the statement; because of that defence there is here no question of a miscarriage of justice. Lastly, on the application of the proviso, see *Harris* v. *Director of Public Prosecutions* [39] where *Stirland's* case [40] is referred to. In *Lee Chun-Chuen* v. *The Queen* [41] the Board held that the Court of Criminal Appeal had wrongly applied the proviso, but see the judgment. [42] The evidence in the present case was of so trenchant a character that even if there was any error, and it is submitted that there was not, applying the proviso test the Board should say that any reasonable jury properly directed must have arrived at the conclusion which this jury reached.

C

D

July 21. The judgment of their Lordships was delivered by VISCOUNT RADCLIFFE. The main question raised by this appeal is an important and difficult one relating to the administration of the criminal law of Ceylon. It concerns the relationship between section 27 of the Evidence Ordinance (the section which permits the giving of evidence at a criminal trial as to information provided by an accused person, if the information has led to the discovery of some relevant fact) and section 122 (3) of the Code of Criminal Procedure (which strictly limits the use that may be made of statements made by a person to a police officer in the course of an investigation set on foot under Chapter XII of the Code, the chapter in which section 122 appears). The respondent was tried and convicted in the Supreme Court on a charge of shooting one Piyadasa with a gun with such intention and knowledge, to put it briefly, as would have resulted in murder if Piyadasa had died, and at his trial certain evidence was admitted by the presiding judge to the effect that a gun capable of causing the injury actually inflicted had been discovered in consequence of information of its whereabouts which he had given to a police

E

F

G

[38] 51 N.L.R. 529, 533, 534.
[39] [1952] A.C. 694, 712; [1952] 1 T.L.R. 1075; [1952] 1 All E.R. 1044, H.L.(E.).
[40] [1944] A.C. 315, H.L.

[41] [1963] A.C. 220; [1962] 3 W.L.R. 1461; [1963] 1 All E.R. 73, P.C.
[42] [1963] A.C. 220, 229, 231, 235.

A  officer in the course of a section 122 investigation.  On December
17, 1962, the Court of Criminal Appeal quashed his conviction
and directed an acquittal, holding that the evidence of his state-
ment to the police officer had been improperly admitted, that this
had vitiated the jury's verdict at his trial, and that the case was
not one in which it would be right for the court to exercise its
B  power under section 5 of the Court of Criminal Appeal Ordinance
to dismiss the appeal on the ground that no substantial mis-
carriage of justice had actually occurred.

P. C.
1964
———
REG.
*v.*
RAMASAMY.
———

By special leave the appellant has appealed to this Board
against the decision of the Court of Criminal Appeal.  The appeal
has been rested in argument on several independent grounds,
C  which their Lordships will notice in due course.  But, since the
important point of principle is that which relates to the admission
of the evidence of the information leading to the discovery of the
gun, their Lordships will proceed in the first place to express
their opinion on that issue.  It will be convenient, in doing so, to
consider the relationship between section 27 of the Evidence
D  Ordinance and section 122 (3) of the Criminal Procedure Code
without making any further introduction to the facts of this
particular case.

To take section 27 first.  It appears as one of a group of
sections in that part of the Evidence Ordinance that deals with
the inadmissibility of certain confessions.  Section 24 renders
E  inadmissible in evidence confessions produced under the stimulus
of any inducement, and sections 25, 26 and 27 run as follows:

"25.—(1) No confession made to a police officer shall be proved
" as against a person accused of any offence.  (2) No confession
" made to a forest officer with respect to an act made punishable
" under the Forest Ordinance, or to an excise officer with respect
F  " to an act made punishable under the Excise Ordinance, shall
" be proved as against any person making such confession.

" 26.—(1) No confession made by any person whilst he is in
" the custody of a police officer, unless it be made in the imme-
" diate presence of a magistrate, shall be proved as against such
" person.  (2) No confession made by any person in respect of an
G  " act made punishable under the Forest Ordinance, or the Excise
" Ordinance, whilst such person is in the custody of a forest
" officer or an excise officer, respectively, shall be proved as
" against such person, unless such confession is made in the
" immediate presence of a magistrate.

" 27.—(1) Provided that, when any fact is deposed to as dis-
" covered in consequence of information received from a person

P. C.

1964
————
REG.
*v.*
RAMASAMY.
——

" accused of any offence, in the custody of a police officer, so  A
" much of such information, whether it amounts to a confession
" or not, as relates distinctly to the fact thereby discovered may
" be proved.   (2) Subsection (1) shall also apply mutatis
" mutandis, in the case of information received from a person
" accused of any act made punishable under the Forest Ordinance,
" or the Excise Ordinance, when such person is in the custody of  B
" a forest officer or an excise officer, respectively."

This group of sections entered the law of Ceylon in the
Evidence Ordinance of 1895.  Their origin, however, lies consider-
ably further back, since they must have been taken over from
the Indian Evidence Act, which contained a similar set of pro-
visions.  In fact, they seem first to have appeared in the Indian  C
Criminal Procedure Code of 1861, being numbered as sections 148,
149 and 150 of that Code.  Then in 1872 they were taken out of
the Code of Criminal Procedure and enacted separately as sections
25, 26 and 27 of the Evidence Act of that year.  They have been
a very familiar part of the criminal law administered in India,
and there is a large body of judicial decision, not all of it con-  D
sistent, that has been devoted to the interpretation of their
provisions, in particular of section 27, the construction of which
has always raised several special difficulties.

There can be no doubt as to what is the general purpose of
sections 25 and 26.  It is to recognise the dangers of giving
credence to self-incriminating statements made to policemen or  E
made while in police custody, not necessarily because of suspicion
that improper pressure may have been brought to bear for the
purpose of securing convictions.  Police authority itself, however
carefully controlled, carries a menace to those brought suddenly
under its shadow; and these two sections recognise and provide
against the danger of such persons making incriminating confes-  F
sions with the intention of placating authority and without regard
to the truth of what they are saying.

Section 27, on the contrary, envisages a situation in which
circumstances themselves vouch for the truth of certain state-
ments made by an accused person, even though they are made in
conditions that would otherwise justify suspicion.  These are those  G
statements that have led to the actual discovery of a proven fact
when the information supplied by the accused has been the cause
of the discovery.  The principle embodied in section 27 has always
been explained as one derived from the English common law and
imported into the criminal law of British India by the legislators
of the mid-nineteenth century.  It can be traced in English law

A   as early as the late eighteenth century, see *Rex* v. *Warickshall* [1] and *Rex* v. *Butcher*.[2]   The principle was stated by Park J. in the trial of *Thurtell and Hunt*,[3] where he said [4]: "a confession "obtained by saying to the party: ' You had better confess, or it "' will be the worse for you . . .' is not legal evidence.   But, "though such a confession is not legal evidence, it is every day B "practice that if, in the course of such confession, the party state "where stolen goods or a body may be found, and they are found "accordingly, this is evidence, because the fact of finding proves "the truth of the allegation, and his evidence in this respect is "not vitiated by the hopes or threats which may have been held "out to him."

C   It is worth while to make the observation at this point that the reason given for allowing it to be proved that an accused person gave information that led to the discovery of a relevant fact is not related in any special way to the making of a confession.   It qualifies for admission any such statement or information that might otherwise be suspect on the ground of a D general objection to the reliability of evidence of that type.

Section 122 (3) must now be set out.   Its setting is Chapter XII of the Criminal Procedure Code, a chapter which has as its heading "Information to Police Officers and Inquirers and Their "Powers to Investigate" and runs from section 120 to section 133 inclusive.   Of these sections, section 121 deals with informa- E tion relating to the commission of a cognisable offence given to an officer in charge of a police station.   Such information, when given orally, must be reduced to writing by him or under his direction and read over to the informant, and the person giving it must sign the writing so produced.   The section further provides that, if from information received or otherwise the police officer F has reason to suspect the commission of a cognisable offence, he must send a report to the Magistrates' Court and proceed in person to the spot to investigate the facts and circumstances of the case and take such measures as may be necessary for the discovery and arrest of the offender.   Finally, any police officer making such an investigation is empowered to require the attend- G ance before himself of any person who appears to be acquainted with the circumstances of the case and such person is bound to attend as so required.

Section 122 is as follows: "122.—(1) Any police officer or "inquirer making an inquiry under this Chapter may examine

---

[1] (1783) 1 Lea. 263.
[2] (1798) 1 Lea. 265n.

[3] (1824) Notable British Trials, 55.
[4] Ibid. 144–145.

16                              HOUSE OF LORDS                    **[1965]**

P. C.

1964
_____

REG.
*v.*
RAMASAMY.
___

" orally any person supposed to be acquainted with the facts and    A
" circumstances of the case and shall reduce into writing any
" statement made by the person so examined, but no oath or
" affirmation shall be administered to any such person, nor shall
" the statement be signed by such person.  If such statement is
" not recorded in the Information Book, a true copy thereof shall
" as soon as may be convenient be entered by such police officer    B
" or inquirer in the Information Book.  (2) Such person shall be
" bound to answer truly all questions relating to such case put to
" him by such officer other than questions which would have a
" tendency to expose him to a criminal charge or to a penalty or
" forfeiture.  (3) No statement made by any person to a police
" officer or an inquirer in the course of any investigation under    C
" this Chapter shall be used otherwise than to prove that a witness
" made a different statement at a different time, or to refresh the
" memory of the person recording it.  But any criminal court
" may send for the statements recorded in a case under inquiry or
" trial in such court and may use such statements or information,
" not as evidence in the case, but to aid it in such inquiry or     D
" trial.  (4) Neither the accused nor his agents shall be entitled
" to call for such statements, nor shall he or they be entitled to
" see them merely because they are referred to by the court; but
" if they are used by the police officer or inquirer who made them
" to refresh his memory, or if the court uses them for the purpose
" of contradicting such police officer or inquirer, the provisions of    E
" the Evidence Ordinance, section 161 or section 145, as the case
" may be, shall apply.  Nothing in this subsection shall be
" deemed to apply to any statement falling within the provisions of
" section 32 (1) of the Evidence Ordinance, or to prevent such
" statement being used as evidence in a charge under section 180
" of the Penal Code."                                                F

These sections dealing with criminal investigation were first
enacted in Ceylon in 1898, although at that time the powers
conferred were conferred only on inquirers specially appointed, and
not on police officers in charge of stations.  Later they were
extended to police officers.  Although they became part of the law
of Ceylon by the Criminal Procedure Code, No. 15 of 1898, three     G
years after the Evidence Ordinance had been enacted, it is
doubtful whether any particular significance attaches to the fact
that the one Ordinance was made later than the other, since they,
too, like the sections of the Evidence Ordinance already quoted,
were derived from comparable Indian legislation, in which both
groups had existed side by side.

A    The analogue to section 122 in Ceylon is section 162 in India, and consideration of the question how far section 27 is affected by section 122 in Ceylon necessarily invites the question how the relationship between the same sections was worked out in the courts in India. The absence of any unanimous line of decision in those courts and the fact that section 162 has been more than B  once amended in significant particulars prevent any simple answer to this question: nor, if it were available, would it be conclusive in Ceylon. But in their Lordships' opinion some notice of the Indian position is desirable, as it indicates the difficulties that have so long prevented the present problem from coming to a head, and also, they think, it suggests that there has been a C  general disposition to treat section 27 and section 162 as capable of effective co-existence.

From 1861 to 1872 these two sections were part of the same Code, the Criminal Procedure Code, in British India. In 1872, when section 27 was transferred to the Evidence Act, as already mentioned, there was inserted in section 162 a specific saving for D  the operation of section 27. It is to be inferred that at that time it was not thought that there was anything inconsistent in principle in the two sections being allowed to operate, each according to its terms. This saving continued to appear until 1898 when, on amendments made to the Criminal Procedure Code, it was removed from section 162. No explanation of the significance of E  this change seems ever to have been forthcoming, and it may well have been one of those " improvements " that delight draftsmen who make them and tantalise judges who then have to interpret them. However that may be, in recent years the express saving of section 27 has been restored to the Indian Code, thus eliminating for the future any controversy as to whether it could be wrong F  to give effect to section 27 at a trial, even though the information given by the person accused had proceeded from a section 162 investigation.

In the period that intervened between 1898 and the restoration of that saving the Indian courts must frequently have been brought up against the problem of the impact of section 162 upon G  section 27. No final solution, however, was ever established, although the balance of authority seems to have been regarded as inclining in favour of treating section 27 as an exception from section 162, even without any saving words. Thus in the 6th edition of Sarkar on Evidence, published in 1939 (a significant date, as will appear later), it was stated at p. 246: " The general " rule that statements made by an accused to the police during

P. C.

1964

REG.
*v.*
RAMASAMY.

18    HOUSE OF LORDS   **[1965]**

P. C.

1964

REG.
*v.*
RAMASAMY.

A

" an investigation cannot be proved does not affect the special
" exception in section 27.   Statements admissible under that
" section can still be proved." See, too, Woodroffe & Ameer Ali—
Law of Evidence, 9th edition (1931), p. 292.

It has to be recognised, however, that prior to 1939 the various
High Courts of British India were not agreed as to whether the
prohibition imposed by section 162, whatever its nature or extent,   B
applied to an accused person at all.   The decisions varied on this
point, and it was not until the case of *Pakala Narayana Swami*
v. *King-Emperor* [5] was decided by this Board that it was con-
clusively determined that statements made during a police in-
vestigation by a person then or subsequently accused were within
the prohibition and could not be used at his trial.   *Narayana*   C
*Swami's* case did not touch section 27, but during the argument
before the Board stress was laid on the point that, if section 162
did apply to the statements of an accused person, a very wide
inroad had been made upon the application of section 27, con-
trary, presumably, to much of the existing practice at trials in
India.   The point was noticed by the Board in the opinion   D
delivered by Lord Atkin [6] but it was not necessary to the decision
and was expressly left undecided.   As he pointed out, section 27
might still have some, though a restricted, operation, even if all
statements made by an accused person during investigation were
banned: and, further, it was still open to courts to decide that
section 27 was a " special law " within the meaning of section   E
1 (2) of the Criminal Procedure Code and that section 162 did not
constitute a " special provision to the contrary " for the purposes
of that subsection.   If that construction were to prevail, it would
follow that section 27 was unaffected.

When after 1939 the courts in British India came to address
themselves to this aspect of the problem, again no unanimous   F
view emerged.   The High Courts at Madras and Patna adopted
the opinion that section 1 (2) did amount to a saving of section
27: those of Lahore and Allahabad took the view that it had been
" repealed."   These conflicting decisions were reviewed in the
High Court of Bombay by Beaumont C.J. and Sen J. in *Biram
Sardar* v. *Emperor*,[7] and the judgment of the court, delivered by   G
Beaumont C.J., came down in favour of the view that section 27
was saved by section 1 (2) of the Criminal Procedure Code.

The different views entertained on this issue can no longer be
of direct importance, now that the express saving of section 27

[5] (1939) L.R. 66 I.A. 66, P.C.        [7] A.I.R. (1941) Bom. 146.
[6] L.R. 66 I.A. 66, 79.

A has been restored to section 162, but it is relevant to observe that the principle adopted by the High Courts of Bombay, Madras and Patna in their construction of section 1 (2) treats that provision as being, in effect, no more than a statutory enactment of the general maxim '' generalia specialibus non derogant,'' to which resort has so often to be made in matters of statutory interpreta-
B tation. Their Lordships must consider later whether that maxim is not a valuable guide in dealing with section 27 and section 122 in Ceylon.

Another construction of section 162 also served for a time to confuse the issue in India. That was the view that the section did not operate to exclude the tendering of oral evidence of state-
C ments made in the course of an investigation, its purpose being merely to prohibit the production or use of the written record of such statements, which the police officer receiving them was required to make. Such a construction, which was favoured by some of the Indian courts, meant a very serious restriction of the protection which it seems reasonable to suppose that section 162
D was intended to secure. In 1923, however, the section was amended in a form which made it impossible for the future to admit any such distinction, the new wording being '' such statement or '' any record thereof.''

A similar distinction has nevertheless been accepted and applied in several decisions of courts in Ceylon over a considerable
E period of years and has only recently been departed from in two cases, of which one is that now under appeal; and their Lordships must therefore deal with this question of construction when they turn, as they now must, to the law of Ceylon and the meaning and effect of section 122 of its Criminal Procedure Code. Of the law of India they think that no more can safely be said on this
F topic than that for one reason or another section 27 has been treated generally, though not universally, as unaffected by section 162, but that the reasons for this treatment, as has been shown, have been too various and, in some cases, too unreliable to afford any sound basis upon which to build a construction of the corres-ponding provisions in the law of Ceylon.

G In considering section 122 (3) and its effect, then, there are two separate questions to be answered. One is, whether the prohibition of using '' statements '' that it imposes applies only to the written records and does not exclude oral evidence of anything said. The other is, whether the effect of the prohibition, if it does cover oral evidence as well as the production of the written record, is to negative the rule contained in section 27 of

P. C.

1964

REG.
v.
RAMASAMY.

P. C.

1964

REG.
*v.*
RAMASAMY.

the Evidence Ordinance that a statement distinctly relating to a   A
fact discovered can be proved against an accused, even if made
by him while in custody.

To take up the first of these questions. It seems plain, as
has been pointed out already, that if it is really open to the
prosecution to prove statements made by an accused person
during police investigation by the process of calling the police   B
officer to whom the statement was made and allowing him to
recall orally what was said, apparently with the aid of his notes
to refresh his memory, the accused has very little effective pro-
tection against the use of damaging statements, as, for example,
admissions, that he may have made in reply to police questioning.
This seems to their Lordships to be a surprising result, when it   C
is recalled that police investigations under Chapter XII procedure
involve compulsory attendance on the part of persons summoned
and compulsory reply to questions (except those tending to in-
criminate), without any oath administered or any opportunity
for the person questioned to see the record made of his statements,
much less to read it over and sign it. Moreover, the opening   D
words of section 122 (3), " No statement made by any person . . . in
" the course of any investigation . . . shall be used otherwise than,
" etc." seem categorically to exclude the idea that such a state-
ment can be proved positively against the maker of the statement
as part of the prosecution's case. Yet this must be the conse-
quence of any construction of section 122 (3) that treats the word   E
" statement " throughout that subsection as if it referred merely
to the written record brought into existence by the police officer
and that does not admit the connection of the prohibition with
any general policy of forbidding the use at a criminal trial of
statements obtained from an accused person by the use of the
special procedure.   F

The practice of admitting oral evidence of statements made
during investigation as substantive evidence and not merely
allowing them to be used to contradict a witness making con-
flicting statements was evidently of long standing in Ceylon. It
is spoken of with approval by Bertram C.J. in *Rex* v. *Pabilis* [8]
when he said in reference to the words " to refresh the memory   G
" of the person recording them " in section 122 (3) [9]: " These
" words have always seemed to me to imply that an officer re-
" cording such a statement may (where the law allows it, e.g.,
" under section 157 of the Evidence Ordinance) give oral evidence

[8] (1924) 25 N.L.R. 424.            [9] Ibid. 425.

**A.C.**          AND PRIVY COUNCIL.                    21

P. C.

1964

REG.
*v.*
RAMASAMY.

A  " as to the terms of that statement, but may not put in the written
" statement itself." Similar views were expressed in two suc-
ceeding cases, *Rex* v. *Gabriel* [10] and *Rex* v. *De Silva.* [11] The
question was given fuller consideration in 1944 by a court con-
sisting of Howard C.J., Moseley S.P.J. and Wijeyewardene J.
see *Rex* v. *Haramanisa.* [12] Although their judgment called atten-

B  tion to the serious difficulties involved in the interpretation of
section 122 (3) and raised other objections, not now material,
to the oral proof of statements that the law required to be
recorded in writing, the court adopted the same construction of
the subsection as that which had been accepted in the earlier
cases and in certain pre-1923 decisions in High Courts in India

C  (Bombay, Calcutta and Madras) and held that " the evidence
" of the oral statement is not subject to the limitations imposed
" by section 122 (3)." Since ex hypothesi such statements are
made orally the court's meaning would perhaps have been more
accurately expressed if they had said that oral evidence of the
statement was not subject to the section 122 (3) limitations.

D      None of these cases had been concerned with the question of
section 27 itself. They had all related to evidence in corrobora-
tion of a witness as allowed under section 157 of the Evidence
Ordinance, and, in fact, not all of the statements discussed were
held in the end to be section 122 statements at all. The case of
*Rex* v. *Jinadasa,* [13] however, involved section 27 directly. It was

E  a decision of the Court of Criminal Appeal, consisting of five
judges, Jayetileke C.J., Dias S.P.J., Gunasekara, Pulle and
Swan JJ.; and the effect of the decision was to hold that an oral
statement made during the course of a section 122 investigation
can be proved under section 27 against an accused, the prohibi-
tion of its " use " applying only to the written record. The view

F  of the court can be taken to be summarised in the following
quotation [14]: " Section 122 (3) imposes restrictions on the use
" of the police officer's . . . *record* of the oral statement made to
" him, but does not govern the admissibility of *oral evidence* of
" such statement. Therefore, where the law otherwise permits
" such evidence to be given a police officer . . . may give oral

G  " evidence of a statement made to him." This is to restate the
opinion of Bertram C.J. in *Rex* v. *Pabilis,* [15] supra, in virtually
the same words.

    The reason for drawing the distinction between the use of

---

[10] (1937) 39 N.L.R. 38.        [13] (1950) 51 N.L.R. 529.
[11] (1940) 42 N.L.R. 57.        [14] Ibid. 540.
[12] (1944) 45 N.L.R. 532.       [15] 25 N.L.R. 424.

P. C.
1964
———
REG.
v.
RAMASAMY.
———

oral evidence of a statement and the use of the written record    A
of it rests wholly on certain deductions made from some of the
phrases that appear in section 122 (3). Thus, no statement can
be used " except to refresh the memory of the person recording
" it." How can he refresh his memory, it is asked, except by
referring to a written document? To that question their Lord-
ships think that the correct reply is that, of course, he cannot,    B
but that it by no means follows from that that as a matter of
construction the words " no statement " at the beginning of the
sentence are confined to the written record of the statement
made. The words themselves do not suggest such a limitation,
and the true view, in their Lordships' opinion, is that in this
opening sentence no distinction is intended between an oral    C
statement or oral evidence of such statement and its written
record. What is intended is that, except for the limited pur-
poses specified, which may indeed require and contemplate no
more than reference to the written record, statements made by
a person under the special conditions of a police investigation
are not to be used against him in any form, whether such    D
evidence is tendered orally or in writing.

Then it is said that there are further indications in the sub-
section which show that the legislature was only dealing with
use of the written record. Neither the accused nor his agents
shall be entitled to " call for " such statements, or to " see
" them " merely because they are referred to by the court.    E
Here certainly it can be accepted that the statements spoken
of are written material, for it is only such material that can
be called for or seen: but this point loses all force as a guide
to construction of the prohibition contained in the opening
sentence when it is appreciated that after the close of that
opening sentence the next sentence begins " But any criminal    F
" court may send for the statements recorded in a case under
" inquiry or trial in such court, and may use such statements
" . . . ." Here the reference is explicitly to " statements
" recorded," i.e. the record itself, and there is no difficulty in
seeing that in what immediately follows the words " such state-
" ments " do apply to the " statements recorded," without    G
throwing back any light upon the meaning of " statements " in
the opening sentence.

The construction that had been adopted in the *Jinadasa*
case [16] was reconsidered in 1962 by the Court of Criminal Appeal

[16] 51 N.L.R. 529.

**A.C.**         AND PRIVY COUNCIL.                          23

A   (Basnayake C.J., Sansoni, H. N. G. Fernando, Sinnetamby and
    de Silva JJ.) in *Reg.* v. *Buddharakkita Thera.*[17]  The evidence
    in question was a statement made by an accused person during
    the course of a police investigation, but it was not put forward
    as information leading to a discovery under section 27.  The
    judgment of the court, which was delivered by the Chief Justice,

B   refused to accept the long-standing distinction between oral
    evidence of statements and the written record of them and held
    that the effect of section 122 (3) was to render the use of an
    oral statement made to a police officer in the course of an
    investigation just as obnoxious to it as the use of the same
    statement reduced into writing.  The judgment pointed out,

C   with what seems to their Lordships to have much force, that
    the original form of this section, when enacted in the Criminal
    Procedure Code of 1898, had clearly intended its prohibition
    " No statement other than a dying declaration . . . shall if
    " reduced to writing be signed by the person making it or shall
    " be used otherwise, etc." to apply to all statements whether

D   in oral or written form and however proved; and the judgment
    further commented on the unlikelihood of the legislature, when
    introducing its new form of Chapter XII, the primary purpose
    of which was to give police officers the powers of inquirers,
    intending to make a far-reaching change in the substance of the
    law.,

E       In the judgment now under appeal the Court of Criminal
    Appeal has applied the construction of section 122 (3) adopted
    in *Buddharakkita's* case [17] in preference to that favoured in
    *Jinadasa's* case,[18] holding that the latter " must not any longer
    " be regarded as binding."  For the reason that they have given
    their Lordships are in agreement with the decision of the court

F   in *Buddharakkita's* case [19] on this question of construction, and
    they are of opinion that the *Jinadasa* construction is incorrect
    and ought no longer to be applied.  Section 122 (3), then, must
    be read as covering the use of oral evidence of statements made
    during police investigation just as much as the written records
    of such statements.

G       Before proceeding to the next point, the relation between
    section 122 (3) so construed and section 27, their Lordships
    must notice an argument that was presented to them by the
    appellant to the effect that, on the principle of stare decisis, the
    court in the present case acted wrongly in departing from the

P. C.

1964

REG.
*v.*
RAMASAMY.

[17] (1962) 63 N.L.R. 433.          [18] 51 N.L.R. 529.
                                    [19] 63 N.L.R. 433.

P. C.
1964
———
REG.
*v.*
RAMASAMY.
———

*Jinadasa* decision,[20] one arrived at a few years earlier by the
same court constituted by a Bench of the same number of
judges. Their Lordships do not consider that it could serve any
good purpose to deal with this argument, since to do so could
lead to no useful result. The principle of stare decisis may be
invoked in more than one sense. It may lead a superior court
to adhere to an established line of decisions in courts to which
it is constitutionally a court of error, even though, if the matter
were to be raised for the first time, it would not itself agree
with those decisions. It was not in that sense that the principle
was advanced in this appeal, nor in a matter of this sort relating
to an important aspect of evidence in criminal trials would their
Lordships have thought it proper to apply it. What was said
was that the Court of Criminal Appeal in this case ought to have
regarded itself as bound by the previous decision of the same
court in *Jinadasa's* case [20] and should have treated itself as not
being at liberty to depart from it.

But now that the legal issue as to the true construction of
section 122 (3) has reached this Board, which is not bound in
any sense by the *Jinadasa* decision, the issue has in any event
to be argued and decided as open matter, and in a criminal
cause, in which the incidence of costs is not material, it is
merely academic to inquire at this stage whether the court
appealed from ought to have followed the earlier decision, even
if it did not agree with the law as there expounded. In these
circumstances their Lordships do not think it necessary to
express any opinion on the point.

Thus it now becomes necessary to decide what, if any, effect
section 122 (3) has upon section 27, assuming, as their Lordships
now hold, that section 122 (3) bars oral evidence as well as
written records and that, as the Board held in *Narayana Swami's*
case [21] it extends to an accused person as much as to any other
witness. This question has been answered by the Court of
Criminal Appeal in the judgment now under appeal, and they
have held that a statement which cannot be used under section
122 (3) cannot be proved in any form under section 27. Con-
sequently section 27 is to that extent, an important extent,
repealed by implication by section 122 (3).

This view was evidently not at first regarded in Ceylon as a
necessary consequence of the decision in *Buddharakkita's* case,[22]
which abolished the old distinction between oral evidence and

---

[20] 51 N.L.R. 529.                    [22] 63 N.L.R. 433.
[21] L.R. 66 I.A. 66.

**A.C.**            AND  PRIVY  COUNCIL.                    25

A written records under section 122.  Thus in that case itself the judgment of the court seemed to treat section 27 as still providing an exception to section 122 (3); and even as late as 1962 the Court of Criminal Appeal (Basnayake C.J., Sansoni and Sinnetamby JJ.) are recorded as saying (see *Reg.* v. *Don Wilbert* [23]) "Having regard to the decision in *Buddharakkita*
B "which is not yet reported, statements made in the course of "an investigation under section 122 cannot be used, whether "they be oral or written, except for the limited purpose con- "templated by section 27 of the Evidence Ordinance."

The basis of the court's present decision rests upon the fact that there are certain express savings attached to section 122 (3),
C and one of these involves an actual reference to the Evidence Ordinance, since it is provided that "Nothing in this subsection "shall be deemed to apply to any statement falling within . . . "section 32 (1) of the Evidence Ordinance."  The reference here is to the rule governing the admissibility of dying declarations.  It is a very natural and persuasive line of interpretation
D to argue that, if section 32 is expressly excepted, it cannot have been the intention of the legislature to except by implication another and separate section which is not referred to.

Their Lordships are certainly not unimpressed by the force of this reasoning.  But the fact remains that both the sections in question stand in the Statute Book without any qualification
E that indicates the relationship of one to the other, and in the difficult task of interpreting the mind of the legislature with regard to them it seems necessary to look for guidance in a wider field than that of section 122 (3) itself as at present drafted.  Both sections, as we know, were adopted by Ceylon from the existing legislation of British India, section 27 in 1895
F and section 122 in 1898.  Both, as has been shown, had originated in India in the same measure of 1861, and they had been administered since then under a system which treated section 27 as an express exception from the Indian section 162.  It is reasonable to suppose, therefore, that when they were incorporated into the legal system of Ceylon they were looked upon
G at the time as complementary rather than as conflicting provisions.

Is there anything to suggest the contrary in the way in which the Ceylon legislation was framed?  It is true that section 122 came in three years after section 27, but considering their

[23] (1962) 64 N.L.R. 83.

P. C.

1964

_____

REG.
*v.*
RAMASAMY.

___

common Indian origin, it seems pedantic to attach any sig- A
nificance to the fact that one was enacted at a later date than
the other.   Their relationship cannot be determined by the
mere sequence of dates.   The question turns, it seems, not so
much on the present form of section 122 (3) but on the form
which its predecessor, section 125, assumed in the Criminal
Procedure Code of 1898: for if that section on its first intro- B
duction is not to be read as overruling section 27, which had
been introduced three years earlier, it would not be right to
infer that the changes of drafting form which have led to the
present wording of section 122 (3) were ever intended to bring
about so important an alteration.

Portions of that section 125 have already been quoted.   In C
full it ran as follows: " No statement other than a dying
" declaration made by any person to an inquirer in the course
" of any investigation under this chapter shall if reduced to
" writing be signed by the person making it or shall be used
" otherwise than to prove that a witness made a different state-
" ment at a different time."   There are two observations to be D
made upon the section expressed in this form.   First, there is
not in it, as there is in section 122 (3), any explicit reference
to the Evidence Ordinance, although the exception of " a dying
"declaration" no doubt assumes that the rules of that Ordinance
will be applied to govern the matter.   Secondly, 1898 was the
same year as that in which the saving of section 27 was omitted E
from the Indian section 162.   The omission did not, as has
been shown, lead to any general change in the Indian practice
of applying section 27, and Indian textbooks continued to speak
of section 27 as an exception from section 162.   In such circum-
stances there seems to be altogether insufficient ground for
attributing to the legislature in Ceylon an intention to wipe out F
the rule enacted in section 27 by the introduction of section 125
in the Criminal Procedure Code of 1898.

The question is, of course, a difficult one: but their Lordships
are of opinion that the correct way to solve it is by applying the
maxim of interpretation " generalia specialibus non derogant."
On the one hand there is the Evidence Ordinance containing a G
precise and detailed codification of the rules that are intended to
govern the admission and rejection of evidence.   Among them is
this section 27, a well-known rule, which has always been
regarded as removing all objections to the statements that it
deals with, so far as those objections rest upon misgivings as to
the conditions under which such statements have been made.

A  On the other hand there is the Criminal Procedure Code, not
primarily concerned with rules of evidence at all but containing
regulations for the special procedure of investigation under
Chapter XII and manifesting a clear general intention, based on
the peculiarities of the procedure, to keep material produced by it
out of the range of evidence to be used when a trial takes place.
B  Their Lordships think that they must accept the conclusion that
evidence falling within section 27 can lawfully be given at a trial,
even though it would otherwise be excluded as a statement made
in the course of an investigation under section 122.

It is necessary now to apply the legal principles that have
been discussed to the trial of the respondent. He was charged,
C  as has been said, with having shot one Piyadasa with a gun with
such intention or knowledge and in such circumstances that had
Piyadasa died by his act he would have been guilty of murder.
This was a charge under section 300 of the Penal Code.

The evidence called for the prosecution included the evidence
of two men, apart from Piyadasa, who were eye-witnesses of
D  Piyadasa's shooting and who deposed, as did Piyadasa himself,
to the fact that it was the respondent who fired the shot that
injured Piyadasa. There may be some doubt whether or not one
of these two eye-witnesses qualified his evidence under cross-
examination, but, whether he did or not, there was ample direct
evidence placed before the jury to show that the gun-shot
E  that injured Piyadasa was deliberately fired at him from a gun
held by the respondent.

In addition to these witnesses a police sergeant, Jayawardene,
was called by the prosecution for the purpose of deposing to a
statement made by the respondent in consequence of which
" the," or at any rate " a " gun was discovered. It has not been
F  in dispute that at the time of making the statement the respon-
dent was in the custody of the police and that the statement was
made by him during the course of a police investigation by
Sergeant Jayawardene. The full statement was at no time placed
before the jury. What happened was that in their absence from
the court the prosecuting counsel told the judge, who had the
G  written record of the statement before him, that he proposed to
" lead in certain portions of the statement made by the accused
" in consequence of which the gun was discovered."

The full record of the statement that was before the judge has
been set out in the judgment of the Court of Criminal Appeal,[24]

P. C.

1964

REG.
*v.*
RAMASAMY.

HOUSE  OF  LORDS       **[1965]**

P. C.
1964
——
REG.
*v.*
RAMASAMY.
——

and apparently that record ran as follows: " I am now leaving    A
" with the P.CC. 4358, 7326, 5617, and suspect Ramasamy to
" trace the gun.

"  1.9.60. at 3.25 p.m. Monte Cristo Estate, line No. 6.
" Suspect Ramasamy points out to me a place in the garden
" opposite line No. 6 and dug out the spot.  Here I find a
" Webley & Scott S.B.B.L. 12-bore gun barrel No. 10973 in    B
" three parts wrapped in an old gunny sack and 14 cartridges
" 12-bore in an oil cloth bag ranging as follows: 2 S.G., 2 No. 6,
" 2 No. 3, 7 No. 4 and 1 F.N. filled 12-bore cartridges.  I smelt
" the barrel and there is a smell of gun powder and recent fouling
" in the barrel.  I tied both ends covered with paper.  I here take
" charge of them as productions.  Here there is (?) shrub (sic)    C
" jungle in the vicinity.  I now proceed to record his statement.
" Ramasamy *alias* Babun Ramasamy, s/o Murugan, age 48 years,
" labourer of line No. 9 Monte Cristo Estate states: ' This
" ' morning about 8 a.m. I was in my line room.  At this time I
" ' heard the shouts of people towards the upper line where I am
" ' residing.  I came out and saw about 50 to 100 people collected    D
" ' outside the lines and there was pelting of stones.  Just then I
" ' heard the report of a gun in the direction of Dhoby's line.  I
" ' then came running to line No. 6 through fear.  As I came
" ' running to line No. 6 I again heard the report of a gun
" ' towards the line of the mechanic.  At the time I saw about
" ' 40 to 50 men and women including strikers and non-strikers    E
" ' shouting.  As I came to the (verandah) back verandah I found
" ' a 12-bore gun broken lying on ground and some cartridges in
" ' an oil cloth bag.  I broke the gun into three pieces, picked up
" ' a gunny sack and wrapped the parts of the gun with the bag
" ' of cartridges buried in the garden opposite line No. 6.  I am
" ' prepared to point out the place where the gun and cartridges    F
" ' are buried.  I deny having shot at anyone.  I am one of the
" ' strikers.  This is all I have to state.  Read over and explained
" ' and admitted to be correct.'

"  I am now leaving with P.CC. 4358, 7326 and 5617 and
" suspect Ramasamy to trace the gun.  3.25 p.m. Monte Cristo
" Estate opposite line No. 6.  On the statement made by Rama-    G
" samy I recovered one S.B.B.L. 12-bore Webley & Scott gun
" No. 10973 broken in three parts, barrel, butt and hand guard
" wrapped in an old gunny sack and one oil cloth bag containing
" 14 cartridges 12-bore ranging as follows: 2 S.G., 2 No. 6,
" 2 No. 3, 7 No. 4, and one F.N. filled 12-bore cartridges.  I
" found them buried in the garden where shrub jungle is found.

A  "I smelt the barrel. It is smelling of fouling and gun powder.
"I find the barrel fouled and signs (?) of recent firing. I have
"(tied) covered and tied both ends and taken charge as produc-
"tions. At 4.20 p.m. I produced the productions, gun and cart-
"ridges, and the suspect Ramasamy before I.P.''

    Prosecuting counsel wished to put in the words "I picked up
B  "the parts of the gun wrapped up in a gunny sack and a bag of
"cartridges buried in the garden opposite line No. 6" (sic).
The judge, however, directed him that he must confine himself
to proving the words "I am prepared to point out the place
"where the gun and the cartridges were buried." Plainly both
of them were treating the statement as one coming within the
C  rule of section 27 and intended to limit the words proved against
the accused to those which "relate distinctly to the fact thereby
"discovered."

    The respondent's counsel had not at that time seen the record
of the statement, and section 122 (3) does not give him any
general right to call for it merely because the judge refers to it.
D  He did state, in answer to the judge, that he did not object to the
words indicated but that he objected to the other part of the
statement going in. The judge assured him that he was not going
to allow that.

    The evidence of the respondent's statement was then put
before the jury in this limited form. Sergeant Jayawardene was
E  cross-examined on it by counsel for the respondent, the cross-
examination being directed at the outset to establishing that the
respondent had never produced "this gun" to him, never pointed
it out and never made a statement to him about it. The witness
rejected these suggestions. At this stage of the trial the judge
handed to the respondent's counsel the witness's diary, in which
F  the statement attributed to the respondent was recorded, and his
counsel was thus afforded his first opportunity of seeing in writing
what the rest of the recorded statement amounted to.

    The respondent did not give evidence. In his summing up to
the jury the judge indicated to them clearly that in his view the
most important part of the evidence was that of Piyadasa himself
G  and the two other eye-witnesses, and said that their "verdict
"must surely rest in this case upon your belief or disbelief" of
those witnesses. With regard to the evidence of Sergeant Jaya-
wardene as to the finding of the gun he directed them that it
meant nothing more than that the accused was aware of where a
gun and cartridges were buried, not necessarily buried by him.

    The jury brought in a unanimous verdict of guilty after 17

P. C.

1964

REG.
*v.*
RAMASAMY.

P. C.

1964

———

Reg.
*v.*
Ramasamy.

———

minutes' retirement.  The court sentenced the respondent to 10    A
years' rigorous imprisonment.

His appeal against conviction and sentence was allowed by
the Court of Criminal Appeal on the ground that Jayawardene's
evidence as to the information leading to the discovery of the gun
and cartridges was improperly admitted, since section 27 did not
permit the giving of evidence that was covered by section 122 (3).    B
Their Lordships have already expressed their opinion on this
question, and in their view section 27 is not displaced in the way
that has been suggested.  Consequently they are not able to
support the Court of Criminal Appeal's judgment on this aspect
of the law and they must hold the conviction to have been
wrongly set aside.                                                  C

There are, however, two further points to which allusion must
be made before the appeal is disposed of.  Having regard to the
view of the law taken by the Court of Criminal Appeal it was
necessary for them, as it is not for their Lordships, to consider the
further question whether they ought to exercise the power given
to them by the proviso to section 5 of the Criminal Appeal    D
Ordinance and dismiss the respondent's appeal on the ground that
his conviction had not actually involved any substantial mis-
carriage of justice.  In dealing with this the judgment delivered
by the Chief Justice dwells largely upon what he described as the
grave prejudice inflicted upon the respondent by the form in which
Sergeant Jayawardene's evidence of the statement made to him    E
was put before the jury.  Their Lordships have thought it neces-
sary to give careful attention to this point, which was fully
argued before them, so as to assure themselves that his evidence,
even if admissible under section 27, was not vitiated by the
partial nature of the statement proved or by some improper
treatment of it in the judge's summing up to the jury.    F

In their opinion no objection can be maintained on either of
these grounds.  It is quite true that the words " the gun " and
" the cartridges," if put before the jury as words attributed to
the accused in connection with the discovery, are capable of
suggesting or even likely to suggest a positive connection between
the gun discovered and the gun with which Piyadasa was shot,    G
which the full statement did not bear out.  For in another part
of the statement the accused states that having heard the sound
of two gunshots, he had come running up to the back verandah
on the Monte Cristo estate and that he had found there a 12-bore
gun, broken, lying on the ground and some cartridges in a bag.
He says that he had broken the gun into three pieces, picked up

P. C.

1964

REG.
*v.*
RAMASAMY.

A  a sack, wrapped the parts of the gun with the bag of cartridges and buried them in the garden opposite line No. 6. Only after these statements does he state that he is prepared to point out the place where the gun and cartridges were buried. He then says that he denies having shot at anyone.

B  What is said is that, if the words admitted by the judge were to be admitted at all, it could not be just or fair to the accused to allow them to be placed before the jury without letting them hear also the explanatory and self-exculpatory words which formed the context of his offer to show where the objects were buried. Their Lordships do not consider this objection to be well founded. The judge, in admitting the words relating to the dis-
C  covery, was applying the rule laid down by section 27. That rule limits the admissible words, whether they amount to a confession or not, to those relating distinctly to the fact discovered. He is not at liberty to go beyond that limit, however much the prosecution may wish to do so, and it has always been regarded as the correct practice that judges should be strict in applying the
D  requirement that the words admitted must " relate distinctly " to the fact. No doubt it is considered that such a practice is likely on the whole to tell in favour of an accused, even though it may result in the exclusion of self-exculpatory statements.

The present case illustrates the difficulty of allowing the rule to be applied in any extended way. In order to show the exact
E  significance of the words " the gun " when used by the respondent the judge would have had to direct the prosecution to supplement them by putting in as well so much of his statement as set out his story of the finding of a gun on the verandah and of his decision to pick it up and bury it and the cartridges, without any explanation offered of his reason for acting in such a
F  suspicious way. A judge might very reasonably suppose that to put this in on top of the other evidence would only make the case against the accused the blacker for the addition. To direct such evidence to be put in, without any application from the defence counsel (who, it must be remembered, had seen the full record of the statement before the close of Jayawardene's
G  evidence) and in face of the line being taken in his cross-examination of that witness that the accused had never made any statement to him at all, would not, in their Lordships' opinion, have represented the duty of the judge conducting the trial that was taking place before him. They do not think that he can be charged with having misconducted the trial in this regard.

The course that he did adopt when he came to sum up to the

P. C.

1964

REG.

*v.*

RAMASAMY.

jury appears to them to have been the correct way of handling    A
his difficult problem.  On the one hand, as has been pointed out,
he told the jury to concentrate on the question whether they were
going to believe or disbelieve the evidence of the eye-witnesses.
On the other hand he suggested to them that the evidence about
the finding of the gun did not amount to anything very much.
The gun discovered, he said, was one that, according to the    B
analyst, " could possibly have caused the injuries," because
" with this gun you can fire S.G. slugs."  The prosecution's
point was, he said, that if the accused did point out that gun, it
was because he knew where it was.  He then explained the
respective positions of the prosecution and the defence as follows:
" Well, the defence has challenged Jayawardene and said he is    C
" nothing more than a liar in uniform.  That is the suggestion.
" The defence alternatively argues, even if that suggestion of the
" defence is not accepted, but Jayawardene is believed when he
" says that the accused pointed out the gun, the statement of the
" accused is that he could point out a place where a gun and
" cartridges are buried.  The defence therefore argues, that means    D
" nothing more than that the accused was aware of where a gun
" and cartridges were buried, not necessarily buried by him.  I
" did not understand the prosecution as placing the case any
" higher than placed by the defence counsel himself.  The prose-
" cution does not say that it proves anything more than showing
" a place where a gun and 14 cartridges were buried, and this    E
" was about 3.25 or 3.30 that the cartridges were unearthed.
" Well, gentlemen, that is the evidence in this case."

    With the matter put to the jury in that way in the summing
up their Lordships do not think that it can fairly be said that any
injustice was caused to the defence by the words of the statement
that were admitted under the rule of section 27 being admitted    F
in the limited form chosen by the judge.

    It only remains to place on record one further observation
which arises out of certain strictures contained in the judgment
of the Chief Justice reflecting upon the handling of the prosecu-
tion's case at the trial [25] and the evidence of Sergeant Jaya-
wardene.  His comments on the conduct of counsel for the    G
Crown are to be found in the last two paragraphs of his judgment,
and it is sufficient to note in referring to them that they attribute
to the prosecution a lack of proper fairness and detachment in
the presentation of the case and even a conscious attempt to
mislead the court.  This censure, which is of the gravest order,

[25] 64 N.L.R. 433, 448.

**A.C.**              AND  PRIVY  COUNCIL.                              33

P. C.

1964

REG.
*v.*
RAMASAMY.

A   was not supported in any particular by counsel for the respon-
dent in his argument before the Board.  Their Lordships have
found no justification for it, and they think that it must have
arisen from an insufficient appreciation on the part of the court
of the limitations imposed by observance of the conditions of
section 27 and of the part played by the judge himself in the
B   instant case in directing what part of the accused's statement he
would allow to go before the jury.  Their Lordships must dis-
sociate themselves from any endorsement of the Chief Justice's
words of censure.

As to Sergeant Jayawardene's evidence at the trial, it is
described by the Chief Justice as a reprehensible attempt at
C   " suggestio falsi et suppresio veri."  Any court reviewing the
written record of a witness's oral evidence under examination
and cross-examination is at liberty to form its own conclusion as
to his intentions and bona fides, even if the attribution to him of
gross bad faith is usually regarded as an exceptional departure on
the part of an appellate court.  Their Lordships are certainly in
D   no better position than the Court of Criminal Appeal to form a
judgment on this matter: they will merely state with regard to
this witness that neither their own analysis of his evidence nor
the criticisms of it made by the Chief Justice have seemed to
them to require so hostile a conclusion.

Their Lordships will humbly advise Her Majesty that the
E   appeal should be allowed, the judgment and order of the Court
of Criminal Appeal dated December 17, 1962, set aside and the
verdict of the jury finding the respondent guilty of the offence of
attempted murder, dated December 21, 1961, restored.  Since
his appeal to the Court of Criminal Appeal was against sentence
as well as against conviction and the appeal against sentence did
F   not come up for consideration owing to the court's decision to
quash the conviction, the appeal should now be remitted to that
court for hearing of the appeal against sentence on the basis that
the verdict of the jury is to stand.  In accordance with the
condition imposed when special leave to appeal to the Board was
granted the appellant must pay the respondent's costs of the
G   appeal.

Solicitors: *T. L. Wilson & Co.; Hatchett Jones & Co.*

C. C.