# Exhibit 8

to Expert Opinion of Sudipto Sarkar SA
dated August 13, 2021


SCC Online Web Edition, Copyright © 2021
Page 1    Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
-----------------------------------------------------------------------------------------------------------------------------------------------------------

(1968) 3 SCR 163 : AIR 1968 SC 1165

In the Supreme Court of India
(Before M. Hidayatullah, S.M. Sikri and K.S. Hegde, JJ.)

NAIR SERVICE SOCIETY LTD. ... Appellant;
 Versus
REV. FATHER K.C. ALEXANDER AND OTHERS ... Respondents.
Civil Appeal No. 1632 of 1966[*], decided on February 12, 1968

Advocates who appeared in this case :

M.K. Nambiar, Senior Advocate (N.A. Sub-ramanian K. Velayudhan Nair and T.K. Unnithan, Advocates, and Rameshwar Nath and Mahinder Narain, Advocates of Rajinder Narain and Co., with him), for the Appellant;

S.V. Gupte, Senior Advocate (T.P. Paulose, B. Dutta and Annamma Alexander, Advocates and J.B. Dadachanji, O.C. Mathur and Ravinder Narain, Advocates of J.B. Dadachanji and Co., with him), for Respondent 1.

The Judgment of the Court was delivered by

M. Hidayatullah, J.— This is an appeal by certificate from the judgment of the High Court of Kerala, December 23, 1965 reversing the decree of the Sub-Court, Mavelikara., By the judgment and decree under appeal the suit of the first respondent, Rev. Father K.C. Alexander (shortly the plaintiff) was decreed in respect of the suit lands of which he had sought possession from the appellant, Nair Service Society Ltd. (shortly the Society or the first defendant) and some others who are shown as Respondents 2 to 6. The facts in this appeal are as follows:

2. The plaintiff filed a suit in *forma pauperis* on October 13, 1942 against the Society, its *Kariasthan* (Manager) and four others for possession of 131.23 acres of land from Survey Nos. 780/1 and 780/2 of Rannipakuthy in the former. State of Travancore and for mesne profits past and future with compensation for waste. The suit lands are shown as L(1) on a map Ex. L prepared by Commissioners in CMA 206 of 1110 ME and proved by PW 10. The two Survey Nos. are admittedly Government Poramboke lands. The plaintiff claimed to be in possession of these lands for over 70 years. In the year 1100 ME a Poramboke case for evicting him from an area shown as L (2) measuring 173.38 acres, but described in the present suit variously as 160, 161 and 165 acres, was started under the Travancore Land Conservancy Regulation 4 of 1094 ME (LC Case No. 112/1100 ME) by Pathanamathitta Taluk Cutchery. This land is conveniently described as 160 acres and has been so referred to by the High Court and the Sub-Court. The plaintiff was fined under the Regulations and was evicted from the 160 acres. The Society applied for Kuthakapattom lease of this area on August 11, 1938. The lease was granted but has not been produced in the case. It was for 165 acres and the Society was admittedly put in possession of it on July 24, 1939 or thereabouts. The lease was for 12 years. Plaintiff case was that on 13/16 October, 1939 a number of persons acting on behalf of the Society trespassed upon and took possession of the suit lands (131.23 acres) in addition to the 160 acres. The plaintiff, therefore, claimed possession of the excess land from the Society, its Manager and Defendants 3 to 6, who were acting on behalf of the Society. The plaintiff also claimed mesne profits and compensation for waste.

3. The Society contended that the plaint lands were Government Reserve and that the plaintiff was dispossessed by Government from these lands when he was dispossessed of the 160 acres. The suit land is in two parts. Ex. L. shows these two


SCC Online Web Edition, Copyright © 2021
Page 2    Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
-----------------------------------------------------------------------------------------------------------------------------------------------------------
-

parts as L(1)(*a*) and L(1)(*b*). The Society had applied for another Kuthakapattom lease in respect of L(1)(*b*) and obtained it during the pendency of the suit on March 10, 1948. In this Kuthakapattom, which is Ex. 1, the land is shown as 256.13. acres and the lease is made without limit of time. Simultaneously a demand was made from the Society for arrears of Pattom at the same rate as for the Kuthakapattom in respect of the whole land after setting off the amount already paid by the Society. The Society in its written statement did not aver that it was not in possession of L(1)(*a*) and resisted the suit in regard to the entire suit lands. Subsequently it attempted by argument to limit its defence to L(1)(*b*) which was additionally granted to it in the Kuthakapattom Ex. 1. Although the suit pended for 17 years in the Sub-Court no application for amendment was made. The Society asked for amendments several times, the last being on October 15, 1958. However, on the last day of hearing of the appeal in the High Court (December 14, 1965) the Society applied for an amendment of the written statement limiting its defence to portion L(1)(*b*) disclaiming all interest in portion L(1)(*a*) and attempted to plead the grant of the second Kuthakapattom in its favour on March 10, 1948. The High Court rejected this application by its judgment under appeal and awarded possession against the Society of the entire suit land. The Society in its case denied the right of the plaintiff to bring a suit for ejectment or its liability for compensation as claimed by the plaintiff. In the alternative, the Society claimed the value of improvements effected by it, in case the claim of the plaintiff was decreed against it. The other defendants remained ex parte in the suit and did not appeal. They have now been shown as *proforma respondents* by the Society.

4. The suit went to trial on 13 issues. The main issues were (*a*) whether the plaintiff was in possession of lands L(1) for over 70 years and had improved these lands; (*b*) whether the first defendant was entitled to possession of any area in excess of the first Kuthakapattom for 12 years; and (*c*) whether the trespass was on 13/16 October, 1939 or whether the plaintiff was evicted on July 24, 1939 by the Government from the suit land in addition to the 160 acres in respect of which action was taken in the Land Conservancy case. Other issues arose from the rival claims for mesne profits and compensation to which reference has already been made. The suit was dismissed by the trial Judge against the Society but was decreed against Defendants 3 to 6 in respect of land L(1)(*a*) with mesne profits and compensation for waste. The trial Judge held that the possession of the plaintiff dated back only to 1920-21 and that he was evicted from portion L(1)(*b*) as per plan AZ and that the Society was in possession from the time it entered into possession of 160 acres. The trial Judge held that as the land was Poramboke and the plaintiff has been ousted by Government he could not claim possession. The subsequent grant of Kuthakapattom (Ex. 1) was not considered relevant and the suit was decided on the basis of the facts existing on the date of the commencement of the suit. The trial Judge, however, held that if the plaintiff was entitled to recover possession he would also be entitled to mesne profits at the rate of Rs 3392 from October 16, 1939. The defendants' improvements were estimated at Rs 53,085. Possession of L(1)(*a*) was decreed with costs, mesne profits past and future, and compensation for waste against Defendants 3 to 6.

5. The plaintiff filed an appeal in *forma pauperis*. The High Court reversed the decree of the trial Judge and decreed it against the Society and its Manager ordering possession of the entire suit lands with mesne profits past and future, and compensation for any waste. The High Court held that the Society had admitted its possession in respect of the entire suit land and that the grant of Kuthakapattom in respect of L(1)(*a*) to Defendants 3 to 6 by the Government was immaterial. The High Court held that the evidence clearly established that the plaintiff was in possession of the plaint lands at least from 1924 to 1925 and that it made no difference whether the plaintiff was dispossessed on October 16, 1939 as stated in the plaint or July 24, 1939 as alleged by the Society. The main controversy, which was decided by the High Court,



SCC Online Web Edition, Copyright © 2021
Page 3        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
-----------------------------------------------------------------------------------------------------------------------------------------------------
-

was whether the plaintiff could maintain a suit for possession, (apart from a possessory suit under the Travancore laws analogous to Section 9 of the Indian Specific Relief Act) without proof of title basing himself mainly on his prior possession and whether the Society could defend itself pleading the title of the Government. On both these points the decision of the High Court was in favour of the plaintiff.

6. In this appeal the first contention of the Society is that it did not dispossess the plaintiff on October 16, 1939 but on July 24, 1939 when he was evicted from the 160 acres in respect of which Poramboke case was started against him. According to the Society, if the plaintiff's possession was terminated by the rightful owner and the Society got its possession from the rightful owner the suit for ejectment could not lie. It may be stated here that the plaintiff had applied for an amendment to implead Government but the amendment was disallowed by the trial Judge. In 1928 the plaintiff had filed OS 156/1103 against the Government for declaration of possession and injunction in respect of the 160 acres of land and L(1)(*b*), but the suit was dismissed in default and a revision application against the order of dismissal was also dismissed by the High Court of Kerala. The suit had delayed the Poramboke case as a temporary injunction has been issued against Government. On the dismissal of that suit the first Kuthakapattom lease was granted to the Society. The next contention of the Society is that a suit in ejectment cannot lie without title and a prior trespasser cannot maintain the suit generally against the latter trespasser and more particularly in this case in respect of lands belonging to Government specially when the latter trespasser (even if it was one) had the authority of the true owner either given originally or subsequently but relating back to the date of the trespass. The Society also submits that as trespass on Government land was prohibited by law the plaintiff could not get the assistance of the court. The Society also contends more specifically that there is no true principle of law that possession confers a good title except against the owner or that possession is a conclusive title against all but the true owner. In its submission, if a possessory suit analogous to Section 9 of the Indian Specific Relief Act was not filed by the plaintiff's only remedy was to file a suit for ejectment pleading and proving his title to the suit land. A mere possessory suit after the expiry of 6 months was not possible. There are other branches of these main arguments to which reference need not be made here. They will appear when these arguments will be considered.

7. The first question to settle is when dispossession took place. According to the plaintiff he was dispossessed on October 16, 1939 and according to the Society plaintiff was dispossessed on July 24, 1939 when he was evicted from 160 acres. The trial Judge accepted the case of the Society and the High Court that of the plaintiff. The High Court, however, remarked that it did not matter when the plaintiff was first dispossessed. The difference in dates is insisted upon by the Society because if it can show that the plaintiff was dispossessed by the true owner, namely, the State, it can resist the suit pleading that it was in possession under the authority of the owner and that the possession of the plaintiff was already disturbed and a suit in ejectment did not lie against it. There are, however, several circumstances which indicate that the plaintiff case that dispossession took place in October 1939 is true.

8. To begin with we are concerned with three areas. The Land Conservancy case concerned L(2) or 160 acres. The other two areas are L(1)(*a*) 55.47 acres and L(1)(*b*) 75.76 acres. These total to 291.23 acres. The suit was filed to obtain possession of 131.23 acres, that is to say, 291.23 acres minus the 160 acres. The Society attempted to disclaim all interest in L(1)(*a*) and even attempted to deny that Defendants 3-6 were in possession of it. This was not allowed for very good reasons. In the written statement no distinction was made between L(1)(*a*) and L(1)(*b*). Although amendments were allowed, no amendment of the written statement to withdraw L(1)(*a*) from dispute was asked for. The attempt consisted of oral arguments were allowed,



no amendment of the written statement to withdraw written statement was sought to be amended as late as December 14, 1965, the last day of the arguments. The application had two prayers. About the second of the two prayers we shall say something later but the amendment we are dealing with was not only belated but also an after thought. The High Court rightly points out that a defendant, who after trial of the suit for 16 years orally asks for the withdrawal of an admission in the written statement, cannot be allowed to do so. Therefore, the dispute covered the entire 131.23 acres and the Society was claiming to be in possession. The plaint had asserted that the Defendants 2-6 were in possession and that Defendant 2 was acting for the Society. In reply the Society claimed to be in possession. It, however, led evidence on its own behalf that L(1)(*a*) was not in its possession. That could not be considered in view of the admission in the pleadings. The contrary admission of the plaintiff that Defendants 3-6 were in possession was cited before us as it was before the High Court. But the High Court has already given an adequate answer when it observes that the plaintiff only said he had heard this. Therefore, we are of opinion that the issue was joined between the plaintiff and the Society with respect to the entire suit land.

9. The alternative contention of the Society is that the plaintiff was dispossessed by the rightful owner, that is, the State. This contention was accepted by the trial Judge but rejected by the High Court. We shall now consider it. It is an admitted fact that eviction in the Land Conservancy case took place on 8-12-1114 ME corresponding to July 24, 1939. Since the order was to evict the plaintiff from 160 acres, it is fair to assume that he would be evicted from that area only. The *Mahazar* Ex. AG, proved by the village Munsiff who was personally present, establishes that eviction was from 160 acres. The High Court judgment mentions the names of several other witnesses who have also deposed in the same way. The High Court also points out that the rubber quotas from the rubber trees continued to be in the name of the plaintiff except in 160 acres in which the quotas were transferred to the name of Government. All this was very clear evidence. Further even if some more area was taken over from the plaintiff, it would be small and not as much as 131.23 acres or even 75.76 acres. It is to be noticed that the Society applied on August 11, 1939 for grant of a Kuthakapattom only in respect of 165 acres and this was on the basis of possession. If the Society was in possession of 291.23 acres, it would not have omitted on August 11, 1939 to apply for the additional area as well. Another application was made for a second Kuthakapattom in respect of the additional land on the basis of possession but only after certain events happened. On September 29, a complaint (Ex. AO) was made by Phillippose Abraham (PW 8), the Manager of the plaintiff, that the land was trespassed upon by the Society's men who had harvested the paddy. On October 2, 1939 the second defendant made a counter complaint Ex. AS. This made a mention of "land from which, the 1st accused (plaintiff) was evicted". It is, however, to be seen that in the Mahazar (Exs. AT, AT-1 and AT-2) the encroached area is shown as 160 acres. On October 13, 1939 one Krishna Nair made a complaint (Ex. AH) against plaintiff's men of beating and dacoity. On October 16, the servants of the plaintiff were arrested. Bail was delayed and was only granted on October 20, 1939. On October 24, 1939 the plaintiff complained of dispossession. The case of dacoity was virtually withdrawn and the accused were discharged. The High Court accepted the plea that the false charge of dacoity and the arrest were a prelude to dispossession and a ruse to get the servants of the plaintiff out of the way. On looking into the evidence we cannot say that this inference is wrong.

10. The Society, however draws attention to several circumstances from which it seeks to infer the contrary. We do not think that they are cogent enough to displace the other evidence. We may, however, refer to them. The Society first refers to plaintiff's application(Ex. 16) on July 28, 1939 that he was dispossessed of suit



buildings and requesting that 160 acres be correctly demarcated. In other documents also the plaintiff complained of eviction from land in excess of 160 acres and dispossession from buildings. The Society submits that the evidence showed that there were no buildings in 160 acres and that only bamboo huts were to be found. The map Ex. L shows some buildings in L(2). It is more likely that as these buildings were close to the western boundary between L(2) and L(1), the plaintiff hoped that he would be able to save them as on admeasurement they would be found outside 160 acres. It may be mentioned that in addition to 160 acres, land 20 acres in extent was further encroached upon. This land is shown in plan Ex. BB and represents little extensions all round the 160 acres. If this area was taken into account and 160 acres admeasured then, there was a possibility of the buildings being saved. This is a more rational explanation than the contention that as many as 131.23 acres were additionally taken in possession when the plaintiff was dispossessed from 160 acres. We have therefore, not departed from the finding of the High Court which we find to be sound.

11. Failing on the facts, the Society takes legal objections to the suit. According to the learned counsel for the Society the suit in ejectment, based on possession in the character of a trespasser was not maintainable. His contention is that a trespasser's only remedy is to file a suit under Section 32 of the Travancore Limitation Regulation (6 of 1100) as amended by Regulations 9 of 1100 and 1 of 1101, but within 6 months. This section corresponds to Section 9 of the Indian Specific Relief Act. Now if dispossession was by Government the suit could not be filed because there was a bar to such a suit. If dispossession was by the Society a suit under Section 32 was competent. The question is whether after the expiry of 6 months a regular suit based on prior possession without proof of title was maintainable. This is the main contention on merits although it has many branches. We now proceed to consider it.

12. This aspect of the case was argued by Mr Nambiar with great elaboration for a number of days. The argument had many facets and it is convenient to deal with some facets separately because they have no inter connection with others and some others together. The main argument is that a suit by a trespasser does not lie for ejectment of another trespasser after the period of 6 months prescribed by Section 32 of the Travancore Limitation Act (6 of 1100). The provisions of the Travancore Specific Relief Act (13 of 1115)[1] are in *pari materia* and also *ipsissima verba* with the Indian Specific Relief Act and are set out below. It is convenient to refer to the Indian Act. According to Mr Nambiar a contrast exists between Sections 8 and 9 of the Specific Relief Act. These Sections are reproduced below. Mr Nambiar submits that Section 8 refers to suits for possession other than those under Section 9, and while question of title is immaterial in suits under Section 9, under Section 8 a suit for ejectment must be on the basis of title. In other words, in a suit under Section 8 title must be proved by a plaintiff but under Section 9 he need not. Once the period of six months has been lost a suit brought within 12 years for obtaining possession by ejectment must be based on title and not bare prior possession alone.

13. In support of this argument Mr Nambiar refers to Roman Law of Interdicts and urges that the same distinction also existed there and has been borrowed by us through the English practice. We may first clear this misconception. Possession in Roman Law was secured to a possessor by two forms of Interdicts — *Utipossidetis* for immovables and *utrubi* for moveables. But we are not concerned with these, but with actions to recover possession which were compendiously called *recuperandae possession is causa*. There were two interdicts known as *deprecario* and *de vi*. Of the latter two of the branches were the Interdict *de vi cotidiana* by which possession was ordered "to be restored on an application made within the year where one had been ejected from land by force, provided there had not been *vi clam aut precario* from the ejector". The other *de vi armata* for ejection by armed force, was without restriction of


SCC Online Web Edition, Copyright © 2021
Page 6        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
-----------------------------------------------------------------------------------------------------------------------------------------------------
-

time. Mr Nambiar says that the same distinction exists between suits under Sections 9 and 8 of the Specific Relief Act. This is an ingenious way of explaining his point of view but it does not appear that these principles of Roman Law at all influenced law making. These principles were in vogue in early Roman Law. In the time of Justinian the two Interdicts *de vi* were fused and there was only one action representing both. Even the clausa about *vi clam aut precario* disappeared and the restriction to a year applied to both. The appeal to Roman Law, does not, therefore, assist us.

14. We may now consider whether Sections 8 and 9 are to be distinguished on the lines suggested. In *Mulla's Indian Contract and Specific Relief Acts* there is a commentary which explains the words 'in the manner prescribed by the Code of Civil Procedure' by observing—

"that is to say by a suit for ejectment on the basis of title: *Lachman* v. *Shambu Narain*[2]".

The question in that case in the words of the Full Bench was—

"The sole question raised in this appeal is whether a plaintiff who sues for possession and for ejectment of the defendant on the basis of title and fails to prove his title is still entitled to a decree for possession under Section 9 of the Specific Relief Act, 1877, if he can prove possession within six months anterior to the date of his dispossession."

In the course of decision the Full Bench dissented from the earlier view in *Ram Harakh Rai* v. *Sheodihal Joti*[3] and observed:

"With great respect we are unable to agree with this view. Section 8 of the Act provides that a person entitled to the possession of specific immovable property may recover it in the manner prescribed by the Code of Civil Procedure, that is to say, by a suit for ejectment on the basis of title. Section 9 gives a summary remedy to a person who has without his consent been dispossessed of immovable property, otherwise than in due course of law, for recovery of possession without establishing title, provided that his suit is brought within six months of the date of dispossession. The second paragraph of the section provides that the person against whom a decree may be passed under the first paragraph may, notwithstanding such decree, sue to establish his title and to recover possession. The two sections give alternative remedies and are in our opinion mutually exclusive. If a suit is brought under Section 9 for recovery of possession, no question of title can be raised or determined. The object of the section is clearly to discourage forcible dispossession and to enable the person dispossessed to recover possession by merely proving title, but that is not his only remedy. He may, if he so chooses, bring a suit for possession on the basis of his title. But we do not think that he can combine both remedies in the same suit and that he can get a decree for possession even if he fails to prove title. Such a combination would, to say the least of it, result in anomaly and inconvenience. In a suit under Section 9 no question of title is to be determined, but that question may be tried in another suit instituted after the decree in that suit. If a claim for establishment of title can be combined with a claim under Section 9, the court will have to grant a decree for possession or dispossession being proved, in spite of its finding that the plaintiff had no title and that title was in the defendant."

15. We agree as to a part of the reasoning but with respect we cannot subscribe to the view that after the period of 6 months is over a suit based on prior possession alone, is not possible. Section 8 of the Specific Relief Act does not limit the kinds of suit but only lays down that the procedure laid down by the Code of Civil Procedure must be followed. This is very different from saying that a suit based on possession alone is incompetent after the expiry of 6 months. Under Section 9 of the Code of Civil Procedure itself all suits of a civil nature are triable excepting suits of which their


SCC Online Web Edition, Copyright © 2021
Page 7        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
-----------------------------------------------------------------------------------------------------------------------------------------------------------

cognizance is either expressly or impliedly barred. No prohibition expressly barring a suit based on possession alone has been brought to our notice, hence the added attempt to show an implied prohibition by reason of Section 8(section 7 of the Travancore Act) of the Specific Relief Act. There is, however, good authority for the contrary proposition. In *Mustapha Sahib* v. *Santha Pillai*[4] Subramania Ayyar, J. observes

> "... that a party ousted by a person who has no better right is, with reference to the person so ousting, entitled to recover by virtue of the possession he had held before the ouster even though that possession was without any title.
>
> * * *
>
> The rule in question is so firmly established as to render a lengthened discussion about it quite superfluous. *Asher* v. *Whitlock*, (LR 1 Q.B. 1) and the rulings of the Judicial Committee in *Musammat Sundar* v. *Mussammat Parbati*, (16 IA 186) and *Ismail Ariff* v. *Mahomed Ghouse*, (20 IA 99) not to mention numerous other decisions here and in England to the same effect, are clear authorities in support of the view stated above ... Section 9 of the Specific Relief Act cannot possibly be held to take away any remedy available with reference to the well-recognised doctrine expressed in Pollock and Wright on possession thus: Possession in law is a substantive right or interest which exists and has legal incidents and advantages apart from the owner's title (p. 19)".

In the same case O' Farell, J. points out that

> "all the dictum of the Privy Council in *Wise* v. *Ameerunissa Khatoon*, (7 IA 73) appears to amount to is this, that where a plaintiff in possession without any title seeks to recover possession of which he has been forcibly deprived by a defendant having good title, he can only do so under the provisions of Section 9 of the Specific Relief Act and not otherwise".

It is not necessary to refer to the other authorities some of which are already referred to in the judgment under appeal and in the judgment of the same court reported in *Kuttan Narayaman* v. *Thomman Mathai*[5]. The last cited case gives all the extracts from the leading judgments to which we would have liked to refer. We entirely agree with the statement of the law in the Madras case from which we have extracted the observations of the learned Judges. The other cases on the subject are collected by Sarkar on Evidence under Section 110.

16. The Limitation Act, before its recent amendment provided a period of twelve years as limitation to recover possession of immovable property when the plaintiff, while in possession of the property was dispossessed or had discontinued possession and the period was calculated from the date of dispossession or discontinuance. Mr Nambiar argues that there cannot be two periods of limitation, namely, 6 months and 12 years for suits based on possession alone and that the longer period of limitation requires proof of title by the plaintiff. We do not agree. No doubt there are a few old cases in which this view was expressed but they have since been either overruled or dissented from. The uniform view of the courts is that if Section 9 of the Specific Relief Act is utilised the plaintiff need not prove title and the title of the defendant does not avail him. When, however, the period of 6 months has passed questions of title can be raised by the defendant and if he does so the plaintiff must establish a better title or fail. In other words, the right is only restricted to possession only in a suit under Section 9 of the Specific Relief Act but that does not bar a suit on prior possession within 12 years and title need not be proved unless the defendant can prove one. The present amended Articles 64 and 65 bring out this difference. Article 64 enables a suit within 12 years from dispossession, for possession of immovable property based on possession and not on title, when the plaintiff while in possession of the property has been dispossessed. Article 65 is for possession of immovable property or any interest


therein based on title. The amendment is not remedial but declaratory of the law. In our judgment the suit was competent.

17. Mr Nambiar also relies in this connection upon Section 110 of the Indian Evidence Act and claims that in the case of the Society there is a presumption of title. In other words, he relies upon the principle that possession follows title, and that after the expiry of 6 months, the plaintiff must prove title. That possession may prima facie raise a presumption of title no one can deny but this presumption can hardly arise when the facts are known. When the facts disclose no title in either party, possession alone decides. In this case Section 110 of the Evidence Act is immaterial because neither party had title. It is for this reason that Mr Nambiar places a greater emphasis on the plea that a suit on bare possession cannot be maintained after the expiry of 6 months and that the Society has a right to plead *jus tertii*. The first must be held to be unsubstantial and the second is equally unfounded.

18. The proposition of law on the subject has been summed up by *Salmond on Torts* (13th Edn.) at p. 172 in the following words:

"The mere de facto and wrongful possession of land is a valid title of right against all persons who cannot show a better title in themselves, and is therefore sufficient to support an action of trespass against such persons. Just as a legal title to land without the possession of it is insufficient for this purpose, so conversely the possession of it without legal title is enough. In other words, no defendant in an action of trespass can plead the *jus tertii* — the right of possession outstanding in some third person — as against the fact of possession in the plaintiff."

The maxim of law is *Adversus extraneous vitiose possessio prodesse solet*, and if the plaintiff is in possession the *jus tertii* does not afford a defence. Salmond, however, goes on to say:

"But usually the plaintiff in an action of ejectment is not in possession: he relies upon his right to possession, unaccompanied by actual possession. In such a case he must recover by the strength of his own title, without any regard to the weakness of the defendants. The result, therefore, is that in action of ejectment the *jus tertii* is in practice a good defence. This is sometimes spoken of as the doctrine of *Doe* v. *Barnard*, (1849) 13 QB 945."

Salmond, however, makes two exceptions to this statement and the second he states thus:

"Probably, if the defendant's possession is wrongful as against the plaintiff, the plaintiff may succeed though he cannot show a good title: *Doe d. Hughes* v. *Dyball*, (1829) 3 C & P 610; *Davison* v. *Gent*, (1857) 1 H & N 744. But possession is prima facie evidence is not displaced by proof of title. If such prima facie evidence is not displaced by proof of title in a third person the plaintiff with prior possession will recover. So in *Asher* v. *Whitlock*, [(1865) L.R. 1 QB.-1] where a man inclosed waste land and died without having had 20 years' possession, the heir of his devisee was held entitled to recover it against a person who entered upon it without any title. This decision, although long, doubtful, may now be regarded as authoritative in consequence of its express recognition of the Judicial Committee in *Perry* v. *Clissold*, (1907) A.C. 73."

Mr Nambiar strongly relies upon the above exposition of the law and upon institutional comments by Wiren "The Plea of *jus tertii* in ejectment" (1925) 41 L.Q.R. 139, Hargreaves "Terminology and Title in *Ejectment*, (1940) 56 L.Q.R. 376 and Holdsworth's article in 56 L.Q.R. 479.

19. In our judgment this involves an incorrect approach to our problem. To express our meaning we may begin by reading *Perry* v. *Clissold* to discover if the principle that possession is Prior possession is a good title of ownership against all who cannot show a better good against all but the true owner has in any way been departed from. *Perry*


SCC Online Web Edition, Copyright © 2021
Page 9        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
-----------------------------------------------------------------------------------------------------------------------------------------------------------
-

v. *Clissold* reaffirmed the principle by stating quite clearly:

> "It cannot be disputed that a person in possession of land in the assumed character of owner and exercising peaceably the ordinary rights of ownership has a perfectly good title against all the world but the rightful owner. And if the rightful owner does not come forward and assert his title by the process of law within the period prescribed by the provisions of the statute of Limitation applicable to the case, his right is for ever extinguished and the possessory owner acquires an absolute title."

Therefore, the plaintiff who was peaceably in possession was entitled to remain in possession and only the State could evict him. The action of the Society was a violent invasion of his possession and in the law as it stands in India the plaintiff could maintain a possessory suit under the provisions of the Specific Relief Act in which title would be immaterial or a suit for possession within 12 years in which the question of title could be raised. As this was a suit of latter kind title could be examined. But whose title? Admittedly neither side could establish title. The plaintiff at least pleaded the statute of Limitation and asserted that he had perfected his title by adverse possession. But as he did not join the State in his suit to get a declaration, he may be said to have not rested his case on an acquired title. His suit was thus limited to recovering possession from one who had trespassed against him. The enquiry thus narrows to this: did the Society have any title in itself, was it acting under authority express or implied of the true owner or was it just pleading a title in a third party? To the first two questions we find no difficulty in furnishing an answer. It is clearly in the negative. So the only question is whether the defendant could plead that the title was in the State? Since in every such case between trespassers the title must be outstanding in a third party a defendant will be placed in a position of dominance. He has only to evict the prior trespasser and sit pretty pleading that the title is in someone else. As Erle, J. put it in *Burling* v. *Read*, (11 Q.B. 904) "parties might imagine that they acquired some right by merely intruding upon land in the night, running up a hut and occupying it before morning". This will be subversive of the fundamental doctrine which was accepted always and was reaffirmed in *Perry* v. *Clissold*. The law does not therefore countenance the doctrine of 'findings keepings'.

20. Indeed *Asher* v. *Whitlock*, (1885) 1 Q.B. 1 goes much further. It laid down as the head-note correctly summarizes: A person in possession of land without other title has a devisable interest, and the heir of his devisee can maintain ejectment against a person who had entered upon the land and cannot show title or possession in any one prior to the testator. No doubt as stated by Lord Macnaghten in *Perry* v. *Clissold*, *Doe* v. *Barnard* lays down the proposition that "if a person having only a possessory title to land be supplanted in the possession by another who has himself no better title, and afterwards brings an action to recover the land, he must fail in case he shows in the course of the proceedings that the title on which he seeks to recover was merely possessory". Lord Macnaghten observes further that it is difficult, if not impossible to reconcile *Asher* v. *Whitlock* with *Doe* v. *Barnard* and then concludes.

> "The judgment of Cockburn, C.J., is clear on the point. The rest of the court concurred and it may be observed that one of the members of the court in *Asher* v. *Whitlock* (Lush, J.) had been counsel for the successful party in *Doe* v. *Barnard*. The conclusion at which the court arrived in *Doe* v. *Barnard* is hardly consistent with the views of such eminent authorities on real property law as Mr Preston and Mr. Joshua Williams. It is opposed to the opinions of modern text-writers of such weight and authority as Professor Maitland and Holmes, J. of the Supreme Court of the United States (see articles by Professor Maitland in the Law Quarterly Review Vols. 1, 2 and 4; Holmes, Common Law p. 244; Professor, J.B. Ames in 3 Harv. Law Rev. 324 n.)

The difference in the two cases and which made *Asher* v. *White* prevail was indicated



in that case by Mellor, J. thus;

> "In *Doe* v. *Barnard* the plaintiff did not rely on her own possession merely, but showed a prior possession in her husband, with whom she was unconnected in point of title. Here the first possessor is connected in title with the plaintiff; for there can be no doubt that the testator's interest was devisable."

The effect of the two cases is that between two claimants, neither of whom has title in himself the plaintiff if dispossessed is entitled to recover possession subject of course to the law of limitation. If he proves that he was dispossessed within 12 years he can maintain his action.

21. It is because of this that Mr Nambiar claimed entitled to plead *jus tertii*. His contention is that in action of ejectment (as opposed to an action of trespass) *jus tertii* is capable of being pleaded. The old action of ejectment was used to try freehold titles but it was abolished in 1873. It was also used "for recovery of land by one who claimed not the right to seisin but the right to possession by virtue of some chattel interest such as a term of years". In such cases "the defence of *jus tertii* admits that the plaintiff had such a right of entry as would generally entitle him to succeed, but seeks to rebut that conclusion by setting up a better right in some third person" or that the plaintiff had no right of entry at all.

22. To summarize, the difference between *Asher* v. *Whitlock* and *Doe* v. *Bamard* is this: In *Doe* v. *Barnard* the principle settled was that it is quite open to the defendant to rebut the presumption that the prior possessor has title i.e. seisin. This he can do by showing that the title is in himself; if he cannot do this he can show that the title is in some third person. *Asher* v. *Whitlock* lays down that a person in possession of land has a good title against all the world except the true owner and it is wrong in principle for any one without title or authority of the true owner to dispossess him and relying on his position as defendant in ejectment to remain in possession. As Loft in his Maxim No. 265 puts it *Possessio contra omnes valet praeter eur cui ius sit possessionis* (He that hath possession hath right against all but him that hath the *very* right: see *Smith* v. *Oxenden*, 1 Chapter Ca 25. A defendant in such a case must show in himself or his predecessor a valid legal title, or probably a possession prior to the plaintiff's and thus be able to raise a presumption prior in time. It is to be noticed that Ames (*Harvard Law Review* Vol. III p. 313 at 37); Carson (*Real Property Statutes* 2nd Edn. p. 180); Halsbury [*Laws of England*, Vol. 24, 3rd Edn. p. 255 f.n.(o)]; Leake (*Property in Land*, 2nd Edn. p. 4, 40); Lightwood (*Time Limit* on Actions pp. 120-133); Maitland, Newell (*Action in Ejectment*, American Edn. pp. 433-434); Pollock (*Law of Torts*, 15th Edn. P. 279); Salmond Law of Torts; and William and Yates (*Law of Ejectment*, 2nd Edn. pp. 218, 250) hold that *Doe* v. *Barnard* does not represent true law. Winer (to whom I am indebted for much of the information) gives a list of other writers who adhere still to the view that *jus tertii* can be pleaded.

23. Mr Nambiar pressed upon us the view that we should not accept *Perry* v. *Clissold*. It must be remembered that that case was argued twice before the Privy Council and on the second occasion Earl of Halsbury, L.C. Lords Macnaghten, Davey, Robertson, Atkinson, Sir Ford North and Sir Arthur Wilson heard the case. Lord Macnaghten's judgment is brief but quite clear. Mr Nambiar relies upon two other cases of the Privy Council and a reference to them is necessary. In *Dharani Kanta Lahiri* v. *Garbar Ali Khan*[6] a suit in ejectment was filed. The plaintiffs failed to prove that the lands of which they complained dispossession were ever in their possession within 12 years before suit and that the lands were not the lands covered by a *sanad* which was produced by the defendants. The case is distinguishable. It is to be noticed that Lord Macnaghten was the President of the Board and the judgment of the Board, December 5, 1912 did not base the case on *Doe* v. *Barnard* or even refer to it. The second is *Mahabir Prasad* v. *Jamuna Singh*, 92 IC 31 PC. In this case the Board


SCC Online Web Edition, Copyright © 2021
Page 11        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
-----------------------------------------------------------------------------------------------------------------------------------------------------

observed as follows:

> "Counsel for the appellant (defendant) admits that in the face of the ruling by the Board he could not impugn the reversionary right of the plaintiff's vendors, but he contends that the defendant is in possession and in order to eject him the plaintiff must show that there is no other reversionary heir in the same degree or nearer than his assignors whose title he (the defendant) can urge against the plaintiffs claim for ejectment. In other words, the action being one of ejectment the defendant is entitled to plead in defence the right of someone else equally entitled with the plaintiff's vendors."

After observing this the Board held that the defendant had failed to prove his point. The observation does not lead to the conclusion that a defendant can prove title in another unconnected with his own estate. The case is not an authority for the wider proposition.

24. The cases of the Judicial Committee are not binding on us but we approve of the dictum in *Perry* v. *Clissold*. No subsequent case has been brought to our notice departing from that view. No doubt a great controversy exists over the two cases of *Deo* v. *Barnard* and *Asher* v. *Whitlock* but it must be taken to be finally resolved by *Perry* v. *Clissold*. A similar view has been consistently taken in India and the amendment of the Indian Limitation Act has given approval to the proposition accepted in *Perry* v. *Clissold* and may be taken to be declaratory of the law in India. We hold that the suit was maintainable.

25. It is next submitted that the High Court should not have given its assistance to the plaintiff whose possession was unlawful to begin with especially when, by granting the decree, an illegality would be condoned and perpetuated. In support of this case the Society relies on the provisions of Regulation 4 of 1091 and other connected Regulations and rules. It points out that under Regulation 4 of 1091, it was unlawful for anyone to occupy Government land and a punishment of fine in addition to eviction was prescribed, and all crops and other products were liable to confiscation. If eviction was resisted the Dewan could order the arrest and detention in jail of the offender. Section 18 barred Civil Courts from taking any action in respect of orders passed under the said Regulation except on when it was established that the land was not Government land. The Civil Court, it is submitted, could not grant a decree for possession nor set up the possession of a person who was an offender under the Regulation.

26. In our opinion these submissions are not well-founded. The Regulations were intended to regulate the relation of Government and persons but had no bearing upon the relations between persons claiming to be in possession. Further the penalty was a fine for wrongful occupation and in no sense a punishment for crime. The illegality of the possession was thus not a criminal act and the regaining of lost possession cannot be described as an action to take advantage of one's own illegal action. In fact the plaintiff was not required to rely upon any illegality which is the consideration which makes courts deny their assistance to a party. The Society relied upon the oft-quoted observations of Lord Mansfield C.J. in *Holman* v. *Johnson*, (1775) 1 Cowper 341:

> "the objection that a contract is immoral or illegal as between plaintiff and defendant sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may say so. The principle of public policy is this: *ex dolo malo non oritur actio*. No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own stating or otherwise the cause of action appears to arise *ex turpicausa* or the transgression of a positive law of this country, there the court says


SCC Online Web Edition, Copyright © 2021
Page 12        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
-----------------------------------------------------------------------------------------------------------------------------------------------------

he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff".

27. These are general observations applicable to a case of illegality on which a party must rely to succeed. In a case in which a plaintiff must rely upon his own illegality the court may refuse him assistance. But there is the other proposition that if a plaintiff does not have to rely upon any such illegality, then although the possession had begun in trespass a suit can be maintained for restitution of possession. Otherwise the opposite party can make unjust enrichment although its own possession is wrongful against the claimant. It is to be noticed that the law regards possession with such favour that even against the rightful owner a suit by a trespasser is well founded if he brings the suit within 6 months of dispossession. We have also shown that there is ample authority for the proposition that even after the expiry of these 6 months a suit can be maintained within 12 years to recover possession of which a person is deprived by one who is not an owner or has no authority from him.

28. The Society next argues that since it has got a second Kuthakapattom we must relate it back to the original dispossession and treat it as a statutory order under the laws of Travancore. It refers us to the Travancore Survey and Boundaries Regulation of May 1942 (Rule 9), the Land Conservancy Regulation (as amended from time to time), the Puduval Rules and the Land Assignment Regulations and some other rules to show that the forest lands were property of Government and the plaintiff could not be said to be holding land under a grant from Government but the Society is. We think that this argument is of the same character as the argument about *jus tertii*. The case is between two persons neither of whom had any right to the suit lands and were trespassers one after the other. No question of implementing a statutory order arises. The grant of the second Kuthakapattom is not related back to the grant of the original grant and can only be considered if and when it is pleaded. It is therefore not necessary to consider this point at the moment when we are not in possession of the case of the plaintiff which he may set up in answer to this case.

29. This brings us to the question whether the High Court should have allowed the amendment sought in 1965. The suit was filed in 1942 and the second Kuthakapattom was granted in 1948. The last amendment was asked for in 1958. Before this the plaintiff had pointedly drawn attention to the fact that arguments based on the new Kuthakapattom were likely to be pressed. The trial Judge had ruled that arguments could not be shut out in advance. These circumstances have to be borne in mind in approaching the problem.

30. It is, however, plain that after the grant of Kuthakapattom in 1948 the possession of the Society became not only *de facto* but also *de jure* unless there was a flaw in the grant. It is equally plain that the Society could only resist the present suit by proving its title or the authority of the true owner, namely the State. The former was not open to the Society before 1948 but the latter was after the grant. The Society contends that even if the facts were not pleaded the documents were before the court, and the parties knew of them and indeed the plaintiff had himself caused some of them to be produced. It was the duty of the court to take note of them and *suo motu* to frame an issue. This point has hardly any force. The Society could take advantage of such evidence as was provided by the plaintiff but it had to put it in support of a plea. Issue 2 on which great reliance is placed was not concerned with an abstract proposition but what flowed from the pleas. Nor could the court frame an issue from documents which not the Society but the plaintiff had caused to be brought on file. The cases reported in 26 Bom. 360[7], 35 Mad 607 PC[8] and (1964) 3 SCR 634[9] do not help the Society. If the plea had been raised by the Society it would undoubtedly have been countered and one does not know what use the plaintiff would have made of the documents he had got marked. Therefore it cannot be said that the trial Judge was, in error in not considering the documents.


31. This brings us to the general proposition whether the High Court should have allowed the amendment late as it was. The plaintiff is right that the application was made literally on the eve of the judgment. This argument is really based on delay and laches. The application has not been made for the first time in this Court when other considerations might have applied It was made in the High Court after the argument based on the documents on record was urged. This argument was also urged in the court of trial. The contention of the Society was thus present on both the occasions and it would have been better if the Society was directed to amend the pleadings before the argument was heard. The omission, however, remained.

32. Now it is a fixed principle of law that a suit must be tried on the original cause of action and this principle governs not only the trial of suits but also appeals. Indeed the appeal being a continuation of the suit new pleas are not considered. If circumstances change they can form the subject of some other proceedings but need not ordinarily be considered in the appeal. To this proposition there are a few exceptions. Sometimes it happens that the original relief claimed becomes inappropriate, or the law changes affecting the rights of the parties. In such cases courts may allow an amendment pleading the changed circumstances Sometimes also the change circumstances shorten litigation and then to avoid circuity of action the courts allow an amendment. The practice of the courts is very adequately summarized in *Ram Ratan Sahu* v. *Mohant Sahu*[10] Mookerjee and Holmwood JJ have given the kind of changed circumstances which the courts usually take notice, with illustrations from decided cases. The judgment in that case has been consistently followed in India. In *Raicharan Mandal* v. *Biswanath Mandal*[11] other cases are to be found in which subsequent events were noticed. The same view was taken by the Federal Court in *Lachmeshwar Prasad Shukul* v. *Keshwar Lal Chaudhuri*[12] following the dictum of Hughes C.J. in *Patterson* v. *State of Alabama*[13]. In *Surinder Kumar* v. *Gian Chand*[14] this Court also took subsequent events into account and approved of the case of the Federal Court. In view of these decisions it is hardly necessary to cite further authorities.

33. Mr Gupte on behalf of the plaintiff has strenuously opposed the request for amendment. His objection is mainly based on the ground of delay and laches. He relies on *Gajadhar Mahlon* v. *Ambika Prasad Tiwari*[15], *R. Shanmuga Rajeshwara Sethupathie* v. *Chidambaram Chettiar*[16] and *Kanda* v. *Waghu*[17] in which the Judicial Committee declined amendment before it. These cases were different. In the first case the Judicial Committee held that it was within its discretion to allow amendment but did not feel compelled to exercise the discretion. In the second case the amendment was no doubt refused because it was asked for at the last moment but the real reason was that under it a relief of a wide and exceptional nature was granted. The point was so intricate that it required careful and timely pleading and a careful trial. In the last case the Judicial Committee relying on the leading case of *Ma Shwe Mya* v. *Maung Mo Huaung*[18] held that it was not open to allow an amendment of the plaint to cover a new issue which involved setting up a new case.

34. As against these cases, this Court in *L.J. Leach & Co.* v. *Jardine Skinner & Co.*[19], *Pungonda Hongonda Patil* v. *Kalgonda Shidgonda Patil*[20] and *A.K. Gupta and Sons* v. *Damodar Valley Corpn.*[21] allowed amendments when a fresh claim would have been time barred. The cases of this Court cannot be said to be directly in point. They do furnish a guide that amendment is a discretionary matter and although amendment at a late stage is not to be granted as a matter of course, the court must bear in favour of doing full and complete justice in the case where the party against whom amendment is to be allowed can be compensated by costs or otherwise. Also the amendment must be one which does not open the case or take the opposite party by surprise.

35. In the present case the amendment sought was not outside the suit. In fact


Issue 2 could have easily covered it if a proper plea had been raised. The Society was perhaps under an impression that the fresh Kuthakapattom would be considered and the trial Judge had also said that the argument could not be shut out. Although it is not possible to say that parties went to trial in regards to the fresh Kuthakapattom, it cannot be gainsaid that the plaintiff had himself caused all the documents necessary for the plea to be brought on the record of the case. No doubt plaintiff tried to implead Government with a view to obtaining an in junction but as no notice under Section 80 of the Code of Civil Procedure was given this was an exercise in futility. But the Society was under no disability except its own inaction. If it had made a timely request it would have been granted.

36. Thus it is a question of the delay and laches on the part of Society. Insofar as the court was concerned the amendment would not have unduly prolonged litigation; on the other hand, it would have cut it short. Without the amendment another suit based on the second Kuthakapattom is inevitable. As we have shown above there is good authority in support of the proposition that subsequent events may be taken note of if they tend to reduce litigation. This is not one of those cases in which there is a likelihood of prolonged litigation after remand or in which a new case will begin. The amendment will prima facie allow the Society to show to the court that in addition to possession it has also title. This will enable the court to do complete justice, if the plea is found good, without the parties having to go to another trial.

37. We are, therefore, of the opinion that we should allow the amendment. Of course, the plaintiff will be at liberty to controvert the new plea but he will not be allowed to raise new pleas of his own having no relation to the grant of the second Kuthakapattom. As this amendment is being allowed we do not consider it advisable to state at this stage what the implications of the new grant will be under the law applicable in 1948. We are, however, clear for reasons, already given that the second Kuthakapatttom cannot be regarded as retroactive from the date of the grant of the first Kuthakapattom. We wish to add that the document Ex. 1 does not mention that it was to be retrospective. Now a formal document which has no ambiguity cannot be varied by reference to other documents not intended to vary it. The only other documents are Ex. 6, the order conferring the second Kuthakapattom and Ex. 7 a demand by the Tahsildar of the *Pattom* calculated at the same rate from the date of the first Kuthakapattom. This follows from the Rules. Any person in unlawful possession may be compelled under the Rules to pay pattom and this is what appears to have been ordered. There is also nothing to show that this was not the Tahsildar's own interpretation of the facts and the documents. We are therefore, quite clear that the second Kuthakapattom must be read prospectively from the date of its grant, if it be held that it is valid.

38. There are only two other matters to consider. They are the question of mesne profits and improvements. The rate of mesne profits has already been decided and no argument was addressed to us about it. We say no more about it except that the rate will be applicable to the new state of facts in the case after the amendment. It is also not necessary to go into the question of improvements now because in answer to the pleas to be raised hereafter the question of improvements will have to be gone into *de novo* in the light of the findings reached. The argument of the parties that the Rules do not contemplate payment for improvements is neither here nor there. That applies between Government and a private party and not between two private parties. These matters will be left for determination in the proceedings hereafter to be taken.

39. In the result we dismiss the appeal as to portion L(1)(*a*) both in regard to possession and mesne profits and improvements. As regards L(1)(*b*) the amendment based on the second Kuthakapattom will be allowed and parties will go to trial on that amendment. The plaintiff will be entitled to raise his defence in reference to the second Kuthakapattom. The question of mesne profits and improvements in relation to


SCC Online Web Edition, Copyright © 2021
Page 15     Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
-----------------------------------------------------------------------------------------------------------------------------------------------------

-

L(1)(*b*) will be reconsidered in the light of the finding regarding the second Kuthakapattom but the rate of mesne profits as already determined shall not be altered. The plaintiff will, of course, be entitled to mesne profits till the date of the grant of the second Kuthakapattom.

40. There is no doubt that the Society was wrongly advised and allowed the question of amendment to be delayed. At the same time by not allowing the amendment the plaintiff forces the issue regarding possession of L(1)(*b*). In our judgment the Society must pay the costs thrown away, that is to say, that it must bear the costs incurred in the High Court and the court of first instance by the plaintiff in addition to costs on its own account. Insofar as the costs of this Court are concerned parties will bear the costs as the case is being sent to the trial court for further trial.

———

[*] Appeal from the Judgment and Decree dated 23rd December, 1965 of the Kerala High Court in Appeal Suit No. 406 of 1961.

[1] Act 13 of 1115

[2] (1911) 33 All 174

[3] (1893) 15 All 384

Exception—Nothing in this section shall Vbar any person from suing to establish his title to such property and to recover possession thereof

Bar to suit against Government under this section— No suit under this section shall be brought against our Government". Indian Specific Relief Act

"8 Recovery of Specific immovable property— A person entitled to the possession of specific immoveable property may recover it in the manner prescribed by the Code of Civil Procedure"

"9 Suit by person dispossessed of immoveable property— if any person is dispossessed without his consent of immoveable property otherwise than in due course of law, he or any person claiming through him may, by suit, recover possession thereof, notwithstanding any other title that may be set up in such suit.

Nothing in this section shall bar any person from suing to establish his title to such property and to recover possession thereof

No suit under this section shall be brought against the Central Government, or any state Government

No appeal shall lie from any order or decree passed in any suit instituted under this section Nor shall any review of any such order or decree be allowed"

[4] ILR 23 Mad, 179 at 182

[5] 1966 Keral Law Times 1.

[6] 25 MLJ 95 PC

[7] *Gangoo* v. *Shri Dev Sideshwar Ravuthag*.

[8] *Shamu Patter* v. *Abdul Kadir*

[9] *Kunju Kesavan* v. *N.M. Phillip*, ICS

[10] (1907) 6 CLJ 74

[11] AIR 1915 Cal 103

[12] 1940 FCR 84 at 87

[13] (1934) 294 US 600 at 607

[14] (1958) SCR 548

[15] AIR 1925 PC 169, 170


SCC Online Web Edition, Copyright © 2021
Page 16        Friday, August 13, 2021
Printed For: Mr. Wayne Page
SCC Online Web Edition: http://www.scconline.com
-----------------------------------------------------------------------------------------------------------------------------------------------------------
-

[16] 1938 PC 123

[17] LR 77 IA 15

[18] 1921 LR 48 IA 214, 217

[19] 1957 SCR 438

[20] 1957 SCR 595

[21] (1966) 1 SCR 796

Disclaimer: While every effort is made to avoid any mistake or omission, this casenote/ headnote/ judgment/ act/ rule/ regulation/ circular/ notification is being circulated on the condition and understanding that the publisher would not be liable in any manner by reason of any mistake or omission or for any action taken or omitted to be taken or advice rendered or accepted on the basis of this casenote/ headnote/ judgment/ act/ rule/ regulation/ circular/ notification. All disputes will be subject exclusively to jurisdiction of courts, tribunals and forums at Lucknow only. The authenticity of this text must be verified from the original source.

1950-2020, © EBC Publishing Pvt. Ltd., Lucknow.